At a Commercial Division Part 3 of the
Supreme Court of the State of New York, held
in and for the County of New York at the
Courthouse, 60 Centre Street, Room 442 New
York, New York 10007 on the 31 day of
August, 2011

PRESENT:

HON. **HON. EILEEN BRANSTEN**
**J.S.C**

Justice

---

M WAIKIKI LLC,

                  Plaintiff,

  - against -

MARRIOTT HOTEL SERVICES, INC., I.S.
INTERNATIONAL, LLC and IAN
SCHRAGER,

                Defendants,

---

MARRIOTT HOTEL SERVICES, INC.,

                Counterclaim-Plaintiff,

  - against -

M WAIKIKI LLC,

                Counterclaim-Defendant.

Index No.: 651457/2011
IAS Part 3
Justice Bransten

**ORDER TO SHOW CAUSE,**
**TEMPORARY RESTRAINING ORDER,**
**AND PRELIMINARY INJUNCTION**

---

Upon the Counterclaim Complaint, dated August 30, 2011, the exhibits annexed thereto,

and the accompanying Memorandum of Law In Support of Marriott Hotel Services, Inc.'s Order

to Show Cause Concerning a Temporary Restraining Order and Preliminary Injunction Against

M Waikiki LLC and its supporting affidavits submitted herewith;

Now, upon motion of Jenner & Block LLP, attorneys for Defendant and Counterclaim-

Plaintiff Marriott Hotel Services, Inc. ("Marriott");

Let the Plaintiff and Counterclaim-Defendant M Waikiki LLC ("Owner"), through its

officers or agents show cause before this Court at the Courthouse, 60 Centre Street, Room 442,

New York, New York 10007 on the ⊥ day of September 2011, at 9:30 a.m. or as soon

thereafter as counsel can be heard, why an order should not be granted:

(1)     Restraining and enjoining Owner from unilaterally declaring and installing as the
        Hotel's manager a party other than Marriott; and

(2)     Directing Owner to allow Marriott to, and restraining and enjoining Owner from,
        taking any actions that in any way interfere with Marriott's ability to: (a) fully
        perform its role as the Hotel's Manager in accordance with the Management
        Agreement, and (b) undo the harm and damage that resulted from Owner's
        purported ouster of Marriott; and

(3)     Restraining Owner from using, and directing Owner to return to Marriott, any and
        all copies of Marriott proprietary or confidential information or data.

*AND SUBJECT TO THE INTERLINEATED PARAGRAPH BELOW*

ORDERED, that pending the hearing of this motion: (1) Owner is restrained and enjoined

from unilaterally declaring and installing as the Hotel's manager a party other than Marriott; (2)

Owner must allow Marriott to, and is restrained and enjoined from taking any actions that in any

way interfere with Marriott's ability to, (a) fully perform its role as the Hotel's Manager in

accordance with the Management Agreement, and (b) undo the harm and damage that resulted

from Owner's purported ouster of Marriott; and (3) Owner is restrained from using, and must

return to Marriott, any and all copies of Marriott proprietary or confidential information or data;

and it is further

ORDERED, that a copy of this Order and the papers upon which it is granted shall be

served upon counsel for Owner, *handed to counsel in court* _____, by email on or before the ⊥ day of August 2011, and

*ORDERED THAT MARRIOTT SHALL BE ALLOWED TO RETURN TO ITS MANAGEMENT ROLE AT THE HOTEL BY 2:00 P.M. ON WEDNESDAY AUGUST 31, 2011 (HAWAII TIME; 8:30 P.M. EDT)*

that such service shall constitute good and proper service hereunder and shall be deemed due and

sufficient notice of this application; and it is further

ORDERED, that opposition papers, if any, shall be served upon counsel for Marriott such

that they are received no later than the close of business on September 6 , 2011

Dated: New York, New York
August 31, 2011

ENTER,

Justice of the Supreme Court

**HON. EILEEN BRANSTEN**
**J.S.C**



U.S. Bankruptcy Court - Hawaii #11-02371 Dkt # 15-1 Filed 09/01/11 Page 4 of 12

EXHIBIT "2"




U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 13-1   Filed 09/01/11   Page 6 of 12






SECURITY
MANAGEMENT
GUIDELINES

SAFETY
MANAGEMENT
GUIDELINES

CRISIS MANAGEMENT PLAN

CHRISTIAN EDITION

PANDEMIC PREPAREDNESS RESPONSE PLAN

CHRISTIAN'S INFORMATION



# 1 Engagement Survey

**revention - Discipline**

Discipline (Loss Prevention - Discipline)

*Included = All*

*ncluded = Engagement (Engagement, Engagement Questions);Engag
ent Drivers, Leadership Excellence Details, Quality of Life at Work D
Details, Teamwork Details, Total Rewards Details);API (Action Plann
dex Details);Detailed Results (Engagement, Leadership Excellence
Quality of Life at Work, Total Rewards, Action Planning, All Questic*

*ED - The Waikiki EDITION (HNLEB)*

MARRIOTT CONFIDENTIAL & PROPRIETARY INFORMATION

1                              Proceedings

2

3

4

5              THE COURT:  First place, I want to

6       thank both sides, everyone for their excellent

7       presentation.  This is a very serious issue, without a

8       doubt, and I think that both sides have articulated

9       their positions very clearly and very expertly.

10             So, for that I commend both sides.

11             However, in the balancing of everything, the

12      Court has decided as follows:

13             The Court is going to grant the temporary

14      restraining order.  The Court understands that this is

15      obviously -- well, the Court believes -- I think I'll

16      put it this way.

17             The Court believes that in the balance of

18      everything, that the Waikiki actions by coming in at

19      two o'clock on a Sunday morning when there was no

20      preliminary attempt to give any kind of notice

21      whatsoever, has caused irreparable harm to the

22      defendants.  And the reason why it has caused

23      irreparable harm to the defendants is that, first

24      place, they were displaced as the manager of the hotel.

25             Second, their reputation has been harmed in

26      the hotel community.

                  BONNIE PICCIRILLO - OFFICIAL COURT REPORTER

1              Proceedings

2              Third, that their trade secrets have been put

3    in tremendous jeopardy by putting in a competitor of

4    Marriott's, competitor as the person in charge of

5    running the organization, it allows the competitor to

6    have access to all of Marriott's secrets in terms of

7    who they're trying to sell their rooms to, all the

8    future sales that are going on, all their past sales,

9    their current hotel guest lists.  Everything that is

10   proprietary interest of Marriott has been disturbed by

11   the actions that Waikiki undertook.

12             The equities also favor Marriott.  The

13   argument that this is an agency relationship, so well

14   put forward by Mr. Renard on behalf of the Waikiki --

15   and I have to commend him, certainly excellent attorney

16   -- are counteracted by the expressed agreement in a

17   contract that was entered into -- I assume between two

18   very sophisticated business people, with the help of, I

19   assume, excellent attorneys on both sides -- with I'm

20   sure a very careful deliberation as to the terms of

21   this contract, that this contract was entered into

22   where expressed provisions were made that Waikiki would

23   not, would not invoke the issue of agency relationship

24   at any time in any argument if they tried to displace

25   Marriott.  The agency issue was removed by contractual

26   agreement between the parties.