RUSH MOORE LLP
A Limited Liability Law Partnership
SUSAN TIUS 2873-0
737 Bishop Street, Suite 2400
Honolulu, Hawaii 96813-3862
Tel. No. 521-0406
Fax No. 521-0497
E-mail: Stius@rmhawaii.com

SHEPPARD MULLIN RICHTER & HAMPTON LLP
CARREN B. SHULMAN
ALAN M. FELD
30 Rockefeller Plaza
New York, NY 10112-0015
Tel. No. (212) 653-8700
Fax No. (212) 653-8701
E-mail: CShulman@sheppardmullin.com
E-mail: AFeld@sheppardmullin.com

Attorneys for MARRIOTT INTERNATIONAL, INC.
and MARRIOTT HOTEL SERVICES, INC.

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF HAWAII

| | |
|---|---|
| In Re<br><br>M WAIKIKI LLC<br>           Debtor. | Case No. 11-02371<br>(Chapter 11)<br><br>MARRIOTT HOTEL SERVICES, INC.'S SUPPLEMENTAL MEMORANDUM PURSUANT TO THE COURT'S SECOND INTERIM ORDER ON MOTION FOR RELIEF FROM STAY; EXHIBIT A<br><br><u>Further Preliminary Hearing</u><br>Date:   October 5, 2011<br>Time:   2:00 p.m.<br>Judge:  Hon. Robert J. Faris<br><br>Related Dkt Nos. 13, 77, 159, 161 and 179 |

## MARRIOTT HOTEL SERVICES, INC.'S SUPPLEMENTAL MEMORANDUM PURSUANT TO THE COURT'S SECOND INTERIM ORDER ON MOTION FOR RELIEF FROM STAY

Pursuant to the Court's request set forth in its Second Interim Order on Motion for Relief from Stay, Docket No. 161, Marriott Hotel Services, Inc. ("Marriott") hereby submits this supplemental memorandum for entry of a supplemental interim order granting adequate protection to Marriott with respect to certain electronic data retained by debtor M Waikiki LLC ("Debtor"), its current manager and their representatives at the hotel formerly known as The Waikiki Edition Hotel in Honolulu (the "Hotel") and certain information electronically transferred by Debtor, its current manager and their representatives, and respectfully represents as follows:

### BACKGROUND

Since the takeover of the Hotel on August 28, 2011, Debtor has retained two major folders containing Marriott's proprietary and confidential information including Marriott Intellectual Property (the "Marriott Materials") on the Hotel's file server. (Declaration of Shastri Maraj ("Maraj Decl."), ¶ 2). These folders, the GroupData folder and UserData folder (collectively, the "Marriott Folders"), contain over 112,000 documents and are composed of all electronic information used by Marriott in operating the Hotel prior to the takeover, including Marriott Materials ranging from payroll information and Marriott customer lists to proprietary standard operating procedures. The folders also contain attorney-client privileged correspondences between Marriott and its counsel pertaining to state court litigation with Debtor. (Maraj Decl., ¶ 3). Given the large size of the Marriott Folders, it would take many weeks, and potentially a month, to conduct a review of each document individually contained in the folders. (Maraj Decl., ¶ 4). A number of the documents in the Marriott Folders constitute electronic versions of documents that both Debtor and Marriott have previously agreed are Marriott Materials

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 195   Filed 09/29/11   Page 2 of 27

protected under an interim order entered by the Court. (Maraj Decl., ¶ 5). There is a need for urgency to protect documents within the Marriott Folders because Debtor is essentially undoing the protection afforded by the Court's interim order by retaining an electronic copy of all of the information that was supposed to have been removed from Debtor's possession weeks ago. Each day that passes permits Debtor and its representatives and current manager – a Marriott competitor – to continue accessing Marriott's proprietary, confidential, and/or privileged information without Marriott's permission or consent.

Notwithstanding that Marriott has informed Debtor that it is in possession of proprietary, confidential, and attorney-client privileged information, to date Debtor has refused to turn this information over to Marriott. (Maraj Decl., ¶ 6). On Monday, September 26, 2011, Marriott provided Debtor with a list of folders on the L: drive containing primarily proprietary, confidential, or privileged information. Debtor has yet to agree to turn even those folders over to Marriott. Debtor's intransigence belies Debtor's statements to this Court that it has no interest in Marriott's proprietary information. Debtor has taken every opportunity to stall and delay in the hopes that it can continue possessing this information for as long as possible, notwithstanding that Debtor has no right – contractual or otherwise – to do so.

Even more worrisome is the fact that Marriott has reason to believe that Debtor, its manager, and their representatives have attempted to access information in the Marriott Folders since Debtor's takeover of the Hotel on August 28, 201. In addition to the "cracked and inventoried" post-it notes displayed on the Hotel's computers, Debtor's representatives have admitted outright that they have accessed Marriott's proprietary information. By way of example, when Marriott's counsel participated in a review of documents at the Hotel, Debtor's representatives stated outright that Marriott's customer lists and "leads" were "currently in use" by Debtor's current manager and therefore could not be turned over to Marriott. Moreover, given the electronic nature of the documents in

the Marriott Folders, any person with access to the Hotel's file server can easily transfer a copy of any document on the server, including documents in the Marriott Materials, with the original version retained on the server. (Maraj Decl., ¶ 7).

In addition to sending out Marriott Materials already in electronic form, Marriott has reason to believe that Marriott Materials in hardcopy form may have been copied, scanned and distributed by Debtor, Debtor's current manager and their representatives. To date, Debtor has refused to provide Marriott with any information about which files it has scanned, copied, and removed from the Hotel electronically, contending that such files were not "removed" even though a copy was sent outside of the Hotel and remains outside of the Hotel.

Finally, Debtor's limited assurances to date have provided Marriott with no comfort. For instance, while Debtor has indicated that at some point (the exact point is unknown) Debtor limited access to the file server to a single employee, that employee still has the ability to send any documents on the server to anyone else who requests to see them. Moreover, Marriott has no reason to believe that Debtor has been tracking which files it has accessed, copied, scanned, or provided to Modern Management (or other unauthorized parties), notwithstanding Debtor's knowledge that the server contains proprietary, confidential, and privileged information. In combination with Debtor's middle-of-the-night ouster of Marriott and replacement with a competing hotel manager, and Debtor's last-second petitioning for bankruptcy in an attempt to avoid complying with a New York court order, Debtor has given Marriott no reason to trust its word. Marriott therefore sought and continues to seek adequate protection from this Court.

On September 8, 2011, after a preliminary hearing on Marriott's motion for relief from stay, Docket No. 13 (the "Motion"), this Court entered an interim order granting adequate protection to Marriott pending a final hearing on the Motion, Docket

No. 77 (the "Interim Order"). After failure to reach agreement on a protocol with Debtor relating to electronically stored information, Marriott placed the following issues before the Court at the September 16, 2011 status conference: (1) Protection of the Marriott Materials stored on the Hotel's file server; and (2) Protection of the Marriott Materials that may have been scanned, emailed, or otherwise electronically removed from the Hotel by Debtor, Debtor's current manager, or Debtor's representatives. On September 19, 2011, at the Court's request, Marriott and Debtor each submitted their respective proposals regarding the foregoing electronic data issues. A copy of Marriott's letter proposal that was previously submitted to the Court, together with Marriott's proposed supplemental interim order, Docket No. 159 (the "Supplemental Interim Order") is attached hereto as Exhibit A.

In light of the foregoing facts regarding the nature of the information stored at the Hotel, including items that are indisputably Marriott Materials that must be turned over to a third party or Marriott pursuant to the Interim Order, and Marriott's reasonable belief that Debtor, its current manager, or their representatives may have accessed or transferred Marriott Materials in violation of the Interim Order, Marriott requests that the Court enter the Supplemental Interim Order, authorizing certain procedures that will extend the general protections granted to Marriott under the Interim Order to the type of electronic data discussed herein.

**THE SUPPLEMENTAL INTERIM ORDER IS NECESSARY TO EXTEND THE PROTECTIONS GRANTED TO MARRIOTT IN THE INTERIM ORDER TO ELECTRONIC DATA RETAINED IN VIOLATION OF THE INTERIM ORDER**

Given the nature of electronic data stored on the Hotel's server and the ease at which such data can be transferred by portable devices capable of accessing, sending, receiving, and storing electronic information (e.g. computers, laptops, smart phone devices), the relief requested in the Supplemental Interim Order is necessary to extend the relief already granted in the Interim Order to the electronic data contained in the Marriott

Folders and information that may have been electronically transferred by Debtor, its current manger, and their representatives.

A.    **The File Server Issue**

      The procedure contemplated by the Interim Order to carry-out the adequate protection granted to Marriott under the Interim Order is not readily applicable to the electronic data stored in the Marriott Folders on the Hotel's file server. Moreover, since a great number of documents are indisputably Marriott Materials, it is far more efficient to isolate the documents Debtor is entitled to retain under the Interim Order rather than to go document-by-document to determine what is in fact a confidential and proprietary document belonging to Marriott. Since Marriott intends to preserve the protections granted to Debtor under the Interim Order and Debtor has failed to provide any reason for retaining documents contained in the Marriott Folders that do not constitute documents it is permitted to retain pursuant to Paragraphs 4(b)-(f) of the Interim Order (the "Hotel Documents"), the procedures for protecting electronic data set forth in Marriott's Supplemental Interim Order will not prejudice Debtor and comports with the relief granted under the existing Interim Order.

      With respect to the documents in the Marriott Folders, Marriott proposes the following procedures[1]:

      (1)    Marriott shall make an identical copy of the Marriott Folders to be held by the Third Party (as defined in the Interim Order). Marriott may then delete all Marriott Folders (except for the Hotel Documents) from the Hotel's file server. To the extent Debtor seeks access to documents on the Marriott Folders that it is not otherwise

---

[1]    These procedures are set forth in greater detail in Marriott's Supplemental Interim Order attached to this memorandum.

entitled to retain under the Interim Order, Debtor must seek approval by a Marriott representative. If such approval is denied, the Court may resolve the dispute. As an alternative to the foregoing, in the event Debtor is not required to relinquish all copies of the Marriott Folders, a third party forensics expert should be allowed to turn on the "Auditing" function on the file server which will track and notify such third party and Marriott of any access to the Marriott Folders on a going-forward basis.[2] Marriott prefers the former to the latter because the latter involves additional cost and only provides Marriott with notice *after* its information has been accessed by Debtor, its representatives, or its current manager. (Maraj Decl., ¶ 10).

(2)     To determine whether any Marriott Materials have been previously accessed, scanned, copied, distributed or otherwise utilized by Debtor, Marriott shall be entitled to bring its own forensics consultant to the Hotel to examine the Hotel's photocopy machines, file server for the Hotel computers, Hotel workstations and PCs and perform certain technical tasks.

Given the irreparable harm that would occur to Marriott should its confidential and proprietary information be made available to another party, especially a competitor, the nature of electronic information at issue, and the feasibility of the technical tasks proposed by Marriott, the foregoing proposed relief is necessary and appropriate. (*See* Maraj Decl., ¶¶ 8, 9, 10, 11, and 12).

As an alterative solution, Debtor has proposed that, rather than completely relinquishing the Marriott Folders (except for the Hotel Documents), access to the Marriott Folders be limited to an information technology consultant employed by a representative

---

[2]     In Debtor's proposal letter, Docket No. 160, Debtor concedes that a tracking function may be enabled on the Hotel's file server to monitor any future access to the Marriott Folders.

of Debtor. This proposal does not afford Marriott with any protection. The IT consultant himself has no need for any document contained in the Marriott Folders, so obviously Debtor's proposal intends for the IT consultant to be able to provide any document to anyone else who requests to see them. That is hardly different from allowing everyone direct access to the server. Moreover, under the terms of the Interim Order, if Debtor has a need for a document that is not a Hotel Document, it must first inform Marriott and seek a Court determination. (Interim Order, ¶ 4). By restricting access to an employee of Debtor's representative, Debtor seeks to place someone from its own camp as the gatekeeper of disputed materials in clear contravention of the procedure set forth in the Interim Order. While Debtor insists that Marriott's proposed Supplemental Interim Order goes beyond what is contemplated in the Interim Order, it is actually Debtor's proposed solution that goes against the clear directives set forth in the Interim Order. Marriott's solution, on the other hand, merely adapts the existing procedures to a certain type of data that was not specifically addressed in the Interim Order. The solution proposed by Marriott will not be more burdensome on Debtor than the existing procedures set forth in the Interim Order.[3] If Debtor contends to the contrary, then Marriott can only infer that Debtor has been regularly accessing information on the file server with ease, which demonstrates even more readily why additional relief is required.

**B.** **The Electronic Removal Issue**

      To determine whether Debtor, its current manager, or their representatives have electronically removed materials located at the Hotel in contravention of the Interim

---

[3]    As discussed above, to the extent Debtor seeks to retain information that Marriott has asserted in good faith is a Confidential Material (as defined in the Interim Order), Debtor is required to engage in a dispute resolution procedure that involves conferring with Marriott and seeking a resolution before the Court if no agreement is reached. As such, given that Marriott has a reasonable belief that most, if not all, documents within the Marriott Folders are Confidential Materials (except for the Hotel Documents), placing all such electronic documents with a third party complies with the Interim Order and does not place any increased burden on Debtor.

Order, Marriott seeks the turnover of certain email attachments along with a log explaining when, to whom, and from whom the attachments were sent. In order to expedite the process and avoid the need for a privilege review, Marriott is not seeking turnover of the emails themselves at this point. Marriott simply wants to know what documents were taken from the Hotel's files, copied or scanned, and emailed out by Debtor, Debtor's representatives, and the management-level employees of Debtor's current manager. The number of individuals involved should therefore be reasonably limited (e.g., Marriott does not need Debtor to review the emails of 200+ housekeepers, bartenders, etc.). Through the use of basic search parameters, the specific scope of information sought by Marriott under the Supplemental Interim Order can be easily identified and reviewed for turnover to Marriott. (*See* Maraj Decl., ¶ 13).

In its proposal letter, Debtor no longer appears to contend that information removed electronically is beyond the scope of the Interim Order.[4] However, to the extent that Debtor refuses to create a log and turn over the corresponding attachments sought by Marriott under the Supplemental Interim Order, Marriott requests that a forensics expert be permitted to examine all devices capable of accessing, sending, receiving, or storing electronic information used by certain employees of Debtor, its current manager, or their affiliates, to determine whether any Marriott Materials were transferred or received in violation of the Interim Order by, among other things, extracting forensic images of such devices. (*See* Maraj Decl., ¶ 14). This alternative solution is an application of the general relief granted in the Interim Order – that the Marriott Materials are entitled to protection pending a final hearing on the Motion and that Marriott is entitled to review materials that

---

[4] "To the extent not already done, the Debtor will continue those efforts, including causing each of its representatives that the Debtor reasonably believes to have had the ability to access any of Marriott's alleged confidential information to review such person's 'sent' emails that contain attachments, for the period from August 28, 2011 to September 8, 2011, and segregate any attachments that contain any alleged Confidential Information."

have been removed electronically. It is less preferable, however, because of the cost associated with retaining a third party forensics expert. Marriott only seeks this alternative proposal in the event that Debtor refuses to turnover the email attachments and accompanying log identified by Marriott in its Supplemental Interim Order.

Lastly, Marriott seeks confirmation that Debtor, its affiliates, and their representatives remain in compliance with the current litigation hold required to be in place under applicable rules of civil procedure. This request does not impose any additional burden on Debtor beyond what is already required under applicable law.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Marriott respectfully requests that the Court grant the relief requested herein and enter its proposed Supplemental Interim Order.

DATED: Honolulu, Hawaii, September 29, 2011.

/s/ Susan Tius
SUSAN TIUS
Attorney for MARRIOTT HOTEL
SERVICES, INC.

DATED: Los Angeles, California, September 29, 2011.

/s/ Alan M. Feld
ALAN M. FELD
Attorney for MARRIOTT HOTEL
SERVICES, INC.



333 South Hope Street | 43rd Floor | Los Angeles, CA 90071-1422
213-620-1780 *office* | 213-620-1398 *fax* | *www.sheppardmullin.com*

Writer's Direct Line: 213-617-4133
AFeld@sheppardmullin.com

September 19, 2011

Our File Number: 17ZN-157761

Honorable Robert J. Faris
United States Bankruptcy Court
District of Hawaii
1132 Bishop Street, Suite 250
Honolulu, HI 96813

Re:    In re M Waikiki LLC ("Debtor"), Case No. 11-02371 (the "Bankruptcy
       Case"), in the United States Bankruptcy Court for the District of Hawaii
       (the "Court") – Proposed relief sought by Marriott International, Inc. and
       Marriott Hotel Services, Inc. (collectively, "Marriott")

Dear Judge Faris:

        At the status conference held on September 16, 2011 before this Court, on the
Motion for Relief from Stay filed by Marriott in the Bankruptcy Case (the "Stay Relief Motion"),
you requested that the parties submit to you their proposed solutions to the following issues
raised by Marriott:

        (1)    Protection of Marriott's proprietary and confidential information,
including its Intellectual Property ("Marriott Materials") stored on the Hotel's file server; and

        (2)    Protection of Marriott Materials that may have been scanned, emailed, or
otherwise electronically removed from the Hotel by Debtor, Debtor's current manager, or
Debtor's representatives.

        The File Server Issue

        With respect to the first issue, since the takeover on August 28, 2011, Debtor has
retained two major folders containing Marriott Materials on the Hotel's file server. The
GroupData and UserData folders essentially contain all of the electronic information utilized by
Marriott as operator of the Hotel, including vast amounts of proprietary information ranging
from confidential payroll information to Marriott customer lists to Marriott proprietary practices
and procedures to attorney-client privileged correspondence pertaining to the New York State
litigation between Marriott and Debtor. These folders contain over 112,000 documents,
including electronic versions of documents that are indisputably protected under the Interim
Order and must either be turned over to the Third Party or Marriott.

**EXHIBIT "A"**

Marriott's management team informs us that it will take many weeks and potentially a month to review each document individually. For Debtor, its current manager, and its representatives to possess this information in the interim is unacceptable. Even if Debtor limits access to these documents to a single employee, that employee will be able to provide any and all documents to anyone else who requests to see them. And while Debtor professes not to have any interest in Marriott's confidential information, Debtor's representatives were openly attempting to utilize such information, including Marriott's customer lists, before the Interim Order was entered, claiming in front of Marriott's counsel and representatives that such information was "currently in use" by Debtor's current manager.

To ensure that Debtor and its current manager do not have access to the Marriott Materials (and any disputed Marriott Materials), Marriott proposes that the parties be permitted to take the following actions:

- In order to protect Marriott's confidential and proprietary information on a forward-looking basis, Marriott shall make an identical copy of the GroupData folder (the "L:" drive) and in the UserData folder (the "H:" drive) (collectively, the "Marriott Folders") on the Hotel's file server and place them with a Third Party. Marriott may then delete the Marriott Folders from the Hotel's file server and any back-up copies (including new and replacement back-up tapes) of the Marriott Folders, except for documents that Debtor is not required to relinquish under Paragraph 4(b)-(f) of the Interim Order. The Third Party shall enable Debtor to access a document in the Marriott Folders if and only if it first obtains approval from a designated Marriott representative. If Debtor believes that, notwithstanding a lack of approval by Marriott, Debtor needs the document for operation of the Hotel, Debtor may contact the Court, after providing notice to Marriott, and both parties agree to appear with shortened notice for the Court to resolve the dispute.

As an alternative to the foregoing, Marriott will have to review the files one-by-one, a process which would take many weeks and possibly a month. In the meantime, Marriott would request the following interim measures of protection. A third party forensics expert shall be allowed to access the Hotel's file server to turn on the "Auditing" function on the file server which will track and notify such third party and Marriott of any access to the Marriott Folders on the server by Debtor, Debtor's current manager, or Debtor's representatives. Debtor shall turn over to the third party any back-up copies it may have of the Marriott Folders. The cost of the third party should be split evenly between Marriott and Debtor. To the extent that Debtor has accessed information in the Marriott Folders that do not otherwise constitute documents that Debtor is permitted to retain under Paragraph 4(b)-(f) of the Interim Order, Marriott should have the right to remove such information

from the Marriott Folders. If Debtor believes that notwithstanding the designation Debtor needs the document for operation of the Hotel, Debtor may contact the Court, after providing notice to Marriott, and both parties agree to appear with shortened notice for the Court to resolve the dispute.

- Separate and apart from the foregoing, and in order to protect Marriott's confidential and proprietary information which may have been *already* accessed, copied, scanned, or otherwise utilized by Debtor, Debtor's current manager, or Debtor's representatives, Marriott shall be entitled to bring its own forensics consultant to the Hotel to access the Hotel's photocopy machines in order to assess what information has been scanned, copied, printed, or otherwise utilized since August 28, 2011. To the extent the Hotel's photocopy machines have such capability, Marriott shall be permitted to access and activate any auditing and storage functions on the machines to review documents that have been scanned and copied on the machines since August 28, 2011.

- Marriott shall also be entitled to bring its own forensics consultant to the Hotel to access the file server for the Hotel computers and the Hotel workstations and PCs in order to assess what information has been accessed, copied, printed, or otherwise utilized since August 28, 2011. The specific technical tasks to be performed by Marriott's forensics consultant are set forth in detail in the attached Proposed Supplemental Interim Order.

The Electronic Removal Issue

As we informed the Court last Friday, Marriott is concerned that Debtor and its current manager have electronically removed Marriott Materials from the Hotel in violation of the Interim Order. Paragraph 3 of the Interim Order states that "Any copies of any information and materials that have been removed (either physically or electronically) since August 28, 2011 by Debtor or Debtor's Representatives shall be returned and made available for Marriott's review." Marriott needed this provision – including the clarification that removal includes "electronic" removal – because it is deeply concerned that Debtor, Debtor's current manager, or Debtor's representatives may have shared via e-mail Marriott's confidential and proprietary information with persons not entitled to access such information. Marriott's removal of the original physical copy of a document does not protect that information if it has already been copied, scanned, and distributed by Debtor, Debtor's current manager, or Debtor's representatives. Yet thus far, Debtor has refused to make available for Marriott's review information that has been removed electronically, and has contended that documents it has scanned and emailed have not been "removed" because the original remains at the Hotel. That position is obviously unacceptable to Marriott, given that the entire purpose of the Interim Order

was to protect the integrity of its proprietary and confidential information and to limit access to such information by unauthorized persons or parties.

To determine whether any electronic removal of Marriott Materials has occurred and to provide Marriott with a fair opportunity to assess whether documents that have been scanned and electronically removed in fact constitute proprietary or confidential information, Marriott has requested that it be permitted to review certain outgoing email sent by employees and representatives of Debtor and its current manager since August 28, 2011. Marriott is not requesting to review all emails sent by all Hotel employees over the past month, nor is Marriott attempting to take discovery. Rather, Marriott is simply attempting to enforce Paragraph 3 of the Interim Order by requesting to know which documents have been taken from the Hotel's files, scanned, and e-mailed out by Debtor, Debtor's current manager, or Debtor's representatives.

At the status conference, you requested that the parties submit in writing a proposal to facilitate enforcement of the Interim Order. Marriott proposes the following limited procedure, which we have advised could be implemented with minimal burden on Debtor:

- On or before September 25, 2011, Debtor shall provide Marriott with a log of [a]ny and all electronic mail messages sent on and after August 28, 2011 which included either (i) any Document of any kind as an attachment or (ii) any Document from the Marriott Folders or scanned at the Hotel, (whichever the Court determines is less burdensome to Debtor)[1], that was sent by any management-level employee of Modern Management Services, LLC ("Modern") or any Modern employee working in the Accounting Office, Sales Office, or Front Offices at any time on and after August 28, 2011, or any employee or consultant of Aqua Hotels and Resorts, Bond HD or Debtor who has had access to the Hotel since August 28, 2011 (including consultants retained by Debtor's counsel) to any employee, representative, or consultant of Debtor, the Debtor Representatives, Aqua Hotels & Resorts, or any other affiliate of Debtor or the Debtor Representatives (including consultants retained by Debtor's counsel). The log shall include the following fields: "From," "To," "Cc," "Bcc," Date & Time Sent, and shall be accompanied by

---

[1]     Option (i) would eliminate the need for Debtor to review each email individually in order to assess whether the attachment is a document taken from the Hotel or something brought into the Hotel by Debtor or its representatives; this would eliminate any burden on Debtor to review the attachments. Option (ii) would require Debtor to review the attachments to determine whether they are documents taken from the Hotel or not, but would allow Debtor to provide Marriott with a more limited set of information. Marriott does not have a preference as between Options (i) and (ii) and submits that the Court may leave it in Debtor's discretion whether to elect Option (i) or (ii).

a copy of each attachment so that Marriott can review the attachments and have an opportunity to designate such attachments as Confidential Materials in accordance with the Interim Order. Note that at this time Marriott is <u>not</u> requesting a copy of the actual email with which the attachment was sent; this will ensure that no privileged communications are provided to Marriott and will minimize any burden on Debtor.

As an alternative to the foregoing, a forensics expert shall have access to all devices capable of accessing, sending, receiving, or storing electronic information, including, without limitation, computers, laptops and smart phone devices (e.g. Blackberries and iPhones) used by any management-level employee of Modern or any Modern employee working in the Accounting Office, Sales Office, or Front Offices at any time on and after August 28, 2011, or any employee or consultant of Aqua Hotels and Resorts, Bond HD or Debtor who has had access to the Hotel since August 28, 2011 (including consultants retained by Debtor's counsel). The forensics expert shall examine such devices to determine whether any Marriott Materials were electronically transferred or received in violation of the Interim Order by, among other things, extracting forensic images of such devices. The forensics expert shall provide said images to Marriott for Marriott's review. The cost of the third party forensics expert should be split evenly between Marriott and Debtor

- In accordance with the current litigation hold required to be in place under applicable rules of civil procedure, Debtor shall continue to preserve, and ensure preservation of, all evidence pertaining to disputed issues between the parties in the Bankruptcy Case (and in the New York State litigation), including, without limitation all electronic mail messages sent on and after August 28, 2011, by any employee, representative, or consultant of Debtor, the Debtor Representatives, Aqua Hotels & Resorts, or any other affiliate of Debtor or the Debtor Representatives (including consultants retained by Debtor's counsel).

To the extent that a third party forensics expert is necessary to implement the foregoing relief, Marriott proposes that Verizon Cybertrust, an independent, third-party information security services provider, be retained to assist the parties.

For the Court's convenience, attached is a Proposed Supplemental Interim Order providing for the relief requested herein.

Respectfully,

*Alan M. Feld*

Alan M. Feld

for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Enclosure

cc:    Carren B. Shulman (cshulman@sheppardmullin.com)
       Lindsay C. Harrison (lharrison@jenner.com)
       James P. Muenker (jmuenker@neliganlaw.com)
       Patrick K. Neligan, Jr. (pneligan@neliganlaw.com)
       Simon Klevansky (sklevansky@kplawhawaii.com)
       Alika L. Piper (apiper@kplawhawaii.com)
       Lisa Fenning (Lisa.Fenning@Aporter.com)
       Tom E. Roesser (troesser@carlsmith.com)
       Ronald K. Kotoshirodo (rkotoshirodo@hawaii.rr.com)
       James A. Wagner (jwagner@hibklaw.com)
       Chuck C. Choi (cchoi@hibklaw.com)
       Sharon V. Lovejoy (slovejoy@starnlaw.com)
       Christopher J. Muzzi (cmuzzi@hilaw.us)

RUSH MOORE LLP
A Limited Liability Law Partnership

SUSAN TIUS  2873-0
737 Bishop Street, Suite 2400
Honolulu, Hawaii  96813-3862
Tel. No. (808) 521-0406
Fax No. (808) 521-0497
E-mail: Stius@rmhawaii.com

SHEPPARD MULLIN RICHTER & HAMPTON LLP

CARREN B. SHULMAN
ALAN M. FELD
30 Rockefeller Plaza
New York, NY 10112-0015
Tel. No. (212) 634-3040
Fax No. (212) 655-1740;
E-mail: CShulman@sheppardmullin.com

Attorneys for MARRIOTT INTERNATIONAL, INC.
 and MARRIOTT HOTEL SERVICES, INC.

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF HAWAII

| | |
|---|---|
| In Re: | ) CASE NO. 11-02371 |
| | ) |
| M Waikiki LLC | ) (Chapter 11) |
| | ) |
| Debtor(s). | ) |
| | ) Date:  September 16, 2011 |
| | ) Time:  10:30 a.m. |
| | ) Judge: Honorable Robert J. Faris |
| | ) |

**SUPPLEMENTAL INTERIM ORDER GRANTING ADEQUATE PROTECTION TO
MARRIOTT INTERNATIONAL, INC. AND MARRIOTT HOTEL SERVICES, INC.
PENDING FINAL HEARING ON MOTION FOR RELIEF FROM STAY**

On September 8, 2011, after a preliminary hearing on

the *Motion for Relief from Stay*, Docket No. 13 (the "Motion")

filed by Marriott International, Inc. on behalf of itself and

its wholly owned subsidiaries, including Marriott Hotel Services, Inc. ("Marriott"), this Court had entered the *Interim Order Granting Adequate Protection to Marriott International, Inc. and Marriott Hotel Services, Inc. Pending Final Hearing on Motion for Relief from Stay*, Docket No. 77 (the "Interim Order"). Capitalized terms used herein that are not otherwise defined shall have the definitions set forth in the Interim Order.

On September 16, 2011, this Court held a status conference on the Motion (the "Status Conference"). Appearances at the Status Conference were as noted in the record. Upon review and consideration of the arguments made at the Status Conference and all prior documents filed in connection with the Motion, and in furtherance of the Interim Order,

**IT IS HEREBY ORDERED THAT:**

1. Pending a final hearing on the Motion, Marriott is GRANTED the additional adequate protection set forth below, with all parties reserving their rights to dispute the confidential and proprietary nature of specific materials.

2. In furtherance of the relief granted under Paragraphs 2 and 3 of the Interim Order that Debtor turn over to Marriott or a Third Party all Confidential Materials, including, without limitation, all of Marriott's Intellectual Property, to

U.S. Bankruptcy Court - Hawaii #11-02371 Dkt # 159 Filed 09/22/11 Page 8 of 17
U.S. Bankruptcy Court - Hawaii #11-02371 Dkt # 195 Filed 09/29/11 Page 18 of 27

protect Marriott's Confidential Materials on a forward-looking basis:

    (a)    Marriott shall be entitled to:

    (i)    make an identical copy of the GroupData folder (the "L:" drive) and the UserData folder (the "H:" drive) (collectively, the "Marriott Folders") that are on the Hotel's file server and place them with the Third Party.

    (ii)    Delete all documents within the Marriott Folders on the Hotel's file server (including new and replacement back-up tapes), except for documents that Debtor is not required to relinquish under Paragraph 4(b)-(f) of the Interim Order. The Third Party shall enable Debtor to access a document in the Marriott Folders if and only if it first obtains approval from a designated Marriott representative. The Marriott representative shall have a reasonable opportunity to review the document and assess whether or not it constitutes Confidential Material. If the Marriott representative believes that it constitutes Confidential Material, it shall so inform the Third Party and Debtor shall not be entitled to access the document. If Debtor believes in good faith that notwithstanding the designation

U.S. Bankruptcy Court - Hawaii #11-02371 Dkt # 159 Filed 09/22/11 Page 9 of 17
U.S. Bankruptcy Court - Hawaii #11-02371 Dkt # 195 Filed 09/29/11 Page 19 of 27

Debtor needs the document for the operation of the Hotel, Debtor shall inform Marriott and the parties shall attempt to reach an agreement. If no agreement may be reached, the dispute may be resolved by the Court on an expedited basis upon notice to both Debtor and Marriott and a hearing on shortened notice, which may be by telephone or in person.

As an alternative to the foregoing, in the event that Marriott is instead required to review the files one-by-one, a process which would take many weeks and possibly a month, Marriott shall be entitled to the following interim measures of protection:

(iii)  A third party forensics expert shall be allowed to access the Hotel's file server to turn on the "Auditing" function on the file server which will track and notify such third party and Marriott of any access to the Marriott Folders on the server by Debtor, Debtor's current manager, or the Debtor Representatives. Debtor shall turn over to the third party any back-up copies it may have of the Marriott Folders. The cost of the third party should be split evenly between Marriott and Debtor. To the extent that Debtor has accessed information in the Marriott Folders that do not otherwise constitute documents

that Debtor is permitted to retain under Paragraph 4(b)-(f) of the Interim Order, a Marriott representative shall have a reasonable opportunity to review the document and assess whether or not it constitutes Confidential Material as defined in the Interim Order. If the Marriott representative believes that it constitutes Confidential Material, it shall so inform the Third Party who will then be permitted to access the Hotel's server to remove such information from the Marriott Folders. If Debtor believes that notwithstanding the designation Debtor needs the document for operation of the Hotel, Debtor may contact the Court, after providing notice to Marriott, and both parties agree to appear with shortened notice for the Court to resolve the dispute.

(b) Separate and apart from the foregoing, and in order to protect Marriott's confidential and proprietary information which may have been already accessed, copied, scanned, or otherwise utilized by Debtor, Debtor's current manager, or the Debtor Representatives, Marriott shall be entitled to bring its own forensics consultant to the Hotel to access the Hotel's photocopy machines in order to assess what information has been scanned, copied, printed, or otherwise utilized since August 28, 2011. To the extent

W02-EAST:1GIG1\200423863.2

5

U.S. Bankruptcy Court - Hawaii #11-02371 Dkt # 159 Filed 09/22/11 Page 11 of 17
U.S. Bankruptcy Court - Hawaii #11-02371 Dkt # 195 Filed 09/29/11 Page 21 of 27

the Hotel's photocopy machines have such capability, Marriott shall be permitted to access and activate any auditing and storage functions on the machines to review documents that have been scanned and copied on the machines since August 28, 2011.

(c) Marriott shall also be entitled to bring its own forensics consultant to the Hotel to access the file server for the Hotel computers and the Hotel workstations and PCs in order to assess what information has been accessed, copied, printed, or otherwise utilized since August 28, 2011. Without limiting the generality of the foregoing sentence, Marriott's forensics consultant may perform onsite and offsite assessment of data usage as described below:

(i) <u>Onsite</u>: Marriott's forensics specialist will perform a disk level forensic image of the Hotel laptop hard drives' as well as the Hotel file server (or multiple file servers as needed). This process will cover Marriott's assets, as well as the systems that have been used since August 28, 2011 by any employee or consultant of Debtor, the Debtor Representatives, or Aqua Hotels & Resorts. The images will be acquired using EnCase or AccessData FTK Imager software (software licensed to Marriott). Two copies

W02-EAST:1GIG1\200423863.2                6

U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 159  Filed 09/22/11  Page 12 of 17
U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 195  Filed 09/29/11  Page 22 of 27

of each drive will be made; one will be the "best" copy and will be preserved as evidence. The second will be a "working copy" which will be used for forensic analysis. If possible the image should be made from a live system so information that is in memory will not be lost if the machine is powered down. Best practice should be followed in regard to Chain of Custody.

(ii) <u>Offsite</u>: Further offsite examination of the disk images will include searching across the entire disk for Marriott confidential and proprietary information that could have been copied, printed, moved or deleted since August 28, 2011. Specific areas of interest include, without limitation: (A) an analysis of all external devices that were connected to the systems being examined (e.g. USB drives, external hard drives, CD ROMs, back-up tapes, etc.); (B) evaluation of the registry for evidence of Marriott documents that could have been moved or copied to external media; and (C) examining user profiles and all Internet information.

3. In furtherance of the relief granted under Paragraph 3 of the Interim Order — stating that "[a]ny copies of any information and materials that have been removed (either

physically or electronically) since August 28, 2011 by the Debtor or the Debtor Representatives shall be returned and made available for Marriott's review", Marriott shall be entitled to the following additional interim relief:

(a) On or before September 25, 2011, Debtor shall provide Marriott with a log of [a]ny and all electronic mail messages sent on and after August 28, 2011 which included either (i) any Document of any kind as an attachment or (ii) any Document from the Marriott Folders or scanned at the Hotel, (whichever the Court determines is less burdensome to Debtor), that was sent by any management-level employee of Modern Management Services, LLC ("Modern") or any Modern employee working in the Accounting Office, Sales Office, or Front Offices at any time on and after August 28, 2011, or any employee or consultant of Aqua Hotels and Resorts, Bond HD or Debtor who has had access to the Hotel since August 28, 2011 (including consultants retained by Debtor's counsel) to any employee, representative, or consultant of Debtor, the Debtor Representatives, Aqua Hotels & Resorts, or any other affiliate of Debtor or the Debtor Representatives (including consultants retained by Debtor's counsel). The log shall include the following fields: "From," "To," "Cc," "Bcc," Date & Time Sent, and shall be accompanied by a copy

of each attachment so that Marriott can review the attachments and have an opportunity to designate such attachments as Confidential Materials in accordance with the Interim Order.[1]

As an alternative to the foregoing, a forensics expert shall have access to all devices capable of accessing, sending, receiving, or storing electronic information, including, without limitation, computers, laptops and smart phone devices (e.g. Blackberries and iPhones) used by any management-level employee of Modern or any Modern employee working in the Accounting Office, Sales Office, or Front Offices at any time on and after August 28, 2011, or any employee or consultant of Aqua Hotels and Resorts, Bond HD or Debtor who has had access to the Hotel since August 28, 2011 (including consultants retained by Debtor's counsel) (collectively, the "Devices"). The forensics expert shall examine the Devices to determine whether any Marriott Materials were electronically

---

[1] As used herein, the term "Document" means and includes any kind of written, typewritten, printed or recorded material (including recorded on computer hardware or software) whatsoever, regardless of the source or author thereof, including, without limitation, any writings, notes, memorandum, telexes, telegrams, minutes of meetings, inter office communications, notices, circulars, bulletins, manuals, results of investigations, reports, studies made for business use, contracts, agreements, evaluations, plans, pictures, tape recordings, transcripts of conversations or tape recordings, desk calendars, diaries, time sheets or logs, job or transaction files, whether used or not, or any other writing or recording.

W02-EAST:1GlG1\200423863.2

9

U.S. Bankruptcy Court - Hawaii  #11-02371   Dkt # 159   Filed 09/22/11   Page 15 of 17
U.S. Bankruptcy Court - Hawaii  #11-02371   Dkt # 195   Filed 09/29/11   Page 25 of 27

transferred or received in violation of the Interim Order by, among other things, extracting forensic images of the Devices. The forensics expert shall provide said images to Marriott for Marriott's review. The cost of the third party forensics expert should be split evenly between Marriott and Debtor.

(b) In accordance with the current litigation hold required to be in place under applicable rules of civil procedure, Debtor shall continue to preserve, and ensure preservation of, all evidence pertaining to disputed issues between the parties in the Bankruptcy Case (and in the New York State litigation), including, without limitation all electronic mail messages sent on and after August 28, 2011, by any employee, representative, or consultant of Debtor, the Debtor Representatives, Aqua Hotels & Resorts, or any other affiliate of Debtor or the Debtor Representatives (including consultants retained by Debtor's counsel).

4. To the extent that a third party forensics expert is necessary to implement the additional interim relief set forth in this Supplemental Interim Order, Verizon CyberTrust, an independent information security services provider ("Verizon"), shall be retained by the parties, and Verizon's costs shall be split evenly between Marriott and Debtor.

U.S. Bankruptcy Court - Hawaii #11-02371 Dkt # 159 Filed 09/22/11 Page 16 of 17
U.S. Bankruptcy Court - Hawaii #11-02371 Dkt # 195 Filed 09/29/11 Page 26 of 27

5. Debtor shall cooperate with Marriott in good faith to implement the relief set forth herein, including, without limitation, providing Marriott, Marriott's forensics consultant, and the third party forensics expert with access to the Hotel's file server and photocopy machines, and to the extent applicable the Devices, on or before September ____, 2011. Marriott agrees that in taking the actions authorized hereunder it shall use its best efforts not to disrupt the normal operations of the Hotel. Debtor shall also instruct the Debtor Representatives and Aqua Hotels and Resorts of their obligations under this Supplemental Interim Order.

DATED: Honolulu, Hawaii.

_____
United States Bankruptcy Judge

In Re: M Waikiki LLC, 11-02371; SUPPLEMENTAL INTERIM ORDER GRANTING ADEQUATE PROTECTION TO MARRIOTT INTERNATIONAL, INC. AND MARRIOTT HOTEL SERVICES, INC. PENDING FINAL HEARING ON MOTION FOR RELIEF FROM STAY

W02-EAST:1GIG1\200423863.2                    H

U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 159  Filed 09/22/11  Page 17 of 17
U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 195  Filed 09/29/11  Page 27 of 27