RUSH MOORE LLP
A Limited Liability Law Partnership
SUSAN TIUS 2873-0
737 Bishop Street, Suite 2400
Honolulu, Hawaii 96813-3862
Tel. No. 521-0406
Fax No. 521-0497
E-mail: Stius@rmhawaii.com

SHEPPARD MULLIN RICHTER & HAMPTON LLP
CARREN B. SHULMAN
ALAN M. FELD
30 Rockefeller Plaza
New York, NY 10112-0015
Tel. No. (212) 653-8700
Fax No. (212) 653-8701
E-mail: CShulman@sheppardmullin.com
E-mail: AFeld@sheppardmullin.com

Attorneys for MARRIOTT INTERNATIONAL, INC.
and MARRIOTT HOTEL SERVICES, INC.

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In Re<br><br>M WAIKIKI LLC,<br><br>            Debtor. | Case No. 11-02371 (Chapter 11)<br><br>**MARRIOTT HOTEL SERVICES, INC. AND MARRIOTT INTERNATIONAL, INC.'S MOTION TO LIMIT SCOPE OF DISCOVERY AND HEARING ON THE ESTIMATION OF MARRIOTT'S CLAIM, OR ALTERNATIVELY, TO DISMISS CERTAIN OF DEBTOR'S OBJECTIONS AND DISALLOW DISCOVERY RELATED TO THOSE OBJECTIONS;** |

**MEMORANDUM IN SUPPORT THEREOF; AFFIDAVIT OF THERESA A. COETZEE; DECLARATION OF LINDSAY C. HARRISON AND EXHIBITS "A"– "G"**

Date:   Monday, March 5, 2012
Time:   9:30 a.m.
Judge:   The Honorable Robert Faris

Related Dkt. Nos. 505, 537 and 542

**MARRIOTT HOTEL SERVICES, INC. AND MARRIOTT INTERNATIONAL, INC.'S MOTION TO LIMIT SCOPE OF DISCOVERY AND HEARING ON THE ESTIMATION OF MARRIOTT'S CLAIM, OR ALTERNATIVELY, TO DISMISS CERTAIN OF DEBTOR'S OBJECTIONS AND DISALLOW <u>DISCOVERY RELATED TO THOSE OBJECTIONS</u>**

Marriott Hotel Services, Inc., and Marriott International, Inc. (collectively, "Marriott") respectfully submit this motion, pursuant to Fed. R. Bankr. P. 9014(c) (incorporating Fed. R. Civ. P. 26), to limit the scope of discovery requested by Debtor M Waikiki LLC ("the Debtor") and the scope of the estimation hearing on Marriott's claim. In the alternative, Marriott requests that, pursuant to Fed. R. Bankr. P. 9013, the Court dismiss certain of the Debtor's objections on the grounds that they are legally and contractually barred, and that the Court limit discovery related to said objections. This motion is supported by Marriott's Memorandum In Support Of Marriott's Motion To Limit Scope Of Discovery, Or Alternatively, To

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 571   Filed  02/07/12   Page 2 of 36

Dismiss Certain of Debtor's Objections; the Affidavit of Theresa A. Coetzee; and the Declaration of Lindsay C. Harrison filed concurrently herewith. In addition, Marriott submits with this Motion an Appendix outlining the grounds for limiting or denying Debtor's document requests and proposed language to limit or modify the requests.[1]

DATED: Honolulu, Hawaii, February 7, 2012.

/s/ Susan Tius
SUSAN TIUS
Attorney for MARRIOTT
INTERNATIONAL, INC. and
MARRIOTT HOTEL SERVICES,
INC.

DATED: Los Angeles, California, February 7, 2012.

/s/ Alan M. Feld
ALAN M. FELD
Attorney for MARRIOTT
INTERNATIONAL, INC. and
MARRIOTT HOTEL SERVICES,
INC.

---

[1] This Motion and its accompanying documents explains why certain of Debtor's requests are legally impermissible. Additional objections to specific requests, including objections to scope and burden, will be covered in Marriott's Response and Objections to the Debtor's document requests. Rather than waiting for the Debtor to file a motion to compel, Marriott is filing this Motion in the interest of resolving these issues more expeditiously.

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 571   Filed  02/07/12   Page 3 of 36

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

In Re

M WAIKIKI LLC,

              Debtor.

Case No. 11-02371 (Chapter 11)

**MEMORANDUM IN SUPPORT THEREOF**

## MEMORANDUM IN SUPPORT OF MARRIOTT'S MOTION TO LIMIT SCOPE OF DISCOVERY, OR ALTERNATIVELY, <u>TO DISMISS CERTAIN OF DEBTOR'S OBJECTIONS</u>

As explained fully in Marriott's Proof of Claim (Claim #79), Marriott's Claim arises from its agreement with the Debtor to manage a luxury hotel property in Honolulu, Hawaii owned by the Debtor and known as the Waikiki EDITION ("Hotel"). *See* Declaration of Lindsay C. Harrison ("Harrison Decl."), Ex. A (hereinafter "Management Agreement" or "M.A."). That Agreement entitled Marriott to operate the Hotel for an initial term of 30 years, followed by two 10-year extensions, and to earn management fees in exchange for its services. There is no serious dispute that Debtor breached that Agreement by prematurely ejecting Marriott as manager without a court order; the contract expressly and unambiguously states that the Debtor could not eject Marriott unless and until "a court of competent jurisdiction has issued a final, binding and non-appealable order finding that the Event of Default has occurred...." M.A. § 9.02(A)(iii). It is undisputed that no such order has ever been issued, and thus Debtor was in clear

breach by ejecting Marriott through self help – as the New York Supreme Court recognized in granting Marriott's motion for a temporary restraining order ("TRO"). Generally speaking, Marriott's Claim is for the fees Marriott would have earned over the life of the Agreement. A hearing will commence on April 3, 2012, for the purpose of estimating the value of Marriott's Claim.

The Debtor also purports to have a claim against Marriott. That claim was filed in May 2011 in the New York Supreme Court. *See* Harrison Decl., Ex. B (hereinafter "Debtor's Claim"). On August 1, 2011, Marriott moved to dismiss the Debtor's claim. *See* Harrison Decl., Ex. C. To date, the Debtor has not responded to the motion to dismiss, has not filed any discovery requests, and has essentially failed to prosecute its claim against Marriott in New York.[2] Nor has the Debtor sought estimation of its own claim by this Court. Instead, the Debtor has asserted in its objection to Marriott's Claim allegations that are virtually identical to its breach-of-contract claim in New York. *Compare* Dkt. #505 (Debtor's Objection to Proof of Claim) *with* Harrison Decl., Ex. B (New York Complaint).[3] Consistent

---

[2] Although Marriott's counterclaim was stayed by virtue of 11 U.S.C. § 362(a), the Debtor's claims against Marriott were not. *See In re Merrick*, 175 B.R. 333, 357 (B.A.P 9th Cir. 1994) ("The automatic stay is inapplicable to suits *by* the bankrupt." (emphasis added)).

[3] For example, Debtor alleges in both courts that Marriott breached an alleged obligation to develop more EDITION hotels in a certain time-frame (though it does not specify that time-frame nor does it identify the supposed source of that obligation); in New York, Debtor seeks damages and here Debtor seeks to avoid

with this strategy, on January 18, 2012, the Debtor served forty-nine document requests upon Marriott dating back to July 1, 2006.  *See* Harrison Decl., Ex. D ("Document Requests").  The bulk of these requests are unrelated to the estimation of Marriott's Claim and instead relate primarily to Debtor's allegations in the New York litigation.

Debtor is trying to use the estimation hearing on Marriott's Claim to obtain wide-ranging and extremely burdensome discovery from Marriott to support Debtor's own claim against Marriott.  Debtor's strategy is improper.  An estimation proceeding is intended simply to quantify the claims contemplated in Marriott's Proof of Claim.  It is designed to aid plan confirmation, not to mire the parties in endless discovery and litigation beyond the scope of the claims being estimated.  Furthermore, since no court found Marriott in Default before the Debtor engaged in self-help, the ejection was *per se* unlawful and discovery regarding Debtor's claim of breach is irrelevant to the valuation of Marriott's Claim.  Accordingly, Marriott requests the following relief.

First, Debtor should be limited in its objections to challenging the basis and quantification of the Claim asserted by Marriott, and should not be permitted to litigate its own claim in this context.  Any affirmative claims of the Debtor in the

---

Marriott's Claim by asserting a counterclaim, but the allegations are otherwise identical.

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 571   Filed  02/07/12   Page 6 of 36

New York litigation should not be considered in the context of the forthcoming estimation proceeding.

Second, discovery should be reasonably limited to the proper scope of the estimation proceeding. Debtor is seeking to use the estimation hearing as a vehicle for litigating, in a period of two months, a document- and deposition-intensive contract claim that the Debtor itself brought in another forum and that would in the ordinary course be litigated over a period of years. This would substantially prejudice Marriott's rights. Indeed, responding to Debtor's discovery requests will require Marriott to incur millions of dollars in costs and fees for discovery that are unrelated to the estimation of Marriott's Claim. *See* Affidavit of Theresa Coetzee ("Coetzee Aff."), ¶¶ 2-11. Furthermore, it is highly unlikely that such a review and production could be completed in the schedule agreed upon by the parties, which calls for all document discovery to be completed by March 23.

Third, if Debtor is permitted to litigate its own claim under the guise of objections to Marriott's Claim, the Court should dismiss certain of the Debtor's objections because they are invalid as a matter of law. These objections are the subject of Marriott's pending motion to dismiss in New York. For example, many of Debtor's objections are barred by an Estoppel Certificate the Debtor issued to Marriott in November 2010, over a month after the Hotel opened. *See* Harrison Decl., Ex. E (hereinafter "Estoppel Certificate"). There, the Debtor certified that:

4

**(1) there was no continuing Default by Marriott in the performance of the Management Agreement and TSA**, and **(2) no event had occurred that, with the giving of notice or passage of time or both, would become such a Default.** Most of the Debtor's allegations that Marriott breached a duty – for example, by failing to develop more EDITION hotels, or by failing to engage in more pre-opening marketing of the Hotel – are plainly barred by the Debtor's own Estoppel Certificate. Debtor should not be permitted to pursue objections that are legally barred.

Finally, Debtor should not be permitted to seek discovery related to those objections that are legally barred. In a New York court, the Debtor would be foreclosed from seeking this discovery while Marriott's motion to dismiss is pending. *See* N.Y. C.P.L.R. 3214 (automatically staying discovery while a motion to dismiss is pending). An estimation hearing is meant to streamline and expedite progress towards plan confirmation, not to allow parties to seek expensive and burdensome discovery as an end run around state law.

## FACTUAL BACKGROUND

## I.   THE PARTIES' CONTRACTS

1.      In or about July 2006, the Debtor purchased the Hotel for approximately $112,000,000.

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 571   Filed  02/07/12   Page 8 of 36

2.     In July 2008, the Debtor engaged Marriott to provide design advice and technical services during the renovation of the Hotel and to manage the Hotel after re-opening.  In a July 9, 2008 Management Agreement, the Debtor engaged Marriott to manage and operate the Hotel for an initial term of 30 years plus two 10-year extensions.  *See* Harrison Decl., Ex. A.

3.     The Management Agreement – executed just a few months prior to the collapse of Lehman Brothers and the ensuing global recession – provided Marriott with "discretion and control in all matters relating to management and operation of the Hotel."  M.A. at 2, § 1.02.  In exercising that discretion and control, Marriott was obligated to "operate the Hotel with the goal of achieving long-term profitability."  *Id.*  The test for terminating the contract based on the Hotel's financial performance was not to kick in until the sixth full year of Hotel operations.  *Id.* § 2.02(A).

4.     The Management Agreement provided multiple limitations on when the Debtor could terminate the contract, as set forth in detail in Marriott's Memorandum In Support Of Its Motion For A Temporary Restraining Order And Preliminary Injunction, filed in the New York Supreme Court (*see* Harrison Decl., Ex. F at 5-7); among other things, the Debtor was prohibited from terminating the contract based on an alleged Default by Marriott unless and until a court issued a

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 571   Filed  02/07/12   Page 9 of 36

final, binding, and non-appealable order finding such a Default. M.A.

§ 9.02(A)(iii).

## II. THE DEBTOR'S REFINANCE EFFORTS AND ESTOPPEL REPRESENTATIONS TO MARRIOTT

5.      Construction began on the Hotel in late 2008, just as the global economy was entering its tailspin. The Debtor hired contractors and a project manager; after many construction delays, the Debtor replaced its project manager.

6.      The Hotel, which was originally slated to open on July 1, 2009, opened on September 28, 2010, to rave reviews and wide acclaim in the press.

7.      Not surprisingly, the first year of a new Hotel and new brand, opening in the most difficult economic times the country has experienced in decades, met with a slow start. Performance was further impeded by the earthquake and tsunami that devastated Japan in March 2011 and impaired tourism in Hawaii over subsequent months. Guest bookings accordingly fell short of expectations.

8.      In October 2010, Marriott paid $5,000,000 in "key money" to the Debtor which was due and payable upon the opening of the Hotel and returnable in accordance with a formula set forth in the Management Agreement if the contract was terminated prematurely. *See* M.A. § 11.26.

9.      In or about November 2010, the Debtor sought modifications to its existing loan agreements, replacing a maturing junior secured lien with a new loan by the Davidson Family Trust in the amount of $15,000,000. Accordingly,

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 571   Filed  02/07/12   Page 10 of 36

Davidson converted a prior equity contribution in the amount of $15,000,000 to a secured loan. *See* Harrison Decl., Ex. G, at 64 § 1.40(a). In addition, Marriott, the Debtor and Davidson entered into an Subordination & Non-Disturbance Agreement ("SNDA"), pursuant to which Davidson was, *inter alia*, specifically prohibited from disturbing Marriott's right to manage the Hotel.

      10.    On November 16, 2010 (more than one month after the Hotel opened), in order to obtain this SNDA and other consideration, the Debtor issued an Estoppel Certificate to Marriott in which the Debtor certified that: (1) there was no continuing Default by Marriott under the Management Agreement and TSA, and (2) no event had occurred that, with the giving of notice or passage of time or both, would become such a Default. *See* Harrison Decl., Ex. E. The Debtor acknowledged that it would be bound by its certifications, all of which Marriott was entitled to rely upon. See *id.* at 2. Relatedly, the Management Agreement provided that estoppel certificates "shall be binding upon the certifying party and may be relied upon by the non-certifying party." M.A. § 11.18.

      11.    In reliance on the Estoppel Certificate, Marriott likewise issued an Estoppel Certificate to the Debtor, and the parties executed amendments to the Management Agreement. *See* Harrison Decl., Ex. A at 107 (Second Amendment to M.A.).

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 571   Filed  02/07/12   Page 11 of 36

12.     In the months that followed, the Hotel continued to ramp up its business but nevertheless faced shortfalls in operating funds.  In April 2011, the Debtor stopped making required payments under the Management Agreement to fund those shortfalls.  As a result, Marriott funded the shortfalls, which the Debtor was obligated to repay from operations.  *See* M.A. § 4.09.

## III.    LEGAL PROCEEDINGS

13.     Notwithstanding that it had issued an Estoppel Certificate to Marriott just six months earlier, on May 26, 2011, the Debtor filed suit in New York state court alleging that Marriott had breached its agreements with the Debtor, relying almost exclusively on events that pre-dated Debtor's Estoppel Certificate.

14.     On August 1, 2011, Marriott moved to dismiss the complaint.

15.     On August 28, 2011, the Debtor conducted a midnight raid of the Hotel, purporting to oust Marriott as manager and giving rise to Marriott's Proof of Claim before this Court.  *See* Proof of Claim at 4 & Ex. A.

16.     On August 30, 2011, Marriott filed a counterclaim in New York state court, along with an application for a temporary restraining order, requiring the Debtor to reinstate Marriott as manager.  *See id.*  The New York court issued the TRO, finding that Marriott had shown a likelihood of success on the merits of its counterclaim.  The court ordered the Debtor to allow Marriott to return to the Hotel as manager.

17.    The Debtor did not reinstate Marriott as manager, however.  Instead, on August 31, 2011, minutes after the TRO-compliance time limit expired, the Debtor filed for voluntary bankruptcy in this Court.

18.    On September 16, 2011, one business day before its response to Marriott's motion to dismiss was due in New York state court, the Debtor removed its breach-of-contract claim to federal court, asserting jurisdiction under 28 U.S.C. § 1334(b), and has since attempted to transfer venue to this Court.  *See* No. 11-CV-6488 (S.D.N.Y.), Dkt. No. 7.

19.    Marriott filed its Proof of Claim in this Court on January 3, 2012.  The Debtor filed its Objection on January 19, 2012.  On January 18, 2012, the Debtor served Document Requests relating to its Objection.  *See* Harrison Decl., Ex. D.

## ARGUMENT

## I.    This Court Should Not Permit the Debtor to Use the Estimation Hearing as a Vehicle For Litigating Its Breach-of-Contract Claim.

Under Section 502(c) of the Bankruptcy Code, the purpose of an estimation hearing is to "avoid undue delay in the administration of bankruptcy proceedings." *Frito-Lay, Inc. v. LTC Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 957 (2d Cir. 1993).  In contrast to a full-blown litigation on the merits of a claim, an estimation hearing is intended "to allow courts to quickly and flexibly estimate the amount of an as yet to be liquidated claim." *In re Stone & Webster, Inc.*, 279 B.R. 748, 810 (Bank. D. Del. 2002).  When fixing a contingent claim would "unduly

delay the administration of the case," the court estimates the value of that claim "for purpose of allowance," so that the key steps to reorganization can move forward.  11 U.S.C. § 502(c).

The Debtor's Objection and document requests improperly seek to expand the scope of this estimation hearing.  The purpose of the estimation hearing is to estimate the value of Marriott's Claim for voting and plan confirmation purposes. Marriott's Claim is for damages owing from Debtor's breach of contract.  It is undisputed that no court found Marriott in default before Debtor engaged in self-help, thus Debtor's conduct plainly and unambiguously violated the Management Agreement.  *See* M.A. § 9.02(A)(iii).  Clearly, that was the view of the New York Supreme Court in granting Marriott's motion for a TRO.

Although the Debtor asserted in the New York proceeding that Marriott was in Default, it has not prosecuted that claim since filing its petition.  Instead, it has served expansive discovery in this proceeding to try to buttress its New York case. Although Marriott vigorously disputes that it was in Default, the issue is ultimately irrelevant to Marriott's Claim because the contract expressly requires a judicial finding of default before it can be terminated.  Since there was no such finding before the Debtor engaged in self-help, the ejection was unlawful and discovery regarding Debtor's claim of breach is irrelevant.

11

Equally important, in the New York Supreme Court Marriott moved to dismiss the Debtor's claim of default. Under New York law, discovery is not permitted on a claim that it the subject of a pending motion to dismiss. The discovery Debtor seeks here is therefore an end run around the New York proceeding, in addition to being irrelevant as a matter of law.

To be clear, Marriott is not suggesting that the Debtor is barred from objecting to Marriott's Claim or from seeking discovery directly relevant to defenses that are not legally barred. For example, at the estimation hearing, Marriott will present evidence about the damages sustained from Debtor's wrongful conduct. The Debtor objects to such damages on the basis that they are speculative, and Marriott is not seeking to bar reasonable discovery related to such an argument. Certain of the Debtor's objections, however, are simply restatements of the same affirmative breach-of-contract claim that the Debtor filed against Marriott last May in New York.

Debtor's strategy is unreasonable. Had the Debtor responded to Marriott's motion to dismiss and prevailed, it could have sought discovery in the New York court. Instead, the Debtor chose not to prosecute its claim there, but rather to breach the Management Agreement through self-help. When the New York Supreme Court ordered the Debtor to abide by its contract, the Debtor invoked the bankruptcy code to evade that court order. Now, the Debtor seeks voluminous

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 571   Filed 02/07/12   Page 15 of 36

discovery in this forum, focused primarily on its breach-of-contract claim, rather than on Marriott's Claim. Moreover, the Debtor seeks to force Marriott to produce that discovery in the compressed timeframe of two months even though such discovery might ordinarily unfold over two years. This Court should limit the scope of the Debtor's objections to those that challenge the basis and quantification of the Claim asserted by Marriott, and should preclude those which assert Debtor's own claim. Furthermore, discovery should be limited to documents relevant to Marriott's Claim. Debtor must pursue discovery in support of its own breach-of-contract claim in the court in which it chose to initiate that claim, assuming that claim survives the pending motion to dismiss. Discovery should be limited in the following illustrative ways:

### (1) Document Requests Concerning the EDITION Brand and Marriott's Entire Hotel Management Division

Numerous requests concern the entirety of Marriott's EDITION brand and are not limited to the Hotel at issue. *See* Document Requests 1-7, 11-17, 45, 47-49. Others seek documents pertaining to every hotel that Marriott manages in Hawaii, regardless of brand, price point, location, or size. *See* Document Requests 45, 48-49. One request seeks documents pertaining to Marriott's entire hotel management division. *See* Document Request 14.

Marriott does not object to producing information about the Hotel. However, the Debtor is not entitled to seek all information in existence pertaining

to the EDITION brand, much less to all of Marriott's managed hotels worldwide. Such information is not relevant to the estimation of Marriott's Claim. It is apparent that Debtor is seeking this information for its arguments in the New York court that Marriott allegedly breached an obligation to develop the EDITION brand as a whole, allegations that Marriott has moved to dismiss. The Debtor should not be permitted to evade that motion by seeking discovery in this forum.

## (2) **Documents Concerning Ian Schrager or I.S. International**

Several of the Debtor's document requests seek information about Ian Schrager, who is Marriott's business partner in the EDITION brand. *See* Document Requests 8, 9. For instance, Request 9 seeks "[a]ll documents related to Ian Schrager's decision to develop, or development of, a lifestyle hotel brand (*e.g.*, Public) other than Edition." Mr. Schrager and his companies are named defendants in the New York litigation, but are not claimants or parties in this proceeding. Documents pertaining to Schrager are irrelevant to Marriott's Claim. They relate only to allegations by Debtor in the New York case that are subject to Marriott's pending motion to dismiss.

## (3) **Documents Concerning Marriott's Pre-Opening Marketing and Budgeting of the Hotel**

Many of the Debtor's document requests relate to Marriott's pre-opening marketing and budgeting. *See* Document Requests 20-22. These documents do not relate to the purpose of the forthcoming estimation hearing, but rather to the

Debtor's claim in New York that Marriott allegedly breached an obligation in its performance of these activities. To the extent that sales and marketing plans are relevant to the estimation of its Claim, Marriott will produce them. *See, e.g.*, Document Request 24. However, document requests aimed at uncovering some sort of alleged breach with respect to Marriott's pre-opening performance are inappropriate subjects for discovery at this time and in this forum.

## (4)   <u>Other Documents Outside Scope of Estimation Hearing</u>

The Debtor requests several categories of discovery that bear no apparent relationship to the estimation hearing. For example, Document Request 10 seeks all documents related to the separation of several former Marriott executives whose departure does not bear on the value of Marriott's Claim. Requests 18 and 19 seek Technical and System Standards for the Hotel, which do not relate to anything in Marriott's Claim or the Debtor's Objection and serve no purpose for the forthcoming estimation hearing. Likewise, Document Request 30 seeks, among other things, all job performance evaluations and personnel files for each managerial or supervisory employee of the Hotel. While the total labor cost associated with the Hotel is certainly relevant to Marriott's Claim, the personnel files of dozens of employees are absolutely not. Similarly, Request 26 seeks documents related to any hypothetical investigation related to the Hotel, its nightclub, or any Hotel employee. Again, this request does not appear to bear any

connection to any issue concerning the estimation of Marriott's Claim, but is a classic "fishing expedition."

The Court should make clear that the forthcoming estimation hearing will be limited to a determination of the value of Marriott's Claim and will not be a hearing on Debtor's claim against Marriott. Discovery should be commensurate with that scope of hearing, as outlined in the attached Appendix.

## II. Certain of Debtor's Objections Are Contrary to Law and Should Be Dismissed, With Discovery Relating Thereto Disallowed.

The bulk of the Debtor's Discovery Requests should also be disallowed because they relate to allegations of breach of contract that fail as a matter of law. Whether the Debtor's allegations are presented as an objection to Marriott's Claim or as an independent claim of the Debtor, such allegations are not a permissible subject for discovery. Accordingly, if the Court is inclined to permit discovery on the Debtor's Claim in the context of this contested matter, the Court should first consider whether certain of the Debtor's objections should be dismissed. It should dismiss those that fail as a matter of law and deny discovery relating thereto.

### A. The Court Should Dismiss Debtor's Objection Arising From Events Taking Place Prior to November 16, 2010 and Disallow Discovery Relating Thereto.

Debtor's objection and numerous of the Debtor's Discovery Requests relate to allegations that Marriott breached its contract with the Debtor through various acts and omissions that were known to all parties prior to the opening of the Hotel

U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 571  Filed  02/07/12  Page 19 of 36

in October 2010.  As explained below, all such claims are barred as a matter of

law.  For example, the Debtor alleges in its Objection to Proof of Claim (Dkt. No.

505) that Marriott broke an alleged promise that several EDITION-brand hotels

would open prior to the Debtor's hotel, *see* Objection to Proof of Claim ¶¶ 12, 25-

26, and it seeks a number of categories of documents apparently intended to

support such a claim.  *See* Document Requests 1-4, 6-7, 10-12, 16-17, 47.  The

Debtor also alleges in its Objection that Marriott failed to undertake pre-opening

promotion and advertising, resulting in a "standing start" to the Hotel's business,

or otherwise breached its contractual obligations prior to the Hotel's opening, *see*

Objection to Proof of Claim ¶ 28, and seeks documents relevant to those

allegations, *see* Document Requests 20-22.  The Debtor also seeks various

financial data and correspondence dating back to July 1, 2006.  *E.g.*, Document

Requests Pt. V (indicating relevant time period for requests is July 1, 2006, or

later).

    Debtor is not entitled to any of this discovery except insofar as it relates to

the estimation of Marriott's Claim because the Debtor's allegations are legally

barred.  On November 16, 2010 – *after* the Hotel opened for business – the Debtor

issued an estoppel certificate to Marriott confirming that there was no continuing

contractual Default by Marriott and that no event had occurred that, with the giving

of notice or passage of time or both, would become a Default.  *See* Harrison Decl.,

Ex. E at 1-2. In light of that certification, the Debtor is legally foreclosed from pursuing any breach of contract theory premised on a breach taking place prior to November 16, 2010, and it likewise is not entitled to any discovery in support of such a foreclosed claim.

An estoppel certificate is "[a] signed statement by a party . . . certifying for another's benefit that certain facts are correct, [such as] that there are no defaults." Black's Law Dictionary 631 (9th ed. 2009). The purpose of these certificates is to "prevent the assertion of different facts at a later date." *ReliaStar Life Ins. Co. of N.Y. v. Home Depot U.S.A., Inc.*, 570 F.3d 513, 519 (2d Cir. 2009) (quotation marks omitted); *see also K's Merch. Mart, Inc. v. Northgate Ltd. P'ship*, 835 N.E.2d 965, 972 (Ill. App. Ct. 2005) ("A party who executes an estoppel certificate should not be allowed to raise claims of which it knew or should have known at the time the certificate was executed. A party who executes an estoppel certificate that there are no defaults is under a duty to inquire and determine, insofar as reasonably possible, what claims exist."). Where an estoppel certificate is unambiguous, courts construe the certificate's meaning and effect **as a matter of law**. *See Retail Brand Alliance, Inc. v. Rockvale Outlet Ctr., LP*, No. 06-CV-01857, 2007 WL 403885, at *3 (E.D. Pa. Jan. 31, 2007).

Consistent with the foregoing, under New York law, a party that executes an estoppel certificate is precluded from taking any position contrary to the

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 571   Filed  02/07/12   Page 21 of 36

certificate's terms.  *See JRK Franklin, LLC v. 164 E. 87th Street LLC,* 27 A.D.3d 392, 392-93, 812 N.Y.S.2d 506, 506-07 (1st Dep't 2006); *Quantum Corporate Funding Ltd. v. L.P.G. Assocs., Inc.*, 246 A.D.2d 320, 323-24, 667 N.Y.S.2d 702, 705 (1st Dep't 1998) (defendant's representation in estoppel certificate that there would be no claims against certain accounts receivable precluded any assertion to the contrary); *Bed 'N Bath of Spring Valley Inc. v. Spring Valley P'ship*, 185 A.D.2d 584, 585-87, 586 N.Y.S.2d 416, 417-18 (3d Dep't 1992) (plaintiff precluded from seeking fees in conflict with amounts acknowledged in estoppel certificate); *Vanderbilt Holdings, LLC v. Greenpoint-Goldman Corp.*, No. 0107408/2005, 2007 WL 3234922 (N.Y. Sup. Ct. July 17, 2007).

*JRK Franklin, LLC v. 164 East 87th Street LLC* is instructive.  There, the court examined an estoppel certificate that stated, "[t]o the best knowledge of Ground Lessor, there is no existing default by Ground Lessee in the performance and observance of Ground Lessee's obligations under the Ground Lease," and "[t]o the best knowledge of Ground Lessor, no event has occurred which, with the giving of notice or passage of time, or both, would constitute a default by Ground Lessee under the Ground Lease." *JRK Franklin, LLC*, 27 A.D.3d at 392-93, 812 N.Y.S.2d at 507 (quotation marks omitted).  Reversing the lower court's decision not to enforce the certificate, the court explained that, as a matter of law, the Lessor "had a duty and the ability (right of entry) to investigate before voluntarily

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 571   Filed  02/07/12   Page 22 of 36

certifying an absence of any tenant lease defaults." *Id.* at 393, 812 N.Y.S.2d at 507. Having made such voluntary certifications and having agreed that the tenant was entitled to rely on those certifications,[9] the Lessor was precluded from asserting that activity pre-existing the execution of the estoppel certificate placed the tenant in default. *See id.* The court therefore held that the tenant was entitled to a declaration that it was not in default under the lease. *See id.* at 392, 812 N.Y.S.2d at 506-07; *see also Vanderbilt Holdings*, 2007 WL 3234922 (holding that defendant's "execution of the Estoppel Certificate, in June 2004, bars any claim that the pre-existing violations constitute a default under the lease").[4]

Here, the language of the Debtor's estoppel certificate is plain and unambiguous and must be enforced as a matter of law. The Debtor certified one month after the Hotel opened that there had been no Default by Marriott, nor any event that could become a Default by the giving of notice or the passage of time.

---

[4] *See also Retail Brand Alliance*, 2007 WL 403885, at *3 (granting motion to dismiss counterclaim because "[t]he estoppel certification . . . bars [the counter-claimant] from attempting to collect these expenses now, since it represented that there [were] no uncured defaults by [the counter-defendant] when executing the assignment"); *Va. Highlands Assocs. v. Allen*, 330 S.E.2d 892, 896 (Ga. Ct. App. 1985) (enforcing estoppel certificate and holding "that public policy, good faith, equity and justice require that the unqualified writing executed by appellees . . . estop them from raising their novation defense"); *Piggly Wiggly of Mansfield, Inc. v. Wolpert Assocs.*, 519 So. 2d 371, 372-73 (La. Ct. App. 1988) (tenant bound by statement in estoppel certificate that there were no defaults under lease agreement); *Yee v. Weiss*, 877 P.2d 510, 512-13 (Nev. 1994) (tenant estopped from claiming constructive eviction based on parking conditions that existed before tenant certified that there were no defaults under the lease).

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 571   Filed  02/07/12   Page 23 of 36

As the court found in *JRK Franklin*, the Debtor had an affirmative duty to investigate any potential claims against Marriott before signing its estoppel letter. *See* 27 A.D.3d at 393, 812 N.Y.S.2d at 507.

The Debtor is thus not entitled to any discovery in support of a breach-of-contract theory arising from events prior to November 10, 2010. As of that date, for example, the Debtor knew that the Hotel was the first and only EDITION hotel to open, and so is foreclosed from arguing that Marriott's failure to open other EDITION hotels prior to the Debtor's Hotel constituted a Default. Similarly, as of November 16, 2010, pre-opening design, development, marketing, sales, and reservations activities were, by definition, over. Debtor is foreclosed from arguing that any of those activities caused a Default.[5] This Court should dismiss those objections that are barred by Debtor's estoppel representations and should rule that Debtor is not entitled to the discovery connected with those objections.

The Debtor is also not entitled to the full extent of its document requests relating to various financial data, human resources data, and correspondence. It seeks those categories of documents for the time period July 2006 to the present. Producing such voluminous documents will cause great expense to Marriott, *see* Coetzee Aff. ¶¶ 2-11, and should require some showing on the part of the Debtor

_____

[5] Furthermore, as of that date, the Debtor either did or did not have the final Edition Technical Standards and System Standards; if it did not, the Debtor is foreclosed from arguing that the failure to receive them caused a Default and from seeking related discovery. *See* Document Requests 18-19.

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 571   Filed  02/07/12   Page 24 of 36

as to how the requests are directly relevant to the estimation hearing and relate to issues other than those foreclosed by the Estoppel Certificate. Marriott documents from 2006 through October 2010 are not relevant to a claim arising from events taking place *after* November 16, 2010, when the Debtor certified that, until that point, no events had taken place that could give rise to a Default.

**B. The Court Should Dismiss Debtor's Objection Relating to Marriott's Development of the EDITION Brand and Disallow Discovery Relating Thereto.**

The Debtor's Objection and discovery requests directed at information concerning Marriott's EDITION brand not only are unjustified in light of the estoppel certificate, but also in light of the contracts themselves. For example, the Debtor contends at length in its Objection to Marriott's Claim that Marriott breached its agreement with the Debtor by breaking an alleged promise that the Hotel would be operated as part of a chain of EDITION-brand hotels, and that Marriott was required to open some specified number of such hotels prior to the opening of the Debtor's hotel. *See* Objection to Proof of Claim ¶¶ 12, 25-26.

That theory, however, fails as a matter of law. Tellingly, the Debtor does not point to *any* contractual provision requiring Marriott to open a specified number of EDITION hotels in any period of time. In fact, no contract obligates Marriott to do so. Although the parties' initial agreement contemplated that the Hotel would open unbranded and be flagged an EDITION hotel only after Marriott

opened the first EDITION-branded hotel, *see* M.A. at 2, 64, §§ 1.03(B), 12.01, the parties amended their agreement to permit the Hotel to open under the EDITION brand. *See* Harrison Decl., Ex. C at 4-5. This amendment imposed no obligation on Marriott to open another EDITION-branded hotel prior to the opening of the Waikiki EDITION. In short, nothing in the parties' agreement requires Marriott to manage any particular number of EDITION hotels within any specified time.[6] Any Objection (or claim) asserting otherwise is without legal support. Accordingly, the Debtor should not be entitled to make such an Objection, nor should it be permitted to conduct discovery related thereto.

## CONCLUSION

For the foregoing reasons, Marriott respectfully requests that this Court clarify the scope of the issues for estimation and limit the scope of discovery to preclude or limit Document Requests 1-5, 7-22, 26, 30, 45, and 47-49 insofar as they are not limited to documents relating to Marriott's Claim with respect to the Hotel at issue. In the alternative, Marriott requests that the Court dismiss those of Debtor's objections that are legally and contractually barred, and that the Court disallow discovery related to said objections.

---

[6] That said, Marriott operates the Istanbul EDITION and has plans to open EDITION hotels in London, New York, Miami Beach, Abu Dhabi, and Bangkok over the next three years. *See* www.editionhotels.com ("Hotels" tab).

23

DATED:  Honolulu, Hawaii, February 7, 2012.

/s/ Susan Tius
SUSAN TIUS
Attorney for MARRIOTT
INTERNATIONAL, INC. and
MARRIOTT HOTEL SERVICES,
INC.

DATED:  Los Angeles, California, February 7, 2012.

/s/ Alan M. Feld
ALAN M. FELD
Attorney for MARRIOTT
INTERNATIONAL, INC. and
MARRIOTT HOTEL SERVICES,
INC.

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 571   Filed  02/07/12   Page 27 of 36

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| _____ ) | **Case No. 11-02371 (Chapter 11)** |
| In re ) | |
| ) | **AFFIDAVIT OF** |
| M WAIKIKI LLC, ) | **THERESA COETZEE** |
| ) | |
| Debtor. ) | |
| _____) | |

## <u>AFFIDAVIT OF THERESA COETZEE</u>

Theresa A. Coetzee, being duly sworn, deposes and says as follows:

1.      My name is Theresa A. Coetzee, and I am Vice President and Senior Counsel for Marriott International, Inc. ("Marriott"). My responsibilities are primarily to oversee commercial litigation matters for Marriott and its affiliates. I have held this position for 4.5 years. I am very familiar with the procedures and costs involved in discovery for litigation in which Marriott is engaged.

2.      I have reviewed the document requests that M Waikiki LLC ("the Debtor") served on Marriott on January 18, 2012. Responding to these requests would be extremely time-consuming and expensive.  If Marriott were to comply with the letter of the requests, it could require collecting, reviewing and producing hundreds of thousands or millions of documents from over 100 custodians in numerous locations.  I conservatively estimate that Marriott would spend at least

1

$2,400,000 on outside counsel and vendors if they were to respond in full to the requests, in addition to in-house costs. I explain the basis for that estimate below.

3.     The Debtor has propounded 49 document requests on Marriott. The requests are extremely broad in nature. They seek documents dating back to 2006, and in most cases ask for "all" documents related to a topic.  The following examples give a sense of the burdensome and overbroad nature of the requests.

4.     Request No. 14 seeks "[a]ll financial statements, budgets and reports, in reasonable detail, that reflect the revenues received or expenses incurred by Marriott International and its affiliates with respect to its hotel management division."  Assuming that "hotel management division" references all Marriott entities managing hotels under any of Marriott's brands, including but not limited to Marriott Hotel Services, Inc., the "hotel management division" oversees 1,072 hotels in approximately 65 countries.  Marriott Hotel Services, Inc., the entity that managed the EDITION, manages 129 hotels alone.  The Debtor seeks every financial statement or report from each of those hotels for the last six years, without regard to their relevance to Marriott's Claim or the Debtor's Objection.

5.     Request No. 2 seeks "All presentations regarding Edition," and Request 3 seeks "All projections and forecasts regarding Edition."  The Edition brand has been in development for at least six years.  It has touched the desk of hundreds of Marriott employees, all of whom have seen or participated in some

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 571   Filed  02/07/12   Page 29 of 36

presentations or examined some projections or forecasts regarding Edition. Edition hotels have been in development in many cities and countries all over the world. The Debtor's Document Requests seek all such documents without regard to their relevance to Marriott's Claim or the Debtor's Objection. A cursory search of our document database for documents that contain only the words "Edition" and either "projection" or "forecast" reveals over 96,000 documents, all of which would have to be reviewed individually for responsiveness and privilege. Similarly, there are over 24,000 documents containing the words "Edition" and "presentation."

6. Likewise, Request No. 30 seeks "[a]ll employment contracts, agreements, employee handbooks, job applications, job performance evaluations, and personnel files relating to the salaries, wages, or bonuses of each managerial or supervisory level Hotel Employee." These requests encompass an exceedingly wide array of documents, and the Debtor has failed to impose any reasonable limits. Hotels are complex enterprises that employ hundreds of people, all of whom are regularly evaluated and whose personnel files contain highly confidential information protected from disclosure by privacy laws. Furthermore, because of the Debtor's actions, most of these individuals were forced to leave their jobs in Hawaii and now work at hotels all around the world. Their personnel files were transferred when they were transferred. To collect, review and produce every document sought by the Debtor in this Request would be a monumental

undertaking that would result in a very large volume of documents, many of which would provide no benefit to the litigation of this case whatsoever, particularly when the labor costs of the Hotel could very easily be summarized from an operating statement or P&L.

6.      As a point of comparison, we recently completed an arbitration against another hotel Owner involving allegations of mismanagement. The scope of the document requests in that matter and this one were roughly comparable. In that matter, we collected documents from 105 different custodians located in more than 10 locations. We paid $1,264,611.53 to our e-discovery vendor for the costs of contract attorneys, data upload and hosting, review software, and related costs. I estimate we also paid about $1,148,339.25 in legal fees to our outside counsel (as in this case, Jenner & Block) for services directly related to document discovery, such as collecting and reviewing documents, supervising contract attorneys, drafting discovery motions and legal responses to requests, and defending a deposition related to document discovery. In that case, we paid outside counsel and our e-discovery vendor at 2008 rates, which were lower than today's rates.  Furthermore, discovery in that case was limited because it was arbitration rather than litigation.  The total cost of outside services just for document discovery in that case was approximately $2.4 million. (In that case, the hotel owner was ordered to pay us $2.75 million in costs and expenses.)

4

8.  In addition, document discovery imposes significant internal costs on Marriott, such as the time an effort of many employees to identify and collect documents, and of course the time of our in-house lawyers, paralegals and staff who must coordinate these efforts and work with outside counsel.

9.  In this instance, we anticipate similar numbers.  With more than 100 custodians' documents to collect, review and produce in a short time frame, our e-discovery vendor has predicted a total cost through April of more than $1 million. Invoices for December and the first half of January already total $240,000.

10.  Moreover, without the luxury of time to appropriately train contract attorneys, the document review must be performed by young associates from Jenner & Block and Sheppard Mullin, under the supervision of more senior lawyers.   We estimate that it will take approximately 4,500 hours, at a cost of approximately $1.4 million, for those attorneys to cull, review and produce the documents.  Should the Court grant Marriott's motion to limit the scope of discovery or in the alternative dismiss certain of Debtor's objections and disallow discovery related to those objections, we anticipate that the hours and costs of document production will be cut roughly in half.

11.    If Marriott is required to proceed with discovery before any ruling on

5

our motion to limit the scope of discovery and issues for estimation, I believe that the $2.4 million costs provides a conservative estimate of our document discovery costs in this case, but the costs in this case would almost certainly be higher.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 3, 2012

Theresa A. Coetzee

Sworn to before me
this 3rd day of February, 2012.

Notary Public

ROBERTA PEARSON-WARK
Notary Public-Maryland
Montgomery County
My Commission Expires
January 19, 2014

6

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In Re | Case No. 11-02371 (Chapter 11) |
| M WAIKIKI LLC, | **DECLARATION OF LINDSAY C. HARRISON AND EXHIBITS "A"– "G"** |
| Debtor. | |

## <u>DECLARATION OF LINDSAY C. HARRISON</u>

I, LINDSAY C. HARRISON, being an attorney duly admitted to practice law in this Court *pro hac vice*, hereby declare as follows:

1.    I am a partner at Jenner & Block LLP, attorneys for Marriott Hotel Services, Inc., and Marriott International, Inc. (collectively, "Marriott") in the above-captioned matter.

2.    I hereby certify that, pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure and Local Rule 7026-1(d)(2)(A) and (B), in good faith I have conferred by e-mail and telephone with counsel for Debtor regarding Marriott's Motion to Limit Scope of Discovery and Hearing on the Estimation of Marriott's Claim, or Alternatively, to Dismiss Certain of Debtor's Objections and Disallow Discovery Related To Those Objections without court action.  Despite this good faith effort, the parties have not been able to resolve their dispute, necessitating the filing of the foregoing motion.

3.     Attached to this Declaration are true and correct copies of the documents cited in the accompanying Memorandum In Support Of Marriott's Motion To Limit Scope Of Discovery, Or Alternatively, To Dismiss Certain Of Debtor's Objections, as follows:

Exhibit A:    Management Agreement ("M.A.") dated July 9,2008; First Amendment to Management Agreement, dated March 13,2009; and Second Amendment to Management Agreement, dated November 16, 2010.

Exhibit B:    Summons and Complaint, *M Waikiki LLC v. Marriott Hotel Services, Inc., et al.,* Index No. *65145712011* (N.Y. Sup. filed May 26, 2011).

Exhibit C:    Marriott's Memorandum in Support of its Motion to Dismiss The Complaint, *M Waikiki LLC* v. *Marriott Hotel Services, Inc., et al.,* Index No. *65145712011* (N.Y. Sup. filed August 1, 2011).

Exhibit D:    Debtor's Request for Production dated January 18, 2012.

Exhibit E:    Estoppel Certificate dated November 16, 2010.

Exhibit F:    Marriott's Memorandum in Support of its Motion for TRO, *M Waikiki LLC* v. *Marriott Hotel Services, Inc., et al.,* Index No. *65145712011* (N.Y. Sup. filed August 30, 2011).

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 571   Filed  02/07/12   Page 35 of 36

Exhibit G:    Davidson Trust Mortgage, Assignment of Leases and Rents,

Security Agreement, Financing Statement and Fixture Filing

dated November 16, 2010.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 6, 2012, in Washington, D.C.


/s/ Lindsay C. Harrison
LINDSAY C. HARRISON
Attorney for MARRIOT
INTERNATIONAL, INC. and
MARRIOTT HOTEL SERVICES,
INC.

3