RUSH MOORE LLP
A Limited Liability Law Partnership
SUSAN TIUS 2873-0
737 Bishop Street, Suite 2400
Honolulu, Hawaii 96813-3862
Tel. No. 521-0406
Fax No. 521-0497
E-mail: Stius@rmhawaii.com

SHEPPARD MULLIN RICHTER & HAMPTON LLP
CARREN B. SHULMAN
ALAN M. FELD
30 Rockefeller Plaza
New York, NY 10112-0015
Tel. No. (212) 653-8700
Fax No. (212) 653-8701
E-mail: CShulman@sheppardmullin.com
E-mail: AFeld@sheppardmullin.com

JENNER & BLOCK LLP
LINDSAY C. HARRISON
1099 New York Avenue, NW
Washington, DC 20001
Tel. No. (202) 639-6865
Fax No. (202) 661-4956
E-mail: LHarrison@jenner.com

Attorneys for MARRIOTT INTERNATIONAL, INC.
and MARRIOTT HOTEL SERVICES, INC.

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In Re<br><br>M WAIKIKI LLC,<br><br>       Debtor. | Case No. 11-02371 (Chapter 11)<br><br>**MARRIOTT HOTEL SERVICES, INC. AND MARRIOTT INTERNATIONAL, INC.'S REPLY IN SUPPORT OF THEIR MOTION** |

65451.2

**TO LIMIT SCOPE OF
DISCOVERY AND HEARING ON
THE ESTIMATION OF
MARRIOTT'S CLAIM, OR
ALTERNATIVELY, TO DISMISS
CERTAIN OF DEBTOR'S
OBJECTIONS AND DISALLOW
DISCOVERY RELATED TO
THOSE OBJECTIONS;
CERTIFICATE OF DOCUMENT
LENGTH; DECLARATION OF
LINDSAY C. HARRISON AND
EXHIBITS "A"-"D"**

Date:   Monday, March 5, 2012
Time:   9:30 a.m.
Judge: The Honorable Robert Faris

Related Dkt. Nos. 505, 537 and 542

**MARRIOTT HOTEL SERVICES, INC. AND MARRIOTT
INTERNATIONAL, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO
LIMIT SCOPE OF DISCOVERY AND HEARING ON THE ESTIMATION
OF MARRIOTT'S CLAIM, OR ALTERNATIVELY, TO DISMISS
CERTAIN OF DEBTOR'S OBJECTIONS AND DISALLOW
<u>DISCOVERY RELATED TO THOSE OBJECTIONS</u>**

Marriott's Motion seeks clarity as to the scope of the Estimation Hearing on

Marriott's Claim.  In accordance with this Court's Scheduling Order, Dkt. #542,

Marriott submits that the proper scope is the quantification of Marriott's Claim.

That will be accomplished by projecting the fees Marriott should have earned in

exchange for managing the Hotel over the full term of its contract with the Debtor,

as well as quantifying amounts currently owed to Marriott under the Management

2

Agreement. Marriott's damages case will be the subject of expert testimony, and Marriott will produce the documents upon which that testimony relies.

In its Response, the Debtor agrees that "the sole purpose of the estimation proceeding is to quantify [Marriott's] Claim for purposes of plan voting and feasibility," and that "the merits of Debtor's objections to the Claim" fall outside the scope. Opp. 1-2. Notwithstanding that acknowledgment, however, many of Debtor's document requests reach well beyond that scope and are irrelevant to the quantification of Marriott's Claim. Instead, they go to the merits of Debtor's Objections to Marriott's Claim and to Debtor's own breach-of-contract suit against Marriott, which Debtor brought in New York. Marriott filed a motion to dismiss in that case last summer, and Debtor has never responded.[1] When Marriott asked Debtor to clarify its view of the scope of the estimation proceedings, in light of its broad document requests, Debtor refused to provide direct answers. *See* Ex. A (Feb. 27, 2012 Email from K. Hickox to L. Harrison).

Additionally, many of Debtor's requests are unreasonably overbroad. Marriott has already produced an enormous amount of information in discovery in this proceeding – far more than is typical for an estimation hearing in what is in reality a single-asset bankruptcy. In addition to the 444,431 documents it produced

---

[1] Citing Fed. R. Civ. P. 81(c)(2), Debtor incorrectly asserts that Marriott's motion to dismiss "did not survive removal of the action to federal court." Opp. at 13. In fact, that Rule provides that "[a]fter removal, repleading is unnecessary unless the court orders it." *See Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 387 (S.D.N.Y. 2001) ("the district court 'takes the [removed] action in the posture in which it existed when it is removed").

65451.2
U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 672   Filed 02/28/12   Page 3 of 35

on the Hotel's server, Marriott has produced 175,182 pages and 33,636 documents, plus additional paper files, from 56 custodians. Moreover, many of these documents are precisely the sort that the Debtor asserts Marriott has refused to produce. For example, although Debtor asserts that Marriott has refused to produce information about the EDITION brand, Opp. at 14-15, Marriott has produced EDITION brand sales & marketing plans, EDITION business plans, EDITION brand budgets, EDITION brand P&Ls, EDITION brand standards, presentations about the EDITION brand made to prospective owners, presentations about the EDITION brand made to Marriott Board of Directors, invoices reflecting expenses incurred by EDITION office for the Hotel, and other documents sufficient to reflect how expenses are allocated to brand office versus individual hotel. Marriott simply asks this Court to impose reasonable limits on Debtor's requests without which discovery costs will continue to escalate, and the parties will not successfully achieve the deadlines in the Court's Scheduling Order. *See* Mot., Coetzee Aff.

If the Court is not inclined to set limits, then Marriott requests in the alternative that the Court dismiss certain of the Debtor's Objections. These Objections fail as a matter of New York law, and should be dismissed notwithstanding Debtor's attempt to manufacture disputes of fact.

65451.2
U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 672   Filed  02/28/12   Page 4 of 35

In sum, Marriott does not seek to prevent the disclosure of relevant information or the presentation of legitimate argument. Rather, Marriott seeks clarity concerning the scope of this proceeding for the benefit of both the parties and the Court. The volume of work and expense involved in preparation for depositions, written direct testimony, and cross-examination, as well as the time required for trial, will depend in large part on whether the scope of the hearing is properly limited. Marriott respectfully requests that the Court provide clarity on the proper scope the hearing and limit discovery accordingly.

## ARGUMENT

## I.     The Court Should Limit the Scope of Debtor's Discovery Requests.

1.     First, Debtor misstates the standard for discovery in connection with an estimation hearing, wrongly substituting the standard used in connection with final resolution of a claim on the merits. *See* Opp. at 10-11. In the context of an estimation hearing, the scope of discovery "lie[s] within a court's discretion." *In re Chateaugay Corp.*, 156 B.R. 391, 401, 402 n.14 (S.D.N.Y. 1993) (finding "no prejudice resulting from the limited discovery afforded in connection with the estimation hearing"); *see also In re Pilgrim's Pride Corp.*, 415 B.R. 635, 637 (N.D. Tex. 2009) (noting with approval order "limiting discovery in the estimation proceedings, which will work to further streamline the already expedited estimation process").

5

2.      Second, Debtor's Response fails to account for the fact that Marriott has agreed to produce additional documents through the close of discovery. Throughout its Response, Debtor cites the position taken by Marriott <u>prior</u> to the parties' meet-and-confer even though Marriott agreed to produce additional documents after that conference.  *See* Opp., McNeely Decl., Ex. F.

3.      Third, Debtor wrongly asserts that the challenged requests seek documents relevant to estimating the value of Marriott's Claim.  As detailed below, the challenged requests either seek documents for an impermissible purpose or in a manner so overbroad as to be abusive.

<u>Request 1</u>:  All EDITION business plans, sales and marketing plans, and organizational charts.

<u>Request 2</u>:  All presentations regarding EDITION.

<u>Request 3</u>: All projections and forecasts regarding EDITION.

<u>Request 14</u>:  All reports related to EDITION (at the brand level), including related documents such as meeting minutes and agendas.

4.      In response to these requests, Marriott has agreed to conduct a reasonable search for EDITION business plans, sales and marketing plans, and organizational charts that relate to the Hotel or to the Hotel's potential financial performance.  In addition, Marriott has agreed to produce:  (1) documents sufficient to demonstrate hotels in the EDITION development pipeline, (2) presentations and reports provided or presented to any potential owner or

6

developer of an EDITION hotel or to the Marriott Board of Directors since November 2010, (3) the EDITION brand office budget for FY2010-2012; (4) the EDITION brand office P&L statement for FY2010-2012; and (5) organizational charts regarding the EDITION brand office, to the extent they exist. These documents are more than sufficient for the Debtor to understand "key strategies, plans and organization of EDITION." Opp. at 16.

5.      Marriott should not be required to produce "all" reports relating to the EDITION brand, irrespective whether they relate to this Hotel. At any given time, there may be dozens of extremely sensitive and proprietary deals or initiatives being considered that relate to the brand or to other EDITION hotels in other countries, regions, and markets. The probative value of documents concerning potential deals or initiatives is dubious, particularly in the context of an estimation hearing.

6.      The historical documents Debtor seeks are not related to estimation. Debtor admits that Marriott's Claim "is based on a forecast of <u>the future performance</u> of the Hotel as an EDITION-affiliated property." Opp. at 18. Debtor seeks documents dating back to 2008 not to evaluate future performance, but rather to determine whether "information was concealed from Debtor." Opp. at 17. Marriott denies the accusation, but it is certainly not relevant to the task of estimating the value of Marriott's Claim. Marriott has agreed to produce

documents sufficient to allow the Debtor a fair opportunity to challenge the value

of Marriott's Claim, and no more should be required.

Request 5: All financial statements and reports reflecting expenses incurred by Marriott, as opposed to the Hotel, in connection with the marketing of EDITION of the Hotel.

Request 11: All documents reflecting the financial and operational performance of EDITION.

Request 13: All financial statements, budgets, and reports, in reasonable detail, that reflect the revenues receives or expenses incurred by Marriot with respect to EDITION.

Request 14: All financial statements, budgets, and reports, in reasonable detail, that reflect the revenues received or expenses incurred by Marriott International and its affiliates with respect to its hotel management division.

Request 15: All financial statements, budgets, and reports, in reasonable detail, that reflect Marriott's or its affiliates' corporate overhead and other expenses associated with oversight of EDITION and the Hotel.

Request 17: All valuations, discounted cash flows, feasibility studies (internal or external), profitability analyses, weighted average annual cost of capital calculations, appraisals, or other investment analyses, prepared regarding EDITION, or any proposed or executed management agreement, brand franchise agreement, licensing agreement, proprietary ownership agreement, or any other investment in or management of a proposed or actual EDITION hotel.

7.     Marriott has provided or agreed to provide documents that will allow

the Debtor to evaluate what offsets, if any, should be applied to Marriott's claim.

Specifically, Marriott has already agreed to produce, among other things: (1)

financial statements and reports sufficient to reflect expenses incurred by Marriott

in connection with the marketing of the Hotel, (2) monthly, quarterly, and annual

8

reports reflecting the financial and operational performance of the Hotel; (3) financial statements, budgets, and reports, in reasonable detail, sufficient to reflect the revenues received or expenses incurred by Marriott with respect to the Hotel; (4) financial statements, budgets, and reports, in reasonable detail, sufficient to reflect Marriott's or its affiliates' corporate overhead and other expenses associated with the oversight of the Hotel; (5) valuations, discounted cash flow analyses, feasibility studies, profitability analyses, weighted average annual cost of capital calculations, appraisals, or other investment analyses relating to the Hotel; (6) the EDITION brand office budget for FY2010-2012; and (7) the EDITION brand office P&L statement for FY2010-2012. When Marriott asked Debtor to specify what additional documents it needed to account for costs in estimating Marriott's Claim, Debtor failed to do so. *See* Opp., McNeely Decl., Ex. F at 2.

8. Debtor's real purpose in seeking essentially "all" documents related to the EDITION brand is to attempt to find support for its own claim in the New York litigation and/or to harass Marriott by seeking production of thousands of documents relating to hotels in markets of no probative significance to this case. *See* Opp. at 18-19 (admitting that Debtor seeks these documents as support for its misrepresentation allegations, which are asserted in the New York litigation). The documents Marriott has agreed to produce are more than sufficient to allow the

65451.2
U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 672   Filed  02/28/12   Page 9 of 35

Debtor a fair opportunity to challenge the value of Marriott's Claim. No more should be required.

>    Request 8: All agreements between Marriott and I.S. International LLC or any other entity with which Ian Schrager is affiliated, regarding the Hotel or Edition.

>    Request 9: All documents related to Ian Schrager's decision to develop, or development of, a lifestyle hotel brand (e.g., Public) other than Edition.

9.     Debtor seeks these documents not for the estimation hearing, but for its lawsuit against Mr. Schrager and I.S. International LLC in New York.  Debtor asserts it needs these documents to assess "the Hotel's and EDITION's chances for success."  Opp. at 20.  Yet Marriott has already agreed to produce documents sufficient for the Debtor to assess the state of the EDITION brand, including documents regarding which Hotels are in the development pipeline.  The confidential terms of Marriott's business relationship with Ian Schrager, and documents related to an entirely separate business venture and brand – in which Marriott is not involved – are so far removed from any legitimate purpose in connection with estimation that the Court should deny these Requests in their entirety.

>    Request 10: All documents related to the separation of Daniel Flannery, Yoav Gery, Kate Harth, John Fleur, or any other former EDITION executive, from EDITION or Marriott, including, but not limited to, any resignation or termination correspondence, and severance, separation, or cooperation agreements.

10

10.     Debtor seeks these documents not for a legitimate purpose in connection with the estimation hearing, but rather for the New York litigation and/or for a vexatious purpose.  The purpose of the estimation hearing is to value Marriott's Claim based on the expected performance of the Hotel over the next 49 years.  *See* Opp. at 18 (conceding that the Claim "is based on a forecast of the future performance of the Hotel as an EDITION-affiliated property.").  Documents related to executives no longer with the brand are utterly irrelevant to that task.

11.     The Debtor claims "[i]t is self-evident" that the departure of these executives "likely had an adverse effect" on the EDITION brand.  Yet the fact of their departure is not disputed, and documents regarding the <u>terms</u> of their departure have no bearing on the future of the EDITION brand and merely reveal confidential information irrelevant for the estimation of Marriott's Claim.  Furthermore, Marriott has already agreed to produce a tremendous amount of information related to the future of the EDITION brand, *see supra* at ¶¶4, 7, which is more than sufficient to satisfy the ostensible purpose of Request 10.

12.     Debtor also asserts that it desires this information to test whether the departure of these executives "gave rise to costs to EDITION that were allocated to the Hotel."  However, Marriott already agreed to produce documents sufficient to reflect the expenses incurred by Marriott with respect to the Hotel.  Thus the Debtor does not need the documents sought by Request 10 for this purpose.

65451.2

13.     Finally, Debtor asserts that it desires these documents to test "whether the individuals have entered into cooperation agreements with Marriott that might bias their testimony."  Yet Debtor has not requested the narrow category of cooperation agreements, but rather a much broader set of "all" materials which are so far removed from any legitimate purpose in connection with estimation that the Court should deny this Request in its entirety.

Request 19: A complete set of System Standards, as defined in the Management Agreement at Section 12.01.

14.     Marriott has already produced standards, procedures, and training manuals employed by the Hotel with respect to the accounting, purchasing, marketing, sales, maintenance, guest services, and other departments of the Hotel. Marriott advised the Debtor that if the standards of any other department were relevant to the estimation of Marriott's Claim, it should specify and Marriott would consider producing those standards as well.  The Debtor has not done so.  Debtor's only argument regarding this request is that a set of EDITION standards is "critical to the success" of the EDITION brand.  But the standards for how to make a Marriott hamburger, how to fold sheets, and other minutiae are not relevant to the estimation of Marriott's Claim, and the burden of producing every single standard clearly outweighs any probative value such standards would have in the estimation hearing.  Accordingly, the Court should deny this Request.

65451.2

<u>Request 24</u>: All sales and marketing plans related to the Hotel, including, but not limited to, pre-opening marketing and sales plans pertaining to each of the primary revenue segments of the Hotel, including the Japanese tour wholesale market.

15.     Marriott has already agreed to produce sales and marketing plans for the Hotel that postdate the issuance of Debtor's estoppel certificate.  These documents are sufficient for Debtor to evaluate "the future performance of the Hotel as an EDITION-affiliated property." Opp. at 18.  What Marriott contests is the relevance of <u>pre-opening</u> marketing materials.  Debtor is not seeking these documents because they relate to the estimation of Marriott's Claim, but rather because Debtor wishes to argue that Marriott breached a contractual agreement with respect to the pre-opening marketing of the Hotel.  How the Hotel was marketed before it ever opened is not relevant to how the Hotel will perform in the future.  Because the contested aspects of this Request seek documents unrelated to estimation of Marriott's Claim, the Court should limit this Request to those documents Marriott has agreed to produce.

<u>Request 26</u>: All documents related to any investigation, including, but not limited to, investigations conducted by Marriott, local police, or the Drug Enforcement Agency, related to the Hotel, the Crazy Box nightclub, or any Hotel employee.

16.     In an email dated February 28, 2012, Debtor has agreed to withdraw this request.  Exhibit D (email from D. Buncher to L. Harrison).

<u>Request 45</u>: All financial, business and operational reports for the Hawaiian cluster of Marriott hotels.

<u>Request 48</u>: Smith Travel STR reports for the Marriott Hawaii and Oahu cluster of properties.

17.     The Debtor and Marriott agreed in the Management Agreement that the JW Marriott Ihilani was the only other Marriott hotel that should be included in the Hotel's Competitive Set – i.e., the set of hotels whose financial data was relevant to test the Hotel's financial performance.  *See* Second Amend. to M.A. at ¶ 3.  Accordingly, Marriott has agreed to produce high-level monthly financial data as well as STR reports for the JW Marriott Ihilani for the period sought by Debtor, subject to an "expert and outside attorney's eyes only" confidentiality agreement to protect the financial data of a third-party owner.  In addition, Marriott has already produced high-level financial data (such as occupancy and average daily room rate) for other Marriott hotels in Hawaii – precisely the data relied upon in connection with previous valuations of Marriott's Claim.

18.     Debtor's requests for "all financial, business and operational reports" and STR reports for all Marriott hotels in Hawaii is plainly unreasonable.  First, the financial performance of brands such as Courtyard is not relevant to the performance of a luxury lifestyle hotel such as the Hotel; the hotels compete in entirely different markets.  Second, even if all Marriott hotels in Hawaii were relevant comparators, the burden of requiring Marriott to produce "all financial, business and operational reports" for all its Hawaii properties would far exceed any

14

probative value such reports could provide. Given that Marriott has produced

responsive financial data on which it relied in valuing its Claim, plus significant

additional financial data about the only Marriott hotel that the parties agreed was a

relevant financial comparator, the Court should deny these requests.

## II. In the Alternative, the Court Should Dismiss Those Objections Which Are Barred as a Matter of Law.

19.     If the Court concurs with the parties that the Debtor's discovery

should be limited to documents relevant to estimating the <u>value</u> of Marriott's

claim, then it need not address Marriott's alternative motion to dismiss portions of

the Debtor's Objection. However, to the extent that the Court broadens the scope

of the estimation proceeding, permitting the Debtor to argue, for example, that

Marriott's Claim should be valued at zero on the ground that Marriott committed a

material breach of the Management Agreement, *see* Objections ¶¶ 50-51, this

Court should reach Marriott's motion in the alternative to dismiss those portions of

the Debtor's Objections.

### A.     <u>The Court Has Authority to Dismiss Debtor's Objections.</u>

20.     Contrary to the Debtor's assertion, Opp. at 29, the Court need not

conduct an evidentiary hearing, because the portions of Debtor's Objections

relating to breach can be dismissed as a matter of law. *See* Fed R. Bank. P.

9014(d) & 2002 Advisory Committee Note (noting that an evidentiary hearing

must be held "if the motion cannot be decided without resolving a disputed

15

material issue of fact"); *e.g.*, *In re I & F Corp.*, 219 B.R. 483 (Bank. S.D. Ohio 1998) (dismissing objections to claim as a matter of law).

**B.** **The Debtor May Not Legitimately Assert that a Breach of Contract Justified Termination of the Management Agreement.**

21.     The Management Agreement sets out clear prerequisites to termination on the ground that one party has defaulted, and there is no dispute that the Debtor failed to satisfy these requirements.  In particular, "a non-defaulting party may not terminate this Agreement on the basis of an Event of Default unless and until" that party obtains "a final, binding and non-appealable order finding that the Event of Default has occurred."  *See* M.A. § 9.02(A)(iii).  Thus, *even if the Debtor were correct that Marriott breached the contract* (which Marriott forcefully disputes), the Debtor still cannot have lawfully terminated the contract. Accordingly, the Debtor may not properly object to Marriott's Claim on that basis. Paragraphs 50 and 51 of the Debtor's Objection should be dismissed as a matter of law, with all related discovery requests dismissed as well.

22.     Debtor's objections based on breach (Objections ¶¶ 50-51) independently fail because, as a matter of law, Marriott did not breach the Management Agreement.  Even if Debtor's factual allegations are taken as true, none of Debtor's theories of breach constitutes a cognizable legal claim.

**a.  "Chain of Hotels" Theory**

65451.2

23.     The Debtor argues that Marriott failed to operate the Hotel as part of a "chain" of Edition hotels, an obligation it traces to "the inception of the parties' contractual relationship."  *See* Objections ¶¶ 25-26.  First, however, the Management Agreement placed Marriott under no obligation to open any particular number of Edition hotels by any particular time.  In fact, the parties' initial agreement contemplated that the Hotel would open <u>unbranded</u> and become an Edition hotel only after Marriott opened another Edition hotel elsewhere, *see* Management Agreement §§ 1.03(B), 12.01; however, the Debtor <u>specifically requested</u> an amendment allowing the Hotel to open as the first Edition, and Marriott relented.  *See* Mot., Harrison Decl., Ex. C at 4-5.

24.     Second, the fact that the Agreement references the Edition "chain" of Hotels provides no legal basis for Debtor's claim.  Even if the word "chain" meant that Marriott was required to open another Edition hotel (as opposed to requiring Marriott to operate the Hotel under the Edition flag), it is undisputed that since May 2011, Marriott has operated the Istanbul Edition in addition to the Hotel, and has acted diligently to open other Edition hotels in other locations, including among other locations London, New York, and Miami Beach.

25.     Third, Debtor's Estoppel Certificate issued on November 16, 2010 clearly bars Debtor's "chain" theory.  Debtor does not dispute that the Estoppel Certificate is binding and enforceable.  Instead, Debtor asserts that it lacked "actual

65451.2
U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 672   Filed 02/28/12   Page 17 of 35

knowledge" of the allegations in its Objection. *See* Opp. at 25-26. This argument is untenable, as the Debtor plainly knew when the Hotel opened in September 2010 that it was the first Edition hotel and that other Edition hotels were planned but had not yet opened; indeed, the Debtor expressly bargained to be the first.[2] Thus, the condition that the Debtor now claims constituted a Default by Marriott – the failure to operate the Hotel as part of a "chain" of Edition hotels, Objections ¶¶ 25-26; Opp. ¶ 28 – was known to the Debtor when it signed the Estoppel Certificate and certified that "there was no continuing Default" by Marriott and that "no event" had occurred that "with the giving of notice or passage of time … would become such a Default." Thus, as a matter of law, the factual allegations set forth in Objections ¶¶ 25-26 cannot constitute a breach of contract by Marriott as a matter of law. *See Vanderbilt Holdings, LLC v. Greenpint-Goldman Corp.*, No. 0107408/2005, 2007 WL 3234922 (N.Y. Sup. Ct. July 17, 2007) (rejecting defendant's affirmative defense, as a matter of law, based on estoppel certificate).

### b. **"Departure of Marriott Executives" Theory**

26.     Debtor notes that certain Marriott senior executives left the company. Objections ¶ 27; *cf.* Document Request 10. The Debtor cannot identify any provision in the Management Agreement that required Marriott to staff the Edition

---

[2] *See* Ex. B, Sept. 29, 2010 email from Robert Watson to Karl Coleman ([REDACTED]); Ex. C, Oct. 20, 2010 email from Damian McKinney to Yoav Gery ("Congratulations on the opening of the first of many EDITION Hotels to come. Thank you for hanging in there with us over the last couple of years. I truly believe your business acumen was a critical part of everyone staying at the table and eventually able to join glasses of celebration of the first Edition Hotel.").

brand with particular executives, let alone any provision requiring that Marriott maintain those executives for a specified period of time. Thus, as a matter of law, the departure of those executives cannot constitute a breach of contract by Marriott.

### c. **Pre-Opening Marketing Theory**

27.     The Estoppel Certificate bars Debtor's objection that Marriott failed to market the Hotel adequately prior to its opening in breach of the Management Agreement. *See* Objections ¶ 28. When the Hotel opened in September 2010, the Debtor knew how Marriott had marketed the Hotel prior to its opening and knew how many rooms had been booked. Indeed, Exhibit J to the Debtor's Opposition demonstrates that Marriott kept the Debtor up to date on bookings, and shows the Debtor criticizing Marriott's marketing efforts <u>contemporaneous with the issuance of the</u> Estoppel Certificate. That Debtor had sufficient information regarding the Hotel sales and marketing strategy to articulate its criticism plainly contradicts Debtor's assertion that it lacked "actual knowledge" of the facts it now contends gave rise to a breach. Thus, the Estoppel Certificate bars the Debtor from pursuing this theory of breach.

28.     The Debtor contends that it did not receive the final pre-opening <u>cost</u> figures until after the Estoppel Certificate had been issued. Opp. at 27. Yet Debtor's Objection does not allege that Marriott breached the Management

65451.2
U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 672  Filed  02/28/12  Page 19 of 35

Agreement because of how much it spent on pre-opening marketing; rather, the Objection contends that Marriott breached the contract because its pre-opening marketing was ineffective. *See* Objections ¶ 28. That contention is plainly covered by the Estoppel Certificate. At the time the Hotel opened, the Debtor knew the nature of Marriott's pre-opening marketing efforts and also knew the degree to which they had resulted in consumer demand – even if it did not know how much those marketing efforts cost. Debtor's objection is contrary to law.

### d.  Financial Projections Theory

29.     Debtor's objection that Marriott failed to meet pro formas and projections is likewise barred as a matter of law. Objections ¶¶ 29-33. In signing the Management Agreement, the Debtor expressly disclaimed any reliance on Marriott's projections. *See* M.A. § 11.10. Thus, as a matter of law, the Hotel's failure to meet various projections cannot constitute a breach by Marriott. Debtor's objection should accordingly be dismissed.

### CONCLUSION

For the foregoing reasons, Marriott respectfully requests that this Court clarify the scope of the issues for estimation and limit the scope of discovery as set forth herein, or, in the alternative, dismiss those of Debtor's objections that fail as a matter of law and disallow discovery related to said objections.

65451.2

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 672   Filed  02/28/12   Page 20 of 35

DATED:  Honolulu, Hawaii, February 28, 2012.

/s/ Susan Tius
SUSAN TIUS
Attorney for MARRIOTT
INTERNATIONAL, INC. and
MARRIOTT HOTEL SERVICES,
INC.


DATED:  Los Angeles, California, February 28, 2012.

/s/ Alan M. Feld
ALAN M. FELD
Attorney for MARRIOTT
INTERNATIONAL, INC. and
MARRIOTT HOTEL SERVICES,
INC.


DATED:  Washington, DC, February 28, 2012.

/s/ Lindsay C. Harrison
LINDSAY C. HARRISON
Attorney for MARRIOTT
INTERNATIONAL, INC. and
MARRIOTT HOTEL SERVICES,
INC.

65451.2

## CERTIFICATION OF DOCUMENT LENGTH

Pursuant to LBR 9013-2(a)(2), I certify that the foregoing reply memorandum contains 4,424 words.


Dated: February 28, 2012

/s/ Lindsay C. Harrison

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In Re | Case No. 11-02371 (Chapter 11) |
| M WAIKIKI LLC, | **DECLARATION OF LINDSAY C. HARRISON AND EXHIBITS "A"–"D"** |
| Debtor. | |

## DECLARATION OF LINDSAY C. HARRISON

I, LINDSAY C. HARRISON, being an attorney duly admitted to practice law in this Court *pro hac vice*, hereby declare as follows:

1.      I am a partner at Jenner & Block LLP, attorneys for Marriott Hotel Services, Inc., and Marriott International, Inc. (collectively, "Marriott") in the above-captioned matter.

2.      Attached to this Declaration are true and correct copies of the documents cited in the accompanying Reply In Support Of Marriott's Motion To Limit Scope Of Discovery, Or Alternatively, To Dismiss Certain Of Debtor's Objections, as follows:

Exhibit A:   Email from Ken Hickox to Lindsay C. Harrison (Feb. 27, 2012, 11:20 a.m.) (from file of Lindsay C. Harrison).

Exhibit B:   Email from Robert Watson to Karl Coleman (Sept. 29, 2010, 4:03 p.m.) (Bates No. MWAIKIKI00033348).

Exhibit C:    Email from Damian McKinney to Yoav Gery (Oct. 20, 2010,

22:48:03) (Bates No. MHS00595701).

Exhibit D:    Email from Doug Buncher to Lindsay C. Harrison (Feb. 28,

2012, 11:44 a.m.) (from file of Lindsay C. Harrison)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 28, 2012, in Washington, D.C.

/s/ Lindsay C. Harrison
LINDSAY C. HARRISON
Attorney for MARRIOT
INTERNATIONAL, INC. and
MARRIOTT HOTEL SERVICES,
INC.

2

# EXHIBIT A

**Harrison, Lindsay C.**

| | |
|---|---|
| **From:** | Ken Hickox [KZH@bickelbrewer.com] |
| **Sent:** | Monday, February 27, 2012 11:20 AM |
| **To:** | Harrison, Lindsay C. |
| **Cc:** | Michael Gardner |
| **Subject:** | RE: Waikiki |

Lindsay,

The Court's order dated January 30, 2012 ("Order") sets forth the scope and purpose of the estimation hearing. At the hearing, Marriott will have the burden of establishing the amount of its claim and Debtor intends to contest Marriott's claim in a manner consistent with the Order.

Kenneth N. Hickox, Jr.
Bickel & Brewer
4800 Comerica Bank Tower
1717 Main Street
Dallas, TX 75201
214 653-4011

>>> "Harrison, Lindsay C." <LHarrison@jenner.com> 2/23/2012 5:43 PM >>>
Thanks Ken.

What do you mean when you say that the merits of Debtor's claim objections will not be at issue in the Estimation Hearing? Does that mean that Debtor will not be arguing that Marriott committed an Event of Default prior to the Hotel takeover and therefore the value of Marriott's claim is zero? Will Debtor not be submitting written testimony to that effect or deposing and cross-examining Marriott's witnesses about Debtor's breach allegations? Please clarify so that we may have an understanding of whether and to what extent we may agree on the scope of the Estimation Hearing.

In the meantime, I will look forward to receiving your discovery conference proposal.

Sincerely,
Lindsay

**From:** Ken Hickox [mailto:KZH@bickelbrewer.com]
**Sent:** Thursday, February 23, 2012 5:47 PM
**To:** Harrison, Lindsay C.
**Cc:** Michael Gardner
**Subject:** Re: Waikiki

Lindsay,

Thanks for following-up.

Debtor, at this time, is not withdrawing any of its objections to Marriott's claim. In any event, those objections are not relevant to the parties' current discovery dispute. As Marriott pointed out in its Motion, the merits of Debtor's claim objections will not be at issue in the Estimation Hearing.

In an effort to move discovery related to the Estimation Hearing along, however, Debtor has agreed to withdraw Request Nos. 4, 6-7, 12, 18, 21-22, 30, 47 and 49, and to narrow the scope of Request Nos. 2-3, 11, 14, 16, 45 and 48. In addition, the Response does not put before the Court Request Nos. 20, 27-28, 31-32, 34-37, 41-44 and 46. Debtor believes that the remaining Requests only ask for documents directly relevant to the Estimation Hearing.

I will get back to you with a discovery conference proposal.

Kenneth N. Hickox, Jr.
Bickel & Brewer
4800 Comerica Bank Tower
1717 Main Street
Dallas, TX 75201
214 653-4011

>>> "Harrison, Lindsay C." <LHarrison@jenner.com> 2/23/2012 4:19 PM >>>
Ken,
I received your voicemail. As I said on our meet and confer call, we are open to discussing possibilities re: the timing of a discovery conference. However, it is unclear from your response to our motion whether you are agreeing to withdraw the objections that we view as outside the scope of the estimation hearing, or are just agreeing to withdraw certain of the document requests that relate to those objections. Can you please clarify? In addition, if you would like to make a proposal about how to proceed re: a discovery conference prior to the March 5 hearing, please do so and I will get back to you after consultation with my client.
Thanks very much,
Lindsay

**Lindsay C. Harrison**
Jenner & Block LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001-4412
Tel (202) 639-6865
Fax (202) 661-4956
LHarrison@jenner.com
www.jenner.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

----Scanned by eMail Protection Services----
http://www.harding-group.com/eps.html

The information contained in this e-mail message, including any attachments, is attorney privileged and/or confidential information intended only for the use of the individual or entity named as addressee. The review, dissemination, distribution, or copying of this communication by or to anyone other than the intended addressee is strictly prohibited. If you have received this communication in error, please immediately notify the sender by reply e-mail and destroy all copies of the original message. Thank you.

----Scanned by eMail Protection Services----
http://www.harding-group.com/eps.html

The information contained in this e-mail message, including any attachments, is attorney privileged and/or confidential information intended only for the use of the individual or entity named as addressee. The review, dissemination, distribution, or copying of this communication by or to anyone other than the intended addressee is strictly prohibited. If you have received this communication in error, please immediately notify the sender by reply e-mail and destroy all copies of the original message. Thank you.

# EXHIBIT B

**REDACTED**

# EXHIBIT C

Damian: Thank you so much for the e-mail and the very kind words.

However, it is you and your team that we need to thank -- we truly appreciate everything you have done to make this hotel a reality -- and for sticking it out through the many hurdles and road blocks we encountered along the way. You have been a pleasure to work with -- and I look forward to working with you on the remaining issues on this project and on future projects to come.

I'm also very sorry that we didn't spend more time together in Waikiki -- we need to make sure we do so the next time . . . .

Thank you again for everything. And congratulations to you, as well.

Speak with you soon.

Yo

_____

**From:** Damian McKinney <dmckinney@mckinneyadvisory.com>
**To:** Gery, Yoav
**Sent:** Wed Oct 20 22:48:03 2010
**Subject:** Congratulations!


Yoav:


Last Friday I kept trying to get to the pool bar and join you for a beer to no avail. What I really missed was the fun everyone was having at Crazy Box on Friday evening. Maybe I can join you all in Istanbul.


Congratulations on the opening of the first of many Edition Hotels to come. Thank you for hanging in there with us over the last couple of years. I truly believe your business acumen was a critical part of everyone staying at the table and eventually able to join glasses of celebration of the first Edition Hotel. There are still hurdles to be met and with your continued guidance and a few prayers we are going to see the success we have all been striving to achieve.


Please don't hesitate to reach out and let me know how I can contribute to problem

MHS00595701

solving in the days ahead.


Best Regards,


Damian McKinney

License No. 00777218
------------------------------------
**McKinney Advisory Group, Inc.**
909 Lomas Santa Fe Drive
Solana Beach, CA 92075

562.889.2001 (direct)

dmckinney@mckinneyadvisory.com
www.mckinneyadvisory.com

CONFIDENTIALITY NOTICE: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain confidential or privileged information. If you think you have received this message in error, please advise the sender and then delete this message and any attachments immediately.

MHS00595702

# EXHIBIT D

**Harrison, Lindsay C.**

| | |
|---|---|
| **From:** | Doug Buncher [dbuncher@neliganlaw.com] |
| **Sent:** | Tuesday, February 28, 2012 11:44 AM |
| **To:** | Harrison, Lindsay C.; Michael Gardner |
| **Cc:** | Ken Hickox; Michael Collins; Simon Klevansky; Pat Neligan; Alan Feld |
| **Subject:** | RE: MARRIOTT/M Waikiki LLC/Meet and confer |

We are dropping request 26 for now.

Douglas J. Buncher
Neligan Foley LLP
325 N. St. Paul, Suite 3600
Dallas, TX 75201
Telephone: 214/840-5320
Fax: 214/840-5301
Email: dbuncher@neliganlaw.com

---

**From:** Harrison, Lindsay C. [mailto:LHarrison@jenner.com]
**Sent:** Monday, February 27, 2012 10:49 AM
**To:** Michael Gardner; Doug Buncher
**Cc:** Ken Hickox; Michael Collins; Simon Klevansky; Pat Neligan; Alan Feld
**Subject:** RE: MARRIOTT/M Waikiki LLC/Meet and confer

Michael and Doug,

In Michael's email dated February 15, Michael indicated that the Debtor was withdrawing its Request 26. ("Debtor agrees to, at this time, withdraw Request Nos. 4, 6, 7, 12, 18, 21, 22, 26, 30, 47 and 49."). Doug took the same position during our meet-and-confer. Notwithstanding those representations, Debtor's Response asserts that it is continuing to seek documents responsive to Request 26. Is Debtor taking back its withdrawal of that Request, or was the inclusion of Request 26 in the Debtor's Response in error?

Thanks,

Lindsay

---

**From:** Michael Gardner [mailto:mgardner@bickelbrewer.com]
**Sent:** Wednesday, February 15, 2012 5:07 PM
**To:** Harrison, Lindsay C.; Doug Buncher
**Cc:** Ken Hickox; Michael Collins; Simon Klevansky; Pat Neligan; Alan Feld
**Subject:** Re: MARRIOTT/M Waikiki LLC/Meet and confer

Given Marriott's inability, for the last three days, to agree to Debtor's request for a telephonic meet and confer on Marriott's Responses to Debtor's First Request for Production in Connection with Marriott's Proof of Claim, in order to avoid further delay, Debtor sets forth its positions and proposals regarding its document requests in writing below. I ask that you take the opportunity to confer with Alan this afternoon/evening on these proposals, so that Marriott can respond either

1