RUSH MOORE LLP
A Limited Liability Law Partnership
SUSAN TIUS 2873-0
737 Bishop Street, Suite 2400
Honolulu, Hawaii 96813-3862
Tel. No. 521-0406
Fax No. 521-0497
E-mail: Stius@rmhawaii.com

SHEPPARD MULLIN RICHTER & HAMPTON LLP
CARREN B. SHULMAN
ALAN M. FELD
30 Rockefeller Plaza
New York, NY 10112-0015
Tel. No. (212) 653-8700
Fax No. (212) 653-8701
E-mail: CShulman@sheppardmullin.com
E-mail: AFeld@sheppardmullin.com

JENNER & BLOCK LLP
LINDSAY C. HARRISON
1099 New York Avenue, NW
Washington, DC 20001
Tel. No. (202) 639-6865
Fax No. (202) 661-4956
E-mail: LHarrison@jenner.com

Attorneys for MARRIOTT INTERNATIONAL, INC.
and MARRIOTT HOTEL SERVICES, INC.

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF HAWAII**

| | |
|---|---|
| In Re<br><br>M WAIKIKI LLC,<br><br>        Debtor. | Case No. 11-02371 (Chapter 11)<br><br>**MARRIOTT HOTEL SERVICES, INC. AND MARRIOTT INTERNATIONAL, INC.'S OMNIBUS DISCOVERY** |

|                                                          |
|----------------------------------------------------------|
| **MEMORANDUM AND REQUEST FOR CONFERENCE AND RELATED RELIEF** |
| Related Dkt. Nos. 521, 655, 707, 708, and 727            |

## MARRIOTT INTERNATIONAL, INC. AND MARRIOTT HOTEL SERVICES, INC.'S OMNIBUS DISCOVERY MEMORANDUM AND REQUEST FOR CONFERENCE AND RELATED RELIEF

Marriott International, Inc. and Marriott Hotel Services, Inc. ("Marriott") respectfully file this omnibus discovery memorandum and request for status conference and relief. Marriott raises three distinct issues. First, Marriott seeks relief for Debtor's failure to produce highly relevant documents reflecting Debtor's internal estimation of the value of Marriott's Claim to be in excess of $███████; this request is particularly urgent because the person who valued the Claim as exceeding $███████ is scheduled to be deposed next week. Second, Marriott seeks clarification of the Court's ruling at its March 5, 2012 hearing with respect to the waiver of work product privilege over discussions resulting in the basis for Marriott's Proof of Claim. Third, Marriott seeks clarification and/or reconsideration of the Court's March 5, 2012 ruling with respect to Debtor's Document Request #17, which seeks "All valuations, discounted cash flows, feasibility studies (internal or external), profitability analyses, weighted average annual cost of capital calculations, appraisals, or other investment analyses,

1

prepared regarding EDITION, or any proposed or executed management agreement, brand franchise agreement, licensing agreement, proprietary ownership agreement, or any other investment in or management of a proposed or actual EDITION hotel."

In order to allow the parties to address and resolve these highly time sensitive issues as quickly as possible without the need for travel to Honolulu Marriott respectfully requests that the Court conduct a telephone conference on these discovery matters. In the alternative, should the Court prefer a more formal hearing, Marriott respectfully requests that the Court address these issues at the hearing already scheduled in this matter on March 12, 2012, per the suggestion of Debtor's counsel at the March 7th discovery conference in this matter.[1]

## I. ISSUE 1: DEBTOR'S WITHHOLDING OF DOCUMENTS RELATING TO THE ESTIMATION OF MARRIOTT'S CLAIM

1. The Debtor has failed to produce documents responsive to numerous of Marriott's document requests and highly relevant to the valuation of Marriott's Claim. In an email produced by the Davidson Family Trust, attached as Exhibit 1, Paul Guccini (Debtor's asset manager) wrote to Damian McKinney (Debtor's manager and lead investor) and Mark Herron (representative of Davidson Family

---

[1] The Court may recall that Marriott's counsel proposed that the Court consider holding telephone-only discovery conferences in this case leading up to the estimation hearing scheduled to begin April 3, 2012. The Debtor's counsel, Mr. Klevansky, responded that such conferences did not appear to be necessary in light of the hearings scheduled for March 12 and March 21, at which such matters could be addressed.

2

Trust and member of Debtor's advisory board)) on June 4, 2011, discussing whether to ▮▮▮▮ In connection with that discussion, Mr. Guccini ▮▮▮▮ including that ▮▮▮▮ ▮▮▮▮"

2. This document was not produced by the Debtor. Nor were any documents related to this document produced by the Debtor. The Debtor withheld this document notwithstanding that it is responsive to <u>numerous</u> of Marriott's requests for production from the Debtor and involved communications <u>by</u> representatives of the Debtor <u>to</u> representatives of the Debtor. Marriott served its First Request for Production of Documents to Debtor in Connection with the Debtor's Motion to Reject Management Contract on the Debtor *more than three months ago* on December 1, 2011. In those requests, Marriott sought, among other things,

> All Documents concerning, reflecting, or relating to the Debtor's attempted termination of the Marriott management agreement, including but not limited to Documents concerning, reflecting, or relating to the Debtor's decision and plans to terminate the Marriott management agreement. (Request No. 5)

> All Documents concerning, reflecting, or relating to the Debtor's decision to install Modern Management as interim Hotel manager. (Request No. 6)

3

> All Documents not otherwise encompassed in a preceding request that concern, relate to or reflect the Debtor's business judgment to reject the Marriott management agreement. (Request No. 19)

The Debtor agreed to produce responsive documents to each of these requests.

3. Despite the fact that the email attached at Exhibit 1 is plainly responsive to numerous of Marriott's document requests, and was written by one of the Debtor's custodians and addressed to another of the Debtor's custodians, it was omitted from Debtor's document production. Nor has the Debtor produced any notes of the discussion that led to this document, or any correspondence sent in response to this document. Equally important, the Debtor has not produced any of the analyses that Mr. Guccini or others created or relied upon in estimating the value of the management agreement, even though the analyses and assumptions behind the value stated in this document – and any other valuations and assumptions concerning the management agreement – are also plainly responsive to the document requests listed above.

4. On March 7, 2012, Marriott sent Debtor a letter requesting an explanation for why this document was omitted as well as a commitment to produce any related documents by the end of this week. *See* Exhibit 2. To date, Marriott has received no response. Time is of the essence, as Mr. Guccini is currently scheduled to be deposed next week.

5. Marriott respectfully requests that this Court compel the Debtor to produce any correspondence, notes, analyses, or other documents related to Exhibit 1, as well as any other valuations or financial analyses of the Marriott management agreement. Such documents are not only responsive to the requests served on the Debtor over three months ago, but are also responsive to many of the requests served more recently with respect to the estimation hearing.[2]

## II. ISSUE 2: CLARIFICATION OF THE COURT'S MARCH 5 RULING REGARDING PRIVILEGE WAIVER

6. Marriott respectfully seeks clarification of this Court's March 5, 2011 minute order , which stated: "As to discovery on claim estimation, when a claim is filed, it is open to discovery and any [privilege] prior is waived."

7. In the last discovery conference before this Court, the Debtor argued that it should be permitted to question Marriott witnesses concerning the contents of a telephone conference call that took place in late June 2011 concerning a pro forma analysis on which Marriott later relied in valuing its Claim. The Court stated that Marriott must respond to deposition questions concerning telephone conference call that led to the June 28, 2011 *pro forma,* and Marriott is doing so.

---

[2] *See, e.g.*, Request No. 1 ("All valuations, … profitability analyses, … or other investment analyses, prepared regarding the Hotel."); Request No. 2 ("All communications relating to the valuations, … profitability analyses, … or other investment analyses, sought in Request 1."); Request No. 25 ("All documents, including notes and files, of Damian McKinney, … relating to the Management Agreement, … the financial performance of the Hotel, or the ouster of Marriott as manager of the Hotel." ); Request No. 36 ("All Documents regarding the ouster of Marriott and/or the Debtor's takeover of the Hotel.").

5

8. The Court's March 5, 2012 Minute Order, however, is phrased in significantly broader terms and might be interpreted to suggest that, by having filed its Claim, Marriott has waived privilege over *any* attorney-client communications or attorney work product that relates in any way to the Claim. Marriott does not believe that such broader interpretation was be what the Court intended, and there is no support in the law for such a sweeping waiver doctrine.[3] For example, the very premise of the work product doctrine is the protection of materials prepared in anticipation of litigation, *see* Fed. R. Civ. P. 26(b)(3)(A), and courts also routinely apply attorney-client privilege to pre-complaint communications with counsel regarding litigation strategy or other legal advice. Marriott respectfully submits that the case law does not support the broad view that filing of a claim or complaint waives privilege or work product over anything leading to the claim, and we believe the Minute Order should be slightly revised to more closely reflect the Court's more narrow ruling and reasoning. We understand the Court to have ruled more narrowly, reasoning that because Marriott proffered a particular damages amount in its Claim and relied on the June 28 *pro forma* as the basis for that

---

[3] *See* 2 Attorney-Client Privilege in the U.S. § 9:52 ("Merely bringing an action (or asserting a counterclaim) does not, ipso facto, waive the privilege for communications on all subjects relevant to that cause of action. If it did, the attorney-client privilege would fail to provide protection in the very forum in which the privilege was designed to ensure effective representation. A client could not afford to be candid with her attorney about past events, conditions, and states of mind for fear that her communications would later be used against her."); *In re Hillsborough Holdings Corp.*, 176 B.R. 223, 239 (M.D. Fla. 1994) ("As a general rule, a party does not waive the accountant-client and attorney-client privileges by simply bringing or defending a lawsuit.")

6

amount, Marriott cannot claim privilege or work product over the discussions that led to the June 28 *pro forma.* We also understand that the Court has reserved judgment on whether other materials or information relating to the June 28 *pro forma* must be produced and will address such issues if and when they arise.[4]

9. Accordingly, Marriott respectfully requests that this Court clarify its March 5, 2012 Minute Order to state that, having submitted an affidavit valuing the management agreement at $65,471,668, *see* Dkt. #57-1 at ¶ 4, Marriott cannot invoke privilege over the June 2011 conference call with counsel that led to that valuation.

### III. ISSUE 3: CLARIFICATION AND/OR RECONSIDERATION OF THE COURT'S MARCH 5 RULING REGARDING DOCUMENT REQUEST #17

10. Marriott respectfully requests clarification and/or reconsideration of the Court's March 5, 2012 oral ruling on Marriott's motion to limit the scope of discovery. Specifically, Marriott seeks to confirm that Request 17 of Debtor's document requests ("Request 17") is limited to documents relating to the Waikiki EDITION ("Hotel") only and does not include documents relating to <u>any</u> "proposed or actual EDITION hotel."

11. Request 17 seeks:

---

[4] In response to a letter from Debtor, Marriott is in the process of searching for documents relating to the June pro formas and does not know if there even will be any disputes regarding any such documents.

> All valuations, discounted cash flows, feasibility studies (internal or external), profitability analyses, weighted average annual cost of capital calculations, appraisals, or other investment analyses, prepared regarding ***Edition*** or any proposed or executed management agreement, brand franchise agreement, licensing agreement, proprietary ownership agreement, or any other investment in or management of ***a proposed or actual Edition hotel***.[5]

12. At the March 5 hearing, this Court grouped all of the Debtor's requests relating to the EDITION brand into one category and resolved those requests by limiting the custodians from whom Marriott must produce documents. At the time, Marriott did not realize that Request 17 was one of the requests grouped with the Debtor's requests for reports and presentations concerning the EDITION brand. The Court's ruling resolved requests of that nature because it limited the number of custodians whose records Marriott is required to search for such reports and presentations. However, this ruling does not cure Marriott's very significant objections to Request 17: its impermissible overbreadth and its demand for irrelevant valuations and appraisals of *all* EDITION hotels, actual or hypothetical.

13. Marriott has no objection to producing responsive documents concerning the Waikiki Hotel. However, Debtor's request seeks far more – it

---

[5] Debtor's First Request For Production Of Documents To Marriott In Connection With Debtor's Objection To Marriott's Proof Of Claim ("Debtor's First Request For Documents"), at 14-15 (emphasis added). This document is attached to Marriott's Motion, Declaration of Lindsay Harrison, as Exhibit D (Dkt. No. 573-1).

8

seeks valuations, appraisals, contracts, and many other types of documents relating not only to the Waikiki Hotel, but also to the Hotel that Marriott manages in Istanbul, as well as the many properties Marriott has purchased, considered purchasing, or considered contracting for in New York, Miami, West Hollywood, London, and many other cities, countries, and regions. Debtor surely does not need any of these documents to estimate Marriott's claim.

14. Documents relating to The EDITION Istanbul are not relevant because the Hotel is located in a different market, is significantly smaller, and operates pursuant to a separate contract with a separate owner. The terms of Marriott's arrangement with that owner are not relevant to the estimation of Marriott's Claim in this case.

15. Furthermore, Debtor has no right to nor need for documents relating to hotels that Marriott has purchased or is contemplating purchasing. The burden of collecting and producing all of the documents sought, even from a narrow list of custodians, is extraordinary and is surely not justified given the irrelevance of these materials to this Hotel in this market.

16. Indeed, the Court recognized this principle in its ruling regarding Debtor's requests for documents about other Marriott hotels *in Hawaii*; the Court limited those requests to documents regarding only the JW Marriott Ihilani and

9

Marriott Waikiki Beach, and even then, limited the request to annual P&Ls and monthly STR reports.

17. Unfortunately, the Court's custodian limitation does not resolve the undue burden imposed by this Request (nor could it solve the relevance problem). The EDITION brand's top executives are among the custodians whose documents Marriott is producing. These executives are likely to possess documents responsive to Request #17 for nearly every "proposed or actual Edition Hotel." Accordingly, the Court's solution of limiting the number of custodians for Edition brand-related requests does not minimize the burden with respect to Request #17.

18. The only purposes served by Debtor's request for materials about all actual or hypothetical EDITION properties are to impose a very significant burden on Marriott and to allow Debtor to hunt for documents regarding its allegation that Marriott broke an alleged promise to open other EDITION-brand hotels before the Hotel. Marriott denies that the documents sought by this Request would even relate to *that* allegation. However, now that Debtor has forsworn such an argument at the estimation hearing, at a minimum, the Court should hold in abeyance Debtor's request for documents relating to every "proposed or actual Edition Hotel" and limit its ruling regarding Request #17 to the Hotel in question.

## CONCLUSION

Marriott respectfully requests that the Court order the following relief:

10

(1) Order the Debtor to produce all documents related to Debtor's own estimation of the value of Marriott's claim, including documents related to Exhibit 1.

(2) Clarify its March 5, 2012 ruling to be that having submitted an affidavit valuing the management agreement in support of its Proof of Claim, Marriott cannot invoke privilege over the June 2011 conference call with counsel that led to that valuation.

(3) Clarify and/or reconsider its March 5, 2012 ruling with respect to Document Request #17 to be limited to responsive documents concerning the Hotel, *not* "any proposed or actual EDITION hotel."

DATED: Honolulu, Hawaii, March 7, 2012.

/s/ Susan Tius
SUSAN TIUS
Attorney for MARRIOTT INTERNATIONAL, INC. and MARRIOTT HOTEL SERVICES, INC.

DATED: Los Angeles, California, March 7, 2012.

/s/ Alan M. Feld
ALAN M. FELD
Attorney for MARRIOTT INTERNATIONAL, INC. and MARRIOTT HOTEL SERVICES, INC.

DATED: Washington, DC, March 7, 2012.

/s/ Lindsay C. Harrison
LINDSAY C. HARRISON
Attorney for MARRIOTT
INTERNATIONAL, INC. and
MARRIOTT HOTEL SERVICES,
INC.

# Exhibit 1
# REDACTED

# Exhibit 2

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 744   Filed  03/09/12   Page 15 of 17

March 7, 2012

JENNER&BLOCK

Jenner & Block LLP	Chicago
1099 New York Avenue, NW	Los Angeles
Suite 900	New York
Washington, DC 20001	Washington, DC
Tel 202-639-6000
www.jenner.com

Lindsay C. Harrison
Tel (202) 639-6865
Fax (202) 661-4956
lharrison@jenner.com

VIA EMAIL

Mr. Michael Gardner
Bickel & Brewer
1717 Main Street
Suite 4800
Dallas, TX 75201

Re:   In re M Waikiki LLC, No. 11-02371

Dear Mr. Gardner:

I am writing because we are concerned that the Debtor has failed to produce certain documents that it is obligated to produce.

Marriott served its First Request for Production of Documents to Debtor in Connection with the Debtor's Motion to Reject Management Contract more than three months ago on December 1, 2011. Request No. 5 sought "All Documents concerning, reflecting, or relating to the Debtor's attempted termination of the Marriott management agreement, including but not limited to Documents concerning, reflecting, or relating to the Debtor's decision and plans to terminate the Marriott management agreement." Request No. 6 sought "All Documents concerning, reflecting, or relating to the Debtor's decision to install Modern Management as interim Hotel manager." Request No. 19 sought "All Documents not otherwise encompassed in a preceding request that concern, relate to or reflect the Debtor's business judgment to reject the Marriott management agreement." The Debtor agreed to produce responsive documents to these requests.

Attached you will find a document bearing the bates stamp DFT010632, which was produced by the Davidson Family Trust. It is an email from Paul Guccini to Damian McKinney and Mark Herron, and is plainly responsive to one or more of the document requests listed above. Yet the Debtor failed to produce this document in Paul Guccini's or Damian McKinney's files. Nor has the Debtor produced any of the resulting correspondence sent in response to this document. Equally important, the Debtor has not produced any of the analyses that Paul Guccini or others relied upon in estimating the value of the management contract even though the analyses and assumptions behind the value stated in this document – and any other valuations and assumptions – are also plainly responsive to the document requests listed above.

Please explain by close of business tomorrow why the Debtor failed to produce the attached email and related documents. Please also confirm in writing that Debtor has produced all documents responsive to Marriott's Request for Production in Connection with the Debtor's Motion to Reject Management Contract.

In addition, please produce by the end of this week any other valuations or financial analyses of the Marriott management agreement. Such documents are not only responsive to the requests served on the Debtor over three months ago, but are also responsive to many of the requests served more recently with respect to the estimation hearing. *See, e.g.,* Request No. 1 ("All valuations, … profitability analyses, … or other investment analyses, prepared regarding the Hotel."); Request No. 2 ("All communications relating to the valuations, … profitability analyses, … or other investment analyses, sought in Request 1."); Request No. 25 ("All documents, including notes and files, of Damian McKinney, … relating to the Management Agreement, … the financial performance of the Hotel, or the ouster of Marriott as manager of the Hotel." ); Request No. 36 ("All Documents regarding the ouster of Marriott and/or the Debtor's takeover of the Hotel."). The relevance of these documents for the forthcoming estimation hearing should be obvious.

We intend to raise this issue with the Court on Monday if we cannot resolve it before then.

Sincerely,


Lindsay C. Harrison
Partner

LCH:mep