NELIGAN FOLEY, LLP
PATRICK J. NELIGAN, JR.
    Texas State Bar No. 14866000
    Admitted *Pro Hac Vice*
JAMES P. MUENKER
    Texas State Bar No. 24002659
    Admitted *Pro Hac Vice*
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: (214) 840-5300
Facsimile: (214) 840-5301

KLEVANSKY PIPER, LLP
A Limited Liability Law Partnership
SIMON KLEVANSKY   3217-0
ALIKA L. PIPER       6949-0
NICOLE D. STUCKI      9151-0
    841 Bishop Street, Suite 1707
    Honolulu, Hawaii 96813
Telephone: (808) 536-0200
Facsimile: (808) 237-5758
E-Mail: sklevansky@kplawhawaii.com
apiper@kplawhawaii.com; nstucki@kplawhawaii.com

ATTORNEYS FOR DEBTOR

BICKEL & BREWER
WILLIAM A. BREWER III
    Texas State Bar No. 02967035
    Admitted *Pro Hac Vice*
MICHAEL S. GARDNER
    Texas State Bar No. 24002122
    Admitted *Pro Hac Vice*
1717 Main Street, Suite 4800
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1014
E-Mail: wab@bickelbrewer.com; mgardner@bickelbrewer.com

SPECIAL LITIGATION COUNSEL FOR DEBTOR

37703

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

In re
M WAIKKI LLC,
Debtor.

Case No. 11-02371
(Chapter 11)

DEBTOR'S PRE-HEARING BRIEF
IN CONNECTION WITH
ESTIMATION OF PROOF OF CLAIM
NO. 79 FILED BY MARRIOTT
HOTEL SERVICES, INC., AND
MARRIOTT INTERNATIONAL,
INC.; EXHIBITS "A" THROUGH "E"

Related Docket No. 505, Claim No. 79

37703

2

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................... iii

I. PRELIMINARY STATEMENT ....................................................... 1

II. RELEVANT FACTUAL AND PROCEDURAL
BACKGROUND ...................................................................... 5

    A. The Debtor. .................................................................... 7

    B. Marriott Sells Debtor On The Edition Brand ........................... 6

    C. Debtor Agrees To Affiliate The Hotel With The
    Edition Brand, Which Never Gets Off The Ground................. 7

    D. Marriott Operational And Financial Management Of
    The Hotel Proves Disastrous. ................................................ 8

    E. Marriott's Claim In This Matter. ............................................. 10

III. SUMMARY OF ARGUMENT ....................................................... 10

IV. ARGUMENT AND AUTHORITIES................................................ 11

    A. Marriott's Claim For Lost Profits Is Vastly Overstated........... 11

        1. Marriott's improperly accounts for costs in its
        lost profits claim .......................................................... 12

        2. The discount rate to be used to determine net
        present value of Marriott's potential lost profits
        should be 9.6% for first ten years and a
        minimum of 12.6% thereafter ........................................ 14

        3. It is likely that Marriott would have been
        replaced as Manager of the Hotel no later than
        mid-2018 ...................................................................... 17

            a. The Management Agreement's
            "Performance Termination" Provision ................ 17

37703

i

b.    Marriott initially determined that it would never have passed the "Performance Termination" test as of FY 2016 .......................... 18

c.    Marriott's arbitrary revisions to its initial revenue projections lack credibility .................... 20

(1)    The revised pro forma of June 28, 2011 ......................................... 20

(2)    Marriott's forecasted gains in the Hotels' ADR and RevPAR are not supported by Marriott's own performance ............................... 21

(3)    Marriott's actual management of the Hotel was a financial disaster ............. 24

d.    Marriott would fail the Performance Termination test in 2018 and 2010 ..................... 25

e.    Marriott would incur Shortfall Payments totaling $39.9 million by 2010 – and it would still be terminated by mid-2022 ............... 30

f.    Marriott's potential lost profits should be estimated at $4.3 million ...................................... 32

4.    It is entirely speculative to calculate potential lost profits over a 49 year period ................................... 34

B.    Marriott Has Not Offered a Basis to Estimate its Remaining Claims For Damages ............................................. 35

V.    CONCLUSION ................................................................................. 40

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 841   Filed  03/29/12   Page 4 of 46

# TABLE OF AUTHORITIES

Page

**CASES**

*Ashland Mgmt. Inc. v. Janien*,
  82 N.Y.2d 395, 403, 604 82 N.Y.S.2d 912 (N.Y. 1993) ........... 13, 34

*In re Hongisto*,
  86 F.3d Appx. 331, Nos. 03-15899, 03-16045, 2004 U.S.
  App. LEXIS 884, at * 3 (9th Cir. Jan. 12, 2004) ....................... 36

*Kenford Co., Inc. v. Erie County*,
  67 N.Y.2d 257, 261, 402 N.Y.S. 2d 131 (N.Y. 1986) .............. 12, 34

*24/7 Records, Inc. v. Sony Music Entertainment*,
  566 F.Supp. 2d 305, 316 (S.D.N.Y. 2008) ................................ 34

U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 841  Filed  03/29/12  Page 5 of 46

**DEBTOR'S PRE-HEARING BRIEF IN CONNECTION WITH
ESTIMATION OF PROOF OF CLAIM NO. 79 FILED BY MARRIOTT
HOTEL SERVICES, INC., AND MARRIOTT INTERNATIONAL, INC.**

M WAIKIKI LLC ("Debtor"), as debtor and debtor-in-possession,
files its Pre-Hearing Brief, in Connection with the Estimation of Proof of Claim
No. 79 filed by Marriott Hotel Services, Inc. and Marriott International, Inc.
(collectively "Marriott"), and respectfully states as follows:

**I.**

**PRELIMINARY STATEMENT**

For the past seven months, Marriott has repeatedly come before this
Court and insisted, wrongly, that Marriott was owed "no less than [Redacted] in
this bankruptcy case (the "Original Claim").[1]  The single largest component of
Marriott's alleged damages is its claim for over [Redacted] in lost profits—a
claim [Redacted]

[Redacted]

[Redacted]   In reality, given: (i) Marriott's [Redacted]

[Redacted]

[Redacted]

---------------------

[1]    *See* Marriott's Opposition to Debtor's Motion to Reject Management
Agreement, filed September 6, 2011 [Dkt. No. 57], p.10 [Redacted]
[Redacted] *see also See* Claim Docket
No. 79, dated January 31, 2012, and attached Addendum ("Proof of Claim").

U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 841  Filed  03/29/12  Page 6 of 46

Redacted

Redacted

Redacted

Redacted

The second largest component of Marriott's alleged damages is its claim for Redacted

Redacted However, the evidence concerning the amount and composition of Redacted

Redacted

Redacted Indeed, Marriott makes claims Redacted

Redacted

Redacted

Redacted

A key issue in the estimation proceedings is Redacted

Redacted

2

<div style="border:1px solid red; text-align:center; color:red;">Redacted</div>

noteworthy that Marriott, Marriott's experts and the Debtor's experts all agree on

one thing in this case: <span style="color:red;">Redacted</span>

<div style="border:1px solid red; text-align:center; color:red;">Redacted</div>

<span style="color:red;">Redacted</span>   Here, too, there is substantial agreement among the evidence.

Specifically, all three of the Debtor's experts agree <span style="color:red;">Redacted</span>

<span style="color:red;">Redacted</span>

---

[2]   The "Competitive Set" is made up of six hotels against which the Hotel's performance is compared for benchmarking purposes pursuant to the Management Agreement: <span style="color:red;">Redacted</span>
<span style="color:red;">Redacted</span> is attached as Ex. E to the Declaration of Damian McKinney ("McKinney Dec."), dated March 23, 20102, attached hereto as Ex. A; <span style="color:red;">Redacted</span> is attached as Ex. A to the Declaration of Kenneth N. Hickox, Jr., dated March 28, 2012, attached hereto as Ex. B, ¶ 3.



Redacted

Redacted By comparison, in the 37-year period between 1974 and 2011,

RevPAR for all hotels in the On-Beach/Luxury Sector Redacted

Redacted —had a CAGR of only 5.8% .

Simply stated, a realistic assessment of Redacted

Redacted

37703

4

Redacted

For all of these reasons, and those discussed below, Marriott's lost profits Redacted

Redacted In addition, its remaining damages claims—*e.g.* for injury to reputation, "working capital loans," and "chargebacks"—should Redacted

Redacted

Redacted

## II.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Debtor

1.  Debtor is a Hawaii limited liability company whose principal asset is a hotel now known as The Modern Honolulu (f/k/a The Waikiki EDITION)

(the "Hotel").[3]  "Lifestyle" is the term often used to describe a growing niche of luxury hotel properties that cater to guests with a certain lifestyle—specifically, those guests who want a hotel "experience" rather than simply a place to sleep or do business.[4]

## B.    Marriott Sells Debtor On The Edition Brand.

2.    In June 2007, Marriott Hotel Services, Inc. and its corporate parent Marriott International, Inc. (collectively, "Marriott") publicly announced that they had entered into an agreement with Ian Schrager ("Schrager") to develop a new brand of lifestyle hotels, which it later named "Edition."[5]  When Debtor contacted Marriott to inquire if it would have an interest in managing the Hotel, Marriott promptly began in earnest to convince Debtor to affiliate the Hotel with Edition.[6]

---

[3]    McKinney Dec., ¶ 2.  Debtor purchased the Hotel in July 2006, with the specific intention of redeveloping the property as a "lifestyle" hotel.  *Id.* ¶ 4.

[4]    *See* Deposition Transcript of Michael Rock ("Rock Dep."), dated March 15, 2012, excerpts of which are attached as Ex. B to Hickox Dec., at 10:20-11:3; *see also* Declaration of Fred Kleisner ("Kleisner Dec."), dated March 27, 2012, attached hereto as Ex. C, ¶ 21.

[5]    Marriott press releases, dated June 14, 2007 and January 29, 2008, attached as Exs. B-C to McKinney Dec.

[6]    McKinney Dec. ¶ 10.

3.      Marriott also provided Debtor with projections for the first year of Hotel operations.[7]  Such projections are an important part of any hotel owner's risk consideration in considering whether to affiliate itself with a particular brand, because they are intended to show at what point the owner's investment will show reasonable returns.[8]

> Redacted

> Redacted

## C.      Debtor Agrees To Affiliate The Hotel With The Edition Brand, Which Never Gets Off The Ground.

4.      In reliance on Marriott's representations, Debtor agreed to brand the Hotel as an Edition.[10]  To that end, on July 9, 2008, Debtor and Marriott entered into a Management Agreement, pursuant to which Marriott was obligated

> Redacted

---

[7]      *See id.* ¶ 11; Proposed Edition Waikiki Developer Scenario, dated March 26, 2008, attached as Ex. D to McKinney Dec., at 3.

[8]      Kleisner Dec. ¶ 32.

[9]      March 2008 Projections at 3.

[10]      *Id.*

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 841   Filed 03/29/12   Page 12 of 46

<div style="border:1px solid red; text-align:center; color:red;">Redacted</div>

5.    Marriott does not dispute <span style="color:red;">[Redacted]</span>

<div style="color:red; text-align:center;">Redacted</div>

<div style="border:1px solid red; text-align:center; color:red;">Redacted</div>

<span style="color:red;">[Redacted]</span> As of today, only one

Edition hotel exists, a 74-room property in Ankara, Turkey.

## D.    Marriott's Operational And Financial Management Of The Hotel Proves Disastrous.

6.    Marriott's tenure as Manager of the Hotel was a financial disaster. From the opening of the Hotel in September 2010, through Marriott's termination as Manager in August 2011, <span style="color:red;">[Redacted]</span>

<span style="color:red;">[Redacted]</span>

――――――――――――

[11]    *See* Management Agreement, a copy of which is attached as Ex. E to McKinney Dec., § 1.02.

[12]    *See* Deposition Transcript of Tim Miller ("Miller Dep."), dated March 14, 2012, excerpts of which are attached as Ex. C to Hickox Dec., at 69:23-70:8.

<div style="border:1px solid red; text-align:center; color:red;">Redacted</div>

[13]    McKinney Dec. ¶ 15.

7. Marriott's financial projections moved constantly downward.

<div style="border:1px solid red">Redacted</div>

<div style="border:1px solid red">Redacted</div> Subsequently, <div style="border:1px solid red">Redacted</div>

<div style="border:1px solid red">Redacted</div>

<div style="border:1px solid red">Redacted</div> The Hotel <div style="border:1px solid red">Redacted</div>

<div style="border:1px solid red">Redacted</div>

_____

[14] *Id.* <span style="border:1px solid red">Redacted</span>
<span style="border:1px solid red">Redacted</span>

[15] *See* Waikiki Edition Stub Year Projections 2010, dated July 9, 2010, attached as Ex. J to McKinney Dec.); McKinney Dec. ¶ 18.

[16] *Id.* ¶ 19; *see also* Management Agreement § 12.01 <span style="border:1px solid red">Redacted</span>
<span style="border:1px solid red">Redacted</span>

[17] *Id.*

[18] *Id.*

**E.      Marriott's Claim In This Matter.**

8.      On August 31, 2011, Debtor filed for relief under chapter 11 of the Bankruptcy Code in this Court.  Marriott filed its Original Claim on January 3, 2012.[19]   Totaling "not less than $72,000,000," the Original Claim includes: (i) $65,471,668 in "profits that Marriott would have earned under the terms of the Management Agreement during the remaining 47 years; (ii) so-called "working capital loans" allegedly made by Marriott to the Debtor in the amount of $5,599,082, plus interest; (i) "injuries to Marriott's reputation, brand identity, loss of goodwill and loss of customers" in an unspecified amount; (iii) damages arising from Debtor's alleged "misappropriation and misuse of Proprietary Information" in an unspecified amount; and (iv) customer chargebacks of up to $1 million.[20]

### III.

### SUMMARY OF ARGUMENT

9.      Marriott's lost profits claim ⟦Redacted⟧

⟦Redacted⟧

––––––––––––––––––

[19]      *See* Claim Docket No. 79, dated January 31, 2012, and attached Addendum ("Proof of Claim").

[20]      *Id.* at Addendum ¶ 3.



 Further, 

 (i) "working

capital loans"; (ii) customer chargebacks; (iii) injuries to its reputation, brand

identity, loss of goodwill and loss of customers; and (iv) damages arising from

Debtor's alleged misappropriation and misuse of Marriott's proprietary

information.

## IV.

## <u>ARGUMENT AND AUTHORITIES</u>

### A.    <u>Marriott's Claim For Lost Profits Is Vastly Overstated</u>

       10.    In order to recover damages for loss of future profits under New

York law—which applies to disputes arising under the contract pursuant to § 1.04

of the Management Agreement—a claimant must establish that defendant's breach

caused the harm and that the alleged loss is capable of proof with reasonable

certainty.[21] Even assuming that Marriott's [Redacted]

lost profits is permissible under New York law, [Redacted]

### 1. Marriott improperly accounts for costs in its lost profits claim.

11.    Marriott's initial calculation of its alleged lost "profits" was

actually [Redacted]

[Redacted] The Affidavit of Catherine L. Young ("Young"), a

Marriott Senior Vice President for Global Asset Management, makes clear that

[Redacted]

12.    Marriott is now [Redacted] it expert, Bruce Baltin

("Baltin"), to estimate its lost profits. [Redacted]

[Redacted]

[Redacted] That number is

---

[21]    *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 403, 604 N.Y.S.2d 912
(N.Y. 1993); *Kenford Co., Inc. v. Erie County*, 67 N.Y.2d 257, 261, 402 N.Y.S. 2d
131 (N.Y. 1986).

[22]    For a more detailed discussion of the legal authorities relevant to
determining Marriott's claim for lost profits, please see Debtor's Objection to
Proof of Claim No. 79 Filed by Marriott Hotel Services, Inc. and Marriott
International, Inc. [Dkt. # 505], dated January 19, 2012, ¶¶ 53-56.

[23]    *See* Proof of Claim, Addendum at Ex. B ¶ 4 (emphasis added).

[24]    Declaration of Bruce Baltin [Dkt. #___], dated March 24, 2012
("Baltin Dec."), ¶ 142.

[Redacted] For example, Kenneth Rehmann, Marriott's Global Officer of Brand Management, Marketing eCommerce, testified that, [Redacted]

[Redacted] Moreover, Marriott itself estimates that it incurred costs to operate the Hotel [Redacted]

[Redacted]

[Redacted] That information, combined with a review of Marriott's most recent 10K filing and Edition brand departmental cost summaries, leads to the conclusion that Marriott [Redacted]

[Redacted]

---

[25] *See* Declaration of Francis J. Nardozza ("Nardozza Dec.), dated March 24, 2012, attached hereto as Ex. D, at 25-27; Kleisner Dec. ¶ 14.

[26] *See* Declaration of Kenneth R. Rehmann ("Rehmann Dec."), dated March 23, 2012, ¶ 27.

[27] *See* Nardozza Dec. at 27; *see also* Marriott Valuation Summary ("Valuation Summary"), dated January 9, 2009, attached as Ex. G to Hickox Dec.; Deposition Transcript of Cathy Young, dated March 1, 2012 (3/1/2012 Young Dep."), excerpts of which are attached as Ex. H to Hickox Dec., at 102:6-104:8.

[28] Nardozza Dec. at 25-27; Kleisner Dec. ¶ 14.

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 841   Filed  03/29/12   Page 18 of 46

## 2. The discount rate to be used to determine net present value of Marriott's potential lost profits should [Redacted]

[Redacted]

13.     A "discount rate" is the interest rate used to calculate future receipts or payments at their net present value ("NPV").[29]  It reflects the expected rate of rate of return of an investor, weighing a particular investment's relative risk in relation to the available alternatives.[30]

14.     An appropriate discount rate for lost profits must therefore reflect the opportunity costs to the business from having foregone the receipt of profits in the future that could otherwise have been reinvested in other opportunities or returned to shareholders as dividends.[31]  When used in calculating a lost profits calculation over a 49-year span, the discount rate must be high enough to reflect the inherently greater risks and uncertainties that are entailed by such a lengthy time frame and the unsecured nature of the revenue stream.[32]

---

[29]     Nardozza Dec. 28.

[30]     *Id.*; *see also* Baltin Dec. ¶ 130.

[31]     *Id.* at 28-33

[32]     *Id.* at 32.

15. Marriott's Original Claim used an [Redacted] discount rate.[33] Marriott, however, appears [Redacted]

[Redacted]

16. The appropriate discount rate should at least equal Marriott's weighted average cost of capital ("WACC Rate"), which should then be adjusted upward to reflect the risks that are specific to the Edition brand, the Hotel, and the Management Agreement [Redacted] A company's WACC Rate reflects its enterprise-wide composite annual cost of debt and equity capital, and is thus a usual starting point for determining an appropriate discount

─────────────────

[33] *See* Proof of Claim, Addendum at Ex. B; 3/1/12 Young Dep. at 70:17-71:15; Management Fee Estimation.

[34] Baltin Dec. ¶¶ 125-136. [Redacted]

[Redacted]

[35] Nardozza Dec. at 28-29.

15

rate for a lost profits calculation for an ongoing business.[36]  Using information

disclosed in Marriott's most recent 10K filings with the SEC, as well as publicly

available analyst reports on the company, Redacted

Redacted That rate

should then be adjusted Redacted

Redacted

17.    Taking all of these factors into consideration, the appropriate

discount rate to be applied to any calculation of Marriott's potential lost profits

would be Redacted

Redacted

---

[36]    *Id.*

[37]    *Id.*

[38]    *Id.*

[39]    *Id.* at 33.

**3.** [Redacted]

18.  Marriott's claim for lost profits [Redacted]

[Redacted]

———————————————

[40]  *See* Proof of Claim, Addendum at Ex. B ¶ 4.

[41]  *See* Nardozza Dec. at 15-21.

[42]  *See* Management Agreement §§2.02(A)(1)-(2); *see also id.* §12.01

[Redacted]



Redacted

---

[43]    *Id.* at §2.2(A)(3); §4.01(C).

[44]    *Id.* at §2.02(B).

[45]    *Id.*

Redacted

Redacted *See* Baltin Dec. ¶ 121.

37703

18



_____



[49]    *See* Baltin Dec. ¶ 117 (Table).

[50]    McKinney Dec. ¶ 27; Nardozza Dec. at 11-12.

Redacted

---

[52]     Nardozza Dec. at 8-9.

[53]     Redacted  *see also* Nardozza
Dec. at 9-11.

Redacted

---

[54] Deposition Transcript of Dana Jacobsohn, dated March 15, 2012 ("3/15/12 Jacobsohn Dep."), excerpts of which are attached at Ex. K of Hickox Dec., at 149:4-14, 154:17-155:10, 156:15-**16,**23:165:8-166:20, 172:4-15; Deposition Transcript of Dana Jacobsohn, dated March 2, 2012 ("3/2/12 Jacobsohn Dep."), excerpts of which are attached at Ex. L of Hickox Dec., at 128:10-129:131:15.

Redacted

[56] 3/15/12 Jacobsohn Dep. 172:4-12.

[57] Nardozza Dec. at 10.

[58] *See id.*; Redacted



_____

59      Nardozza Dec. at 10-11.

60     *See* 

61     *Id.*

62     *See* Declaration of James Hallstrom [Dkt. #___], dated March 23, 2012, attached hereto as Ex. E, Ex. A ("THG Report") to declaration at 4-5, Exs. 4-6.

63 *Id.* at Ex. 7.

64 *Id.* at Exs. 5,7.



Redacted

---

[65]     *See* Baltin Dec. ¶ 74.

Redacted

[67]     *Id.*

[68]     McKinney Dec. ¶ 28.

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 841   Filed  03/29/12   Page 28 of 46



---

[69]   *See* Nardozza Dec. 10-15; *see also* THG Report at 9 <span style="color:red">Redacted</span>

<span style="color:red">Redacted</span>

<span style="color:red">Redacted</span> *See* 3/1/12 Young Dep. at 37:14-41:15.

[70]   Nardozza Dec. at 11-14; McKinney Dec. ¶¶ 25-37.

[71]   *See*, *supra*, § II(D).

[72]   Nardozza Dec. at 12.

Redacted

---

[74]     *Id*.

[75]     Nardozza Dec. at 14; Kleisner Dec. ¶ 39: *see also* Rock Dep. at 191:14-23 Redacted

Redacted

Dec. ¶ 34.

[76]     Nardozza Dec. at 11.



Redacted

---

[77] Redacted

[78] *See*, *generally*, Nardozza Dec. at 13-14; THG Report at 7-8. Redacted

Redacted

[79] *Id.*

[80] *Id.*; THG Report at 8.

[81] Miller Dep. at 48:12-67:21.



Redacted

82      Nardozza Dec. at 15-18; THG Report at 10, Ex. 13. Redacted

Redacted

83      THG Report at Exs. 5,7.

84      *Id.* at 6.

85      Nardozza Dec. at 16.

86      *See* THG Report at 7; *see also* Nardozza Dec. at 16-18 Redacted

Redacted

Redacted

---

[87]      THG Report at 6-7.

U.S. Bankruptcy Court - Hawaii    #11-02371    Dkt # 841    Filed   03/29/12    Page 33 of 46



_____

[88] *See* THG Report at 10, Exs. 12-13 Redacted
Redacted

Nardozza Dec. 16-18 Redacted

[89] *See* Baltin Dec. ¶¶ 119-120.

[90] *See id.* ¶ 119.

[91] *Id.* ¶¶ 77-84. Redacted





Redacted

---

<sup>92</sup>   *Id.* ¶ 54.

<sup>93</sup>   *See* THG Report at 6-7.

<sup>94</sup>   *See* Management Agreement at §2.02(B); *see also id.* at §12.01

Redacted



Redacted

---

[95]     *Id.* § 2.02(B).

[96]     *Id.*

[97]     *See* Nardozza Dec. at 18-19.

[98]     *See* Marriott Hotel Services, Inc.'s Objections and Responses to Debtors First Set of Interrogatories to Marriott Hotel Services, Inc. In Connection With Marriott Hotel Services, Inc.'s Proof Of Claim, at Response to Interrogatory No. 9, attached as Ex. M to Hickox Dec. Redacted
Redacted

[99]     *Id.*



<div align="center">Redacted</div>

---

[100]   *See* THG Report at Ex. 13; <span style="color:red">Redacted</span>

<span style="color:red">Redacted</span>

[101]   Nardozza Dec. 20; THG Report at 11, Ex. 13.

[102]   *Id.*

<div align="center">Redacted</div>



---

[104] *See id.* at §§ 2.02(A); 4.01(C); Nardozza Dec. at 5.

[105] *See* Baltin Dec. ¶123.

[106] Nardozza Dec. at 22 

[107] *See id.*



Redacted

_____

[108]    Nardozza Dec. at 23-25; *see also Kenford*, 67 N.Y.2d at 262(N.Y. 1986) (reversing award of lost profits as too speculative because, among other things, the calculations were for 20-year period and "the multitude of assumptions required to establish projections of profitability over the life of this contract require speculation and conjecture, making it beyond the capability of even the most sophisticated procedures to satisfy the legal requirements of proof with reasonable certainty."); *Ashland*, 82 N.Y.2d at 404 (stricter standard for new businesses); *24/7 Records, Inc. v. Sony Music Entertainment*, 566 F.Supp. 2d 305, 316 (S.D.N.Y. 2008) (denying lost profits claim because "there is no evidence that 24/7. . .ever made a profit, and there is no reliable, non-speculative means of ascertaining whether the business could have become profitable . . . .").

[109]    *See* Baltin Dec. ¶ 123.

[110]    Nardozza Dec. at 13; *see also* THG Report at Ex. 7.

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 841   Filed 03/29/12   Page 39 of 46

Redacted

**B.  Marriott Has Not Offered a Basis to Estimate its Remaining Claims For Damages**

42.    In its Original Claim, Marriott seeks damages for loss to its reputation, Edition's brand identity, loss of goodwill and loss of customers, and

_____

111    THG Report at Ex. 7.

112    *Id.*

113    *Id.*; Nardozza Dec. at 23-25.

114    *See* Baltin Dec. ¶¶ 77-84.

misappropriation of property.[115]  Marriott, however, provides no basis to quantify

these alleged damages, [Redacted]

[Redacted] Thus, they should be estimated at zero.[116]

[Redacted]

44.    Marriott's Original Claim also asserted that, as of the date it

was removed from the Hotel, it "had made a loan in the aggregate amount of more

than $5,599,082 to the Debtor" to "fund the working capital required to meet the

———————————————

[115]    Proof of Claim; *see also* Declaration of Roula McCann ("McCann Dec.") [Dkt. # __], dated March 23, 2012,

[116]    *See In re Hongisto*, 86 F.3d Appx. 331, Nos. 03-15899, 03-16045, 2004 U.S. App. LEXIS 884, at * 3 (9th Cir. Jan. 12, 2004) (upholding bankruptcy court's dismissal of creditor's claim for failing to allege sufficient facts to support the claim).  In addition, the very affidavit of Young that Marriott relied on for its Proof of Claim was also use by Marriott to seek a temporary restraining order in New York State court because damages to its reputation, good will, etc. were "unquantifiable."  *See* Proof of Claim, Ex. B.

Hotel's 2011 operating expenses."[117]   In addition, Marriott claimed that it was owed $28,271 for "customer chargebacks" and refunds on advance deposits, all of which were allegedly incurred after it was terminated as Manager of the Hotel.[118]



---

[117]   Claim ¶ 3(B).

[118]   *See id.* ¶ 3(D).

[119]   Declaration Catherine Young [Dkt. # __], dated March 24, 2012, ¶¶22-26.

[120]   *See* McCann Dec. ¶14.

[121]   *See id.* ¶26.

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 841   Filed  03/29/12   Page 42 of 46

45.    Thus, while Marriott has forced Debtor to [Redacted]

Redacted

_____

[122]    McCann Dec. ¶ 26 Redacted

Redacted

[123]    McCann Dec. ¶26.

[124]    *Id.*

Redacted

46.    Finally, although the Original Claim asserted a secured claim of
more than $1 million on account of "chargebacks," Redacted

Redacted

_____

[125]   *See* McKinney Dec. ¶¶ 31-32.  *see also* Kleisner Dec. ¶53-59, 61-63.

[126]   Rock Dep. 91:24-92:22.

[127]   McCann Dec. ¶ 19.

[128]   McCann Dep. 56:13-19.

# V.

# CONCLUSION

47.     For the foregoing reasons, Debtor asks that this Court: (i) estimate Marriott's lost profits claim in conjunction with Claim No. 79, for purposes of plan voting and feasibility, [Redacted] (ii) estimate Marriott's claims for damages related to alleged loss to its reputation, Edition's brand identity, loss of goodwill and loss of customers, and misappropriation of its property at zero; (iii) estimate Marriott's claims for "working capital loans" and related charges at an amount [Redacted]

[Redacted]

[Redacted] and (iv) for such other further relief that Debtor is entitled to at law or equity.

[This space is intentionally left blank]

Dated: Honolulu, Hawaii, March 28, 2012.

Respectfully submitted,

**NELIGAN FOLEY, LLP**

/s/ Patrick J. Neligan, Jr.
**PATRICK J. NELIGAN, JR.**
    Texas State Bar No. 14866000
**JAMES P. MUENKER**
    Texas State Bar No. 24002659

**KLEVANSKY PIPER, LLP**
A Limited Liability Law Partnership

/s/ Simon Klevansky
**SIMON KLEVANSKY**
**ALIKA L. PIPER**
**NICOLE D. STUCKI**

**ATTORNEYS FOR DEBTOR**

**BICKEL & BREWER**
**WILLIAM A. BREWER III**
    Texas State Bar No. 02967035
**MICHAEL S. GARDNER**
    Texas State Bar No. 24002122

**SPECIAL LITIGATION**
COUNSEL FOR DEBTOR

U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 841  Filed  03/29/12  Page 46 of 46