## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| IN RE: | § | **Case No. 11-02371** |
| | § | **(Chapter 11)** |
| **M WAIKIKI LLC,** | § | |
| | § | |
| **DEBTOR** | § | |

## FIFTH AMENDED JOINT PLAN OF
## REORGANIZATION PROPOSED BY THE DEBTOR AND
## THE DAVIDSON FAMILY TRUST DATED DECEMBER 22, 1999, AS AMENDED

NELIGAN FOLEY LLP
Patrick J. Neligan, Jr.
James P. Muenker
325 N. St. Paul
Suite 3600
Dallas, TX 75201
(214) 840-5300
Fax: (214) 840-5301

ARNOLD & PORTER LLP
Lisa Hill Fenning
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-5844
(213) 243-4000
Fax: (213) 243-4199

KLEVANSKY PIPER, LLP
A Limited Liability Law Partnership
Simon Klevansky
Alika L. Piper
Nicole D. Stucki
741 Bishop Street
Suite 1707
Honolulu, HI 96813
(808) 536-0200
Fax: (808) 237-5758

CARLSMITH BALL LLP
Tom E. Roesser
1001 Bishop Street
2200 Pacific Tower
Honolulu, HI 96813
(808) 523-2500
Fax: (808) 523-0842

**COUNSEL FOR M WAIKIKI, LLC**

**COUNSEL FOR THE DAVIDSON FAMILY TRUST DATED DECEMBER 22, 1999, AS AMENDED**

Dated: July 2, 2012

# TABLE OF CONTENTS

**ARTICLE I DEFINITIONS, CONSTRUCTION, AND INTERPRETATION** ......................1

**ARTICLE II UNCLASSIFIED CLAIMS** .................................................................**12**

2.01.   Administrative Claims other than the DIP Loan Claim..................................12
2.02.   DIP Loan Claim..............................................................................................13
2.03.   Priority Tax Claims.........................................................................................14
2.04.   U.S. Trustee Fees............................................................................................14

**ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS** ...................**14**

3.01.   Introduction....................................................................................................14
3.02.   Claims Against and Interests in the Debtor....................................................15

**ARTICLE IV IDENTIFICATION OF UNIMPAIRED AND IMPAIRED
CLAIMS AND INTERESTS** ...............................................................................**15**

4.01.   Unimpaired Claims and Interests....................................................................15
4.02.   Impaired Claims and Interests .......................................................................16
4.03.   Controversy Concerning Impairment .............................................................16

**ARTICLE V TREATMENT OF CLAIMS AND INTERESTS**................................**16**

5.01.   Non-Tax Priority Claims – Class 1 .................................................................16
5.02.   Secured Tax Claims – Class 2 ........................................................................16
5.03.   Wells Fargo Secured Claim – Class 3 .............................................................17
5.04.   R.D. Olson Secured Claim – Class 4 ..............................................................19
5.05.   Marriott Secured Claim – Class 5 ..................................................................19
5.06.   Davidson Trust Secured Claim – Class 6 .......................................................20
5.07.   Miscellaneous Secured Claims – Class 7 ........................................................20
5.08.   General Unsecured Claims – Class 8...............................................................21
5.09.   Aqua/Modern Claims – Class 9 .....................................................................22
5.10.   Marriott Unsecured Claim – Class 10 ............................................................23
5.11.   Davidson Trust Unsecured Claim – Class 11 ..................................................24
5.12.   Class C Interest in the Debtor – Class 12 .......................................................24
5.13.   Class B Interest in the Debtor – Class 13 .......................................................24
5.14.   Class A Interest in the Debtor – Class 14 .......................................................24

**ARTICLE VI MEANS FOR EXECUTION AND IMPLEMENTATION OF
THIS PLAN** ..........................................................................................................**25**

6.01.   Distributions; Sources of Cash for Plan Distributions.....................................25
6.02.   Debtor's Management and Operations Post-Effective Date.............................25
6.03.   Exit Funding ..................................................................................................25

i

6.04. Issuance of and Distributions on New Senior Equity ..........................................26
6.05. Duties of the Creditors' Committee..............................................................27

**ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS ........................................27**

7.01. General Treatment of Executory Contracts: Rejected ............................27
7.02. Cure Payments and Release of Liability...................................................28
7.03. Bar to Rejection Claims..............................................................................28
7.04. Rejection Claims...........................................................................................28

**ARTICLE VIII CONDITIONS TO CONFIRMATION DATE AND
EFFECTIVE DATE; EFFECT OF PLAN CONFIRMATION ...............................................29**

8.01. Conditions Precedent to Confirmation Date .............................................29
8.02. Conditions Precedent to the Effective Date...............................................29
8.03. Consequences of Non-Occurrence of Effective Date .................................30

**ARTICLE IX EFFECT OF PLAN CONFIRMATION AND EFFECTIVE
DATE ...............................................................................................................................30**

9.01. Binding Effect...............................................................................................30
9.02. Vesting of Assets ..........................................................................................30
9.03. Assertion of Causes of Action, Defenses and Counterclaims ..................30
9.04. Discharge of Debtor.....................................................................................31
9.05. Exculpation...................................................................................................32
9.06. Settlement and Release ...............................................................................32
9.07. Injunction.....................................................................................................33
9.08. Term of Bankruptcy Injunction or Stays ..................................................33
9.09. Effectuating Documents; Further Transactions; Timing .........................33

**ARTICLE X OBJECTIONS TO CLAIMS AND INTERESTS;
DISTRIBUTIONS..........................................................................................................33**

10.01. Objections to Claims and Interests ...........................................................33
10.02. Objection Deadline ......................................................................................34
10.03. Settlement of Objections to Claims or Interests .......................................34
10.04. No Interest on Claims ..................................................................................34
10.05. Setoffs by the Debtor; No Waiver ...............................................................34
10.06. Procedures for Treating and Resolving Disputed and Contingent Claims .........34
10.07. Distributions Under the Plan .....................................................................36
10.08. Duty to Disgorge Overpayments ................................................................36

**ARTICLE XI ACCEPTANCE OR REJECTION OF THE PLAN........................................37**

11.01. Impaired Classes Entitled to Vote .............................................................37
11.02. Acceptance by an Impaired Class ...............................................................37
11.03. Section 1129(b) Cramdown .........................................................................37

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 1346   Filed  07/02/12   Page 3 of 49

**ARTICLE XII RETENTION OF JURISDICTION** .................................................................**37**

12.01. Jurisdiction ...........................................................................................................37
12.02. Examination of Claims ........................................................................................38
12.03. Determination of Disputes ..................................................................................38
12.04. Additional Purposes ............................................................................................38
12.05. Failure of the Bankruptcy Court to Exercise Jurisdiction ................................40

**ARTICLE XIII MISCELLANEOUS PROVISIONS** ...................................................**40**

13.01. General Notices ...................................................................................................40
13.02. Plan Supplement .................................................................................................41
13.03. Exemption From Transfer Taxes ........................................................................42
13.04. Asserting and Curing Default Under the Plan ....................................................42
13.05. Revocation or Withdrawal of the Plan ...............................................................42
13.06. Modification of the Plan .....................................................................................42
13.07. Computation of Time ..........................................................................................43
13.08. Due Authorization ...............................................................................................43
13.09. Implementation ...................................................................................................43
13.10. Execution of Documents .....................................................................................43
13.11. Bankruptcy Restrictions ......................................................................................43
13.12. Ratification ..........................................................................................................44
13.13. Integration Clause ...............................................................................................44
13.14. Interpretation .......................................................................................................44
13.15. Severability of Plan Provisions ..........................................................................44
13.16. Governing Law ....................................................................................................44

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 1346   Filed  07/02/12   Page 4 of 49

# INTRODUCTION

M Waikiki, LLC, the Debtor herein, and The Davidson Family Trust dated December 22, 1999, as amended, propose this Fifth Amended Joint Plan of Reorganization pursuant to Bankruptcy Code section 1121(a). Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, properties, results of operations, resolutions of certain material disputes, projections for future operations and liquidation, risk factors, a summary and analysis of the Plan, and certain related matters.

The Distributions to be made pursuant to this Plan to Holders of Allowed Claims and Allowed Interests, in each of the Classes of Claims against and Interests in the Debtor set forth in Article III of this Plan, are set forth in Article V of this Plan.

# ARTICLE I
## DEFINITIONS, CONSTRUCTION, AND INTERPRETATION

The capitalized terms used herein shall have the respective meanings set forth below. A capitalized term used herein that is not defined in this Article or otherwise defined in the Plan shall have the meaning, if any, ascribed to that term in the Bankruptcy Code. To the extent that there is an inconsistency between a definition in this Plan and a definition in the Bankruptcy Code, the definition set forth in this Plan shall control. The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of the Plan, provided, that in the event of any conflict between the Plan and the Disclosure Statement, the Plan shall govern over the Disclosure Statement. In the event a conflict between the Plan and any document implementing the Plan arises, the document shall govern unless the Plan provides otherwise. In the event a conflict between the Plan and the Confirmation Order arises, the Confirmation Order shall govern. Whenever the context requires, words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender and vice versa. All exhibits and schedules to the Disclosure Statement are incorporated herein. **The Plan Supplement and all exhibits to the Disclosure Statement have been, or will be, filed electronically with the Bankruptcy Court. Copies of the Plan Supplement and such exhibits may be viewed and/or downloaded from the Bankruptcy Court's PACER website.**

**Further, the Debtor will provide copies of any or all of the Plan Supplement and all exhibits to the Disclosure Statement upon written request submitted to:**

**Neligan Foley LLP**
**Attn: Kathy Gradick**
**325 N. St. Paul, Suite 3600**
**Dallas, TX 75201**
**kgradick@neliganlaw.com**

**1.01.** *"Administrative Claim"* means a Claim against the Debtor for payment or reimbursement of an administrative expense of a kind within the scope of Bankruptcy Code section 503(b) and entitled to priority under Bankruptcy Code section 507(a)(2), including, without limitation, (a) actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the Debtor's business, including wages, salaries, or commissions for services rendered, (b) Fee Claims and all other claims for compensation or

reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, (c) the DIP Loan Claim, (d) all Claims arising under Bankruptcy Code section 503(b)(9), (e) all fees and charges assessed against the Estate under the Bankruptcy Code or under section 1930 of chapter 123 of title 28 of the United States Code, and (f) all other claims entitled to administrative priority claim status pursuant to a Final Order.

 1.02. *"Allowance Date"* means the date on which a Claim becomes an Allowed Claim or an Interest becomes an Allowed Interest.

 1.03. *"Allowed,"* with respect to a Claim, other than an Administrative Claim means such a Claim, or any portion thereof, (a) that has been allowed by a Final Order, (b) that either (y) was listed in the Schedules as a liquidated, non-contingent, and undisputed Claim in an amount greater than zero or (z) is the subject of a timely filed proof of Claim as to which either (i) no objection to its allowance has been filed (either by way of objection or amendment of the Schedules) on or before the Objection Deadline or (ii) any objection to its allowance has been settled, waived through payment, withdrawn or overruled by a Final Order, (c) that is expressly allowed in a liquidated amount in the Plan, or (d) that is in an amount agreed to by the Debtor and the Holder of such Claim; with respect to an Administrative Claim, means an Administrative Claim for which a timely written request for payment has been made in accordance with the Plan (if such written request is required) and as to which (y) no timely objection to its allowance has been filed or (z) any objection to its allowance has been settled, waived through payment, withdrawn or overruled by a Final Order; and, with respect to an Interest, means any Interest that appears, as of the Petition Date, in the Debtor's books and records except as provided in the Plan or otherwise determined by a Final Order.

 1.04. *"Aqua/Modern"* means, collectively, Aqua Hotels & Resorts, LLC, Aqua Hotels & Resorts, Inc., and/or Modern Management Services, LLC.

 1.05. *"Aqua/Modern Claims"* means, collectively, all Claims asserted by Aqua/Modern or, with respect to a claim for indemnification, its former employees.

 1.06. *"Asset"* means any property owned by the Estate or the Debtor.

 1.07. *"Avoidance Action"* means any Cause of Action arising under chapter 5 of the Bankruptcy Code including, but not limited to, Bankruptcy Code sections 502, 510, 541, 542, 544, 545, 547, 548, 549, 550, 551, or 553, or under any similar applicable law, including, without limitation, fraudulent transfer laws, whether or not any such Cause of Action has been asserted or commenced as of the Effective Date.

 1.08. *"Ballot"* means the form of ballot distributed with the Disclosure Statement and the Plan to each Holder of an impaired Claim or Interest entitled to vote to accept or reject the Plan and which each such Holder may use to cast a vote to accept or reject the Plan.

 1.09. *"Balloting Agent"* means Kathryn Tran, XRoads Case Management Services, 1821 E. Dyer Road, Suite 250, Santa Ana, CA 92705.

**1.10.** *"Balloting Deadline"* means May 16, 2012 at 5:00 p.m. Hawaii Standard Time, the deadline set by the Bankruptcy Court's order approving the Disclosure Statement for the receipt by the Balloting Agent of Ballots for accepting or rejecting the Plan.

**1.11.** *"Bankruptcy Case"* means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court.

**1.12.** *"Bankruptcy Code"* means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Bankruptcy Case.

**1.13.** *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Hawaii, or any other court or adjunct thereof having jurisdiction over the Bankruptcy Case.

**1.14.** *"Bankruptcy Rules"* means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Bankruptcy Case or proceedings therein, and the Local Rules of the Bankruptcy Court, all as now in effect or hereafter amended.

**1.15.** *"Bar Date"* means the deadline for filing in the Bankruptcy Case proofs of Claims or Interests arising before the Petition Date against or in the Debtor, which date is (a) January 3, 2012 or (b) July 16, 2012, solely with respect to a Creditor whose General Unsecured Claim was listed as "disputed" in Schedule F of the Schedules (docket #257) and did not file a proof of claim on or before June 15, 2012, other than (y) Claims by governmental units, as to which the deadline is February 27, 2012, and (z) Claims whose filing deadline is otherwise subject to the Rejection Bar Date.

**1.16.** *"Business Day"* means any day other than a Saturday, a Sunday, a "legal holiday" as such term is defined in Bankruptcy Rule 9006(a), or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

**1.17.** *"Cash"* means legal tender of the United States of America and equivalents thereof, which may be conveyed by check or wire transfer.

**1.18.** *"Causes of Action"* means any and all claims, actions, arbitrations, proceedings, causes of action, rights, suits, complaints, notices of non-compliance or violation, enforcement actions, investigations, accounts, controversies, agreements, promises, rights of action, rights to legal or equitable remedies, rights to payment, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, that the Debtor and/or the Estate may hold against any Person, or which could be asserted by the Debtor on behalf of any Creditor or Creditor representative under the Bankruptcy Code as a debtor in possession (under Bankruptcy Code sections 1107(a) and 1108) or by any representative of the Debtor or the Estate, including but not limited to the Debtor's claims against Marriott and all Avoidance Actions, all proceeds of and recoveries of same, and all actual and potential actions and causes of action identified in the Disclosure Statement.

U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 1346  Filed  07/02/12  Page 7 of 49

**1.19.** *"Claim"* shall have the meaning provided in Bankruptcy Code section 101(5).

**1.20.** *"Class A Interest"* means any Interest in the Debtor comprising a Class A Unit as such term is defined in the Prepetition Operating Agreement.

**1.21.** *"Class B Interest"* means any Interest in the Debtor comprising a Class B Unit as such term is defined in the Prepetition Operating Agreement.

**1.22.** *"Class C Interest"* means any Interest in the Debtor comprising a Class C Unit as such term is defined in the Prepetition Operating Agreement.

**1.23.** *"Collateral"* means any property or interest in property of (a) the Estate or, (b) after the Effective Date, of the reorganized Debtor, that is subject to a Lien to secure the payment or performance of a Claim, which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

**1.24.** *"Confirmation Date"* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

**1.25.** *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128 to consider confirmation of the Plan, which is scheduled to commence on June 1, 2012, at 9:00 a.m. Hawaii Standard Time, and as may be adjourned or continued from time to time.

**1.26.** *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan under Bankruptcy Code section 1129.

**1.27.** *"Creditor"* means any Person that is the Holder of a Claim against the Debtor.

**1.28.** *"Creditors' Committee"* means the committee of unsecured creditors appointed in the Bankruptcy Case by the United States Trustee pursuant to Bankruptcy Code section 1102(a)(1).

**1.29.** *"Cure Amount"* means any amount required to be paid as a condition for the assumption of an Executory Contract under Bankruptcy Code section 365(b).

**1.30.** *"Davidson Trust"* means The Davidson Family Trust dated December 22, 1999, as amended, and its successors and assigns.

**1.31.** *"Davidson Trust Prepetition Loan Documents"* means, collectively, (a) the Promissory Note, dated on or about November 16, 2010, in the principal amount of $15,000,000, executed by the Debtor and made payable to the Davidson Trust, (b) the related Mortgage, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing of even date therewith, and (c) all ancillary documents relating thereto.

4

**1.32.** *"Davidson Trust Secured Claim"* means the Secured Claim held by the Davidson Trust against the Debtor, which the Davidson Trust claims to be in the principal amount of $15,000,000 as of the Petition Date, plus accrued interest, late charges, attorneys' fees and costs.

**1.33.** *"Davidson Trust Unsecured Claim"* means any unsecured Claim asserted by the Davidson Trust.

**1.34.** *"Debtor"* means M Waikiki, LLC, including, as the context may require, such Entity reorganized pursuant to the Plan from and after the Effective Date.

**1.35.** *"DIP Lender"* means the Davidson Trust, in its capacity as the DIP Lender as provided and defined in the DIP Loan Facility.

**1.36.** *"DIP Loan Claim"* means any and all Allowed amounts owed (including interest, reasonable fees and expenses as permitted under the DIP Loan Facility and applicable law) to the DIP Lender under the DIP Loan Facility and all loan documents executed in connection therewith.

**1.37.** *"DIP Loan Facility"* means the post-petition Amended and Restated Loan and Security Agreement dated as of January 17, 2012 entered into by the Debtor and the Davidson Trust in accordance with the terms and conditions set forth in the DIP Loan Order.

**1.38.** *"DIP Loan Motion"* means the Debtor's Motion for Interim and Final Orders Approving Amended and Restated DIP Credit Agreement and Authorizing the Debtor to Incur Additional Post-Petition Secured Indebtedness Thereunder, filed on January 1, 2012 (docket #454).

**1.39.** *"DIP Loan Order"* means the Final Order of the Bankruptcy Court entered on May 18, 2012 (docket #1067) granting the DIP Loan Motion and authorizing the Debtor to enter into the DIP Loan Facility.

**1.40.** *"Disallowed"* when used with respect to a Claim or Interest, shall mean a Claim or Interest, or a portion thereof, that (a) has been disallowed by a Final Order or any provision of the Plan, (b) is listed in the Schedules in an amount of zero or as contingent, unliquidated or disputed and as to which no proof of Claim has been filed by the Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or a Final Order or under applicable law, unless an Allowed amount of such Claim has been agreed to by the Debtor and the Holder thereof, or (c) is not listed in the Schedules and as to which (i) no proof of Claim has been filed by the Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or a Final Order or under applicable law, or (ii) no request for the allowance of an Administrative Claim (including a Fee Claim) has been filed by the deadline in Section 2.01 of the Plan or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or a Final Order or under applicable law.

**1.41.** *"Disclosure Statement"* means the disclosure statement (including all exhibits and schedules thereto) relating to the Plan, as approved by the Bankruptcy Court and distributed contemporaneously with this Plan in accordance with Bankruptcy Code section 1125 and

Bankruptcy Rule 3017, as it may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

1.42. *"Disputed"* means, with respect to a Claim (including any Administrative Claim) or Interest, a Claim or Interest, or any portion thereof, (a) that is neither Allowed pursuant to the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, (b) that is listed in the Schedules as disputed, contingent, or unliquidated and which has not been resolved by written agreement of the parties or a Final Order; (c) for which a proof of Claim or Interest has been timely filed or deemed timely filed with the Bankruptcy Court and as to which any party in interest has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or any order of the Bankruptcy Court, or which is otherwise Disputed by the Debtor in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or resolved or determined by a Final Order; or (d) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim or Interest has been determined by Final Order in such other forum and Allowed by Final Order. Prior to the expiration of the time within which to object to such Claim or Interest set forth herein or otherwise established by order of the Bankruptcy Court, a Claim or Interest shall be considered Disputed to the extent that (i) the amount of the Claim or Interest specified in a proof of Claim or Interest exceeds the amount listed in the Schedules and/or (ii) the Claim or Interest is classified differently in the proof of Claim or Interest than in the Schedules. To the extent an objection to the allowance of only a portion of a Claim or Interest has been timely filed, such Claim or Interest shall be a Disputed Claim only to the extent of the portion subject to objection.

1.43. *"Disputed Amount"* means (a) if a liquidated amount is set forth in a proof of Claim or Interest relating to a Disputed Claim or Interest, (i) the liquidated amount set forth in the proof of Claim or Interest relating to the Disputed Claim or Interest, (ii) an amount agreed to by the Debtor and the Holder of such Disputed Claim or Interest, or (iii) if a request for estimation is filed by any party, the amount at which such Claim or Interest is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the proof of Claim or Interest relating to a Disputed Claim or Interest, (i) an amount agreed to by the Debtor and the Holder of such Disputed Claim or Interest, (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim or Interest; or (c) zero, if the Claim or Interest was not listed on the Schedules or was listed on the Schedules as disputed, contingent or unliquidated and no proof of Claim or Interest was filed, or deemed to have been filed, by the Bar Date and the Claim or Interest has not been resolved by written agreement of the Debtor and the Holder of such Claim or Interest or an order of the Bankruptcy Court.

1.44. *"Distribution"* means the property to be distributed under the Plan to the Holders of Allowed Claims or Holders of Allowed Interests.

1.45. *"Distribution Date"* means the date upon which a Distribution is made in accordance with the Plan to Holders of Allowed Claims or Allowed Interests entitled to receive Distributions under the Plan.

1.46. *"Effective Date"* means the first Business Day after the Confirmation Date on which (a) no stay or motion for a stay of the Confirmation Order is in effect or pending and (b)

6

all conditions to the Effective Date set forth in Section 8.02 of the Plan have been met or waived; provided, that the condition set forth in Section 8.02(c) may not be waived. The Debtor will file and serve notice of the Effective Date within five (5) Business Days after its occurrence.

1.47. *"Entity"* shall have the meaning provided in Bankruptcy Code section 101(15).

1.48. *"Estate"* means the estate of the Debtor created under Bankruptcy Code section 541.

1.49. *"Executory Contract"* means any prepetition executory contract or unexpired lease within the meaning of Bankruptcy Code section 365 between the Debtor and any other Person(s).

1.50. *"Exit Capital Contribution"* means a capital contribution in the amount of (i) approximately $35,700,000 (consisting of approximately $33,200,000 in Cash and a reduction of the DIP Loan Claim in the amount of $2,500,000), plus (ii) the amount of the Marriott Payment, plus (iii) such additional amount as may be determined by the Davidson Trust or its designee, in its sole discretion, that the Davidson Trust or its designee shall contribute to the reorganized Debtor on the Effective Date. The Exit Capital Contribution shall comprise a portion of the Exit Funding.

1.51. *"Exit Funding"* means, collectively, the Exit Capital Contribution and the Secured Exit Loan.

1.52. *"Face Amount"* means (a) when used in reference to a Disputed Claim or Interest, the Disputed amount of such Claim or Interest, and (b) when used in reference to an Allowed Claim or Interest, the Allowed amount of such Claim or Interest.

1.53. *"Fee Application"* means an application for the allowance and/or payment of a Fee Claim.

1.54. *"Fee Claim"* means a Claim against the Debtor by a Professional or any other party pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b) or 1103 or otherwise for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and prior to and including the Effective Date.

1.55. *"Final Decree"* means the final decree entered by the Bankruptcy Court pursuant to Bankruptcy Rule 3022, which shall, *inter alia*, close the Bankruptcy Case.

1.56. *"Final Order"* means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction that has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending; provided, however, that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order or judgment.

**1.57.** *"General Unsecured Claim"* means a Claim other than an Administrative Claim, a Secured Claim, a Priority Tax Claim, a Non-Tax Priority Claim, or any Claim asserted by the Davidson Trust, Aqua/Modern or Marriott.

**1.58.** *"Holder"* means the beneficial owner of a Claim or an Interest. For purposes of voting to accept or reject the Plan, a Person must be a Holder as of the Voting Record Date.

**1.59.** *"Hotel"* means The Modern Honolulu hotel (f/k/a The Waikiki EDITION), an 18-story, 353-room hotel located at 1775 Ala Moana Boulevard, Honolulu, Hawaii 96815, which is the Debtor's principal asset.

**1.60.** *"Initial Distribution Date"* means the first Distribution Date following the Effective Date, which date shall be no later than thirty (30) days after the Effective Date.

**1.61.** *"Interest"* means the legal, equitable, contractual, and/or other rights of any Person with respect to any capital stock or other ownership interest in the Debtor, whether or not transferable, and any option, warrant or right to purchase, sell, or subscribe for an ownership interest or other equity security in the Debtor.

**1.62.** *"Interest Reserve"* means the funds to be held by Wells Fargo pursuant to Section 5.03(b)(iii)(D) of the Plan.

**1.63.** *"Lien"* has the meaning provided in Bankruptcy Code section 101(37) and shall include a "statutory lien" as defined in Bankruptcy Code section 101(53).

**1.64.** *"Marriott"* means, collectively, Marriott Hotel Services, Inc. and Marriott International, Inc.

**1.65.** *"Marriott Collateral"* means, as of the Effective Date, the Collateral that secures an Allowed Marriott Secured Claim.

**1.66.** *"Marriott Payment"* means the payment to Marriott equal to the aggregate amount of the Allowed Marriott Secured Claim and the Allowed Marriott Unsecured Claim, as provided in Sections 5.05 and 5.10, respectively, of the Plan, which shall consist of immediately available funds that shall be provided by the Davidson Trust either directly or, if the Effective Date occurs, as part of the Exit Capital Contribution.

**1.67.** *"Marriott Payment Date"* means the date on which the Allowed Marriott Secured Claim and the Allowed Marriott Unsecured Claim are paid in full by the Debtor or the Davidson Trust pursuant to Sections 5.05(b) and 5.10(b), respectively, of the Plan. In no event shall the Marriott Payment Date occur later than July 30, 2012.

**1.68.** *"Marriott Secured Claim"* means a Secured Claim asserted by Marriott.

**1.69.** *"Marriott Unsecured Claim"* means any unsecured Claim asserted by Marriott.

8

**1.70.** *"Miscellaneous Secured Claim"* means a Secured Claim other than a Secured Tax Claim, the DIP Loan Claim, the Wells Fargo Secured Claim, the Marriott Secured Claim, or the Davidson Trust Secured Claim.

**1.71.** *"Modern Management Agreement"* means the Amended and Restated Hotel Management Agreement entered into as of the Effective Date by and between the Debtor and Modern Management Services, LLC.

**1.72.** *"New Operating Agreement"* means the Prepetition Operating Agreement, as amended, modified and assumed pursuant to the Plan. The New Operating Agreement shall be included in the Plan Supplement.

**1.73.** *"New Senior Class 1 Units"* means the Senior Class 1 Units in the reorganized Debtor, as defined in, and with all appurtenant rights provided in, the New Operating Agreement.

**1.74.** *"New Senior Class 2 Units"* means the Senior Class 2 Units in the reorganized Debtor, as defined in, and with all appurtenant rights provided in, the New Operating Agreement.

**1.75.** *"New Senior Equity"* means, collectively, the New Senior Class 1 Units and the New Senior Class 2 Units.

**1.76.** *"Non-Tax Priority Claim"* means any Claim against the Debtor that, if Allowed, would be entitled to priority in payment under Bankruptcy Code section 507(a) other than a Priority Tax Claim or an Administrative Claim.

**1.77.** *"Objection Deadline"* means the last day for filing objections to Claims (other than Administrative Claims or Fee Claims) or Interests, which day shall be the later of (a) 180 days after the Effective Date, (b) 90 days after the filing date of any proof of Claim or Interest that is timely filed after the Confirmation Date, or (c) such other day as the Bankruptcy Court may order. The filing of a motion to extend the Objection Deadline shall automatically extend the Objection Deadline until an order ruling on such motion becomes a Final Order. If such motion to extend the Objection Deadline is denied, the Objection Deadline shall be the later of the current Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's order denying such motion becomes a Final Order.

**1.78.** *"Ordinary Course of Business"* shall have the meaning provided under Bankruptcy Code section 363 and judicial interpretations thereof.

**1.79.** *"Person"* means any Entity, natural person, corporation, limited partnership, general partnership, joint venture, trust, land trust, business trust, unincorporated organization, or other organization (irrespective of whether it is a legal entity), and any "governmental unit" as that term is defined in Bankruptcy Code section 101(27).

**1.80.** *"Petition Date"* means August 31, 2011, the date the Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code.

**1.81.** *"Plan"* means this Fifth Amended Joint Plan of Reorganization and all exhibits or agreements annexed to such plan, referenced in such plan, or included in the Plan Supplement, as

9

the same may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**1.82.** *"Plan Supplement"* means the exhibits, schedules, agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, which, unless otherwise specified in the Plan, shall be filed by the Debtor no later than one (1) Business Day before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court without further notice to parties in interest, and as may be amended thereafter. All documents comprising the Plan Supplement shall be in form and substance acceptable to the Debtor.

**1.83.** *"Prepetition Operating Agreement"* means the "Second Amended and Restated Operating Agreement of M Waikiki LLC, a Hawaii Limited Liability Company," effective as of November 16, 2010.

**1.84.** *"Priority Tax Claim"* means any Claim that, if Allowed against the Debtor, would be entitled to priority under Bankruptcy Code section 507(a)(8).

**1.85.** *"Professional"* means (a) any Person employed in the Bankruptcy Case pursuant to Bankruptcy Code sections 327, 328 or 1103 or otherwise and (b) any Person seeking compensation or reimbursement of costs and expenses in connection with the Bankruptcy Case pursuant to Bankruptcy Code section 503(b)(4) or 1129(a)(4).

**1.86.** *"Proponents"* means the Debtor and the Davidson Trust, as proponents of the Plan.

**1.87.** *"Pro Rata"* means, at any time, the proportion that the Allowed Amount of a Claim or an Interest in a particular Class bears to the aggregate Face Amount of all Claims or Interests (including Disputed Claims or Interests, but excluding Disallowed Claims or Interests) in that Class as of the date of the relevant determination, unless the Plan provides otherwise.

**1.88.** *"R.D. Olson Secured Claim"* means the Secured Claim held by The Robert D. Olson Corporation against the Debtor, which such Claimant claims to be in the amount, as of the Petition Date, of $1,839,217.00 plus attorneys' fees and costs, interest, and other charges and expenses.

**1.89.** *"Rejection Bar Date"* means the deadline by which any Person must file a Rejection Claim, which deadline shall be the later of (a) thirty (30) days after service of a notice of the Effective Date or (b) such other date as is prescribed by the Bankruptcy Court.

**1.90.** *"Rejection Claim"* means a Claim by a party to an Executory Contract that has not been assumed by the Debtor pursuant to the Plan or a prior Final Order entered in the Bankruptcy Case for damages arising from the rejection by the Debtor of such Executory Contract under Bankruptcy Code section 365.

**1.91.** *"Schedule of Assumed Contracts"* means the schedule that identifies Executory Contracts, if any, to be assumed under Bankruptcy Code sections 365 and 1123(b)(2) under the

U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 1346  Filed 07/02/12  Page 14 of 49

Plan and proposed Cure Amounts related thereto. The Schedule of Assumed Contracts shall be included in the Plan Supplement.

      **1.92.** *"Schedules"* means, with respect to the Debtor, the schedules of Assets and liabilities, the list of Holders of Interests, and the statement of financial affairs filed by the Debtor under Bankruptcy Code section 521 and Bankruptcy Rule 1007, as such items have been or may be modified, supplemented or amended.

      **1.93.** *"Secured Claim"* means a Claim against the Debtor secured by a Lien that is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, on or against property in which the Estate has an interest, or a Claim that is subject to setoff under Bankruptcy Code section 553, but only to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to Bankruptcy Code section 506(a) or, in the case of setoff, pursuant to Bankruptcy Code section 553, or in either case as agreed upon in writing by the Debtor and the Holder of such Claim. Secured Claims shall include Claims secured by Liens junior in priority to other Liens, whether by operation of law, contract, or otherwise, but solely to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property after giving effect to all Liens that are senior in priority. The amount of any Claim that exceeds the value of the Holder's interest in the Estate's interest in property or the amount subject to setoff shall be treated as a General Unsecured Claim or, if applicable, a Marriott Unsecured Claim.

      **1.94.** *"Secured Exit Loan"* means the loan(s) made by the Davidson Trust to the reorganized Debtor on and after the Effective Date up to the amount of approximately $26,455,650 (which amount includes the Allowed DIP Loan Claim), and which shall be secured by a subordinated Lien on all Collateral that secures the Wells Fargo Plan Note. The Secured Exit Loan shall comprise a portion of the Exit Funding.

      **1.95.** *"Secured Exit Loan Documents"* means, collectively, the secured promissory note, security agreement and any related documents evidencing the Secured Exit Loan and related Liens securing the Secured Exit Loan. The proposed forms of the Secured Exit Loan Documents shall be included in the Plan Supplement.

      **1.96.** *"Secured Tax Claim"* means a Claim by a governmental unit for the payment of a tax assessed against property of the Estate and that is secured as of the Effective Date by a Lien against such property, which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the property securing such Claim.

      **1.97.** *"Unclaimed Property"* means any Distribution under the Plan that, for a period of one year after the applicable Distribution Date (unless otherwise extended by an order of the Bankruptcy Court or an agreement with the Debtor), is either (a) attributable to the Holder of an Allowed Claim that has failed to prepare, execute and return an Internal Revenue Service Form W-9, (b) returned as undeliverable, or (c) otherwise unclaimed.

U.S. Bankruptcy Court - Hawaii #11-02371 Dkt # 1346 Filed 07/02/12 Page 15 of 49

**1.98.** *"Voting Record Date"* means the date approved by the Bankruptcy Court as of which a Person must be the Holder of a Claim or an Interest for purposes of voting on the Plan.

**1.99.** *"Wells Fargo"* means Wells Fargo Bank NA, as trustee for Nomura CRE CDO Grantor Trust, Series 2007-2.

**1.100.** *"Wells Fargo Plan Mortgage"* means the Mortgage, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing that the Debtor shall issue to Wells Fargo pursuant to Section 5.03(b) of the Plan. The proposed form of the Wells Fargo Plan Mortgage shall be included in the Plan Supplement.

**1.101.** *"Wells Fargo Plan Note"* means the secured promissory note, in the amount of $85,900,000, and such other and further documents that will be executed by the Debtor as of the Effective Date to implement the treatment of the Allowed Wells Fargo Secured Claim set forth in Section 5.03(b) of the Plan. The proposed form of the Wells Fargo Plan Note shall be included in the Plan Supplement.

**1.102.** *"Wells Fargo Prepetition Loan Documents"* means, collectively, (a) the Promissory Note, dated July 12, 2006, in the principal amount of $114,900,000, executed by the Debtor and made payable to Nomura Credit & Capital, Inc. (the "Wells Fargo Prepetition Note"), (b) the related Mortgage, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing, and (c) all ancillary documents relating thereto.

**1.103.** *"Wells Fargo Secured Claim"* means the Secured Claim held by Wells Fargo against the Debtor, which Wells Fargo stated in its proof of claim to be in the amount of $115,798,712.50 as of the Petition Date, inclusive of principal, interest (including but not limited to applicable default interest) and other applicable fees and charges.

## ARTICLE II
## UNCLASSIFIED CLAIMS

**2.01. Administrative Claims other than the DIP Loan Claim.**

      (a) **Time for Filing Administrative Claims.** The Holder of any Administrative Claim that is incurred, accrued or in existence prior to the Effective Date, other than (i) a Fee Claim, (ii) an Allowed Administrative Claim, (iii) the DIP Loan Claim, or (iv) a liability in the Ordinary Course of Business must file with the Bankruptcy Court and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim on or before thirty (30) days after the Effective Date. Such request must include at a minimum (i) the name of the Holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim. Failure to timely and properly file and serve the request required under this Section shall result in the Administrative Claim being forever barred and discharged. Objections to such requests must be filed and served pursuant to the Bankruptcy Rules on the requesting party and the Debtor within thirty (30) days after the filing of the applicable request for payment of an Administrative Claim.

      (b) **Time for Filing Fee Claims.** Any Person who holds or asserts an Administrative Claim that is a Fee Claim shall be required to file with the Bankruptcy Court and

serve on all parties required to receive such notice a Fee Application within ninety (90) days after the Effective Date. Failure to timely and properly file and serve a Fee Application as required under this Section shall result in the Fee Claim being forever barred and discharged. No Fee Claim will be deemed Allowed until an order allowing the Fee Claim becomes a Final Order. An objection to a Fee Application must be filed and served pursuant to the Bankruptcy Rules on the Debtor and the Person whose Fee Application is the subject of the objection no later than fourteen (14) days before the hearing on such Fee Application. No hearing may be held on less than twenty-eight (28) days' notice.

(c) **Allowance of Administrative Claims.** An Administrative Claim with respect to which a request for payment is required and has been properly filed pursuant to Section 2.01(a) of the Plan shall become an Allowed Administrative Claim if no timely objection is filed. If a timely objection is filed, the Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order. An Administrative Claim that is a Fee Claim, and with respect to which a Fee Application has been properly filed and served pursuant to Section 2.01(b) of the Plan, shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order after notice and an opportunity for hearing.

(d) **Payment of Allowed Administrative Claims.** Except to the extent that a Holder of an Allowed Administrative Claim has been paid prior to the Effective Date, or agrees to a different treatment, each Holder of an Allowed Administrative Claim (other than Allowed Administrative Claims incurred in the Ordinary Course of Business, which are paid pursuant to Section 2.01(e) below) shall receive, in full satisfaction, release and discharge of and exchange for such Administrative Claim, and after the application of any retainer or deposit held by such Holder, Cash from the Debtor equal to the Allowed amount of such Administrative Claim within ten (10) Business Days after the Allowance Date with respect to such Allowed Administrative Claim.

(e) **Administrative Claims Incurred in the Ordinary Course of Business.** Holders of Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtor after the Petition Date during the Bankruptcy Case (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes; Administrative Claims arising under Bankruptcy Code section 503(b)(9); or alleged Administrative Claims arising in tort) shall not be required to file any request for payment of such Claims. Each Administrative Claim incurred in the Ordinary Course of Business of the Debtor will be paid by the Debtor pursuant to the terms and conditions of the transaction giving rise to such Administrative Claim, without any further action by the Holder of such Administrative Claim. The Debtor reserves the right to object before the Objection Deadline to any Administrative Claim arising, or asserted as arising, in the Ordinary Course of Business, and shall withhold payment of such claim until such time as any objection is resolved pursuant to a settlement or a Final Order.

### 2.02. DIP Loan Claim.

The Allowed DIP Loan Claim shall be equal to the aggregate of all amounts due and owing by the Debtor as of the Effective Date pursuant to the DIP Loan Facility. The Allowed DIP Loan Claim shall be satisfied in full as follows: (a) $2.5 million of the Allowed DIP Loan

U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 1346  Filed  07/02/12  Page 17 of 49

Claim shall be satisfied from the Exit Capital Contribution and thus converted to New Senior Class 1 Units on account and to the extent thereof, and (b) the balance of the Allowed DIP Loan Claim shall be paid with funds provided by the Secured Exit Loan.

### 2.03. Priority Tax Claims.

Except to the extent that an Allowed Priority Tax Claim has been paid or otherwise satisfied prior to the Initial Distribution Date, each Holder of an Allowed Priority Tax Claim, in full satisfaction, release, settlement, and discharge of and exchange for such Claim, shall receive from the Debtor (a) deferred Cash payments over a period not exceeding five (5) years after the Petition Date in an aggregate principal amount equal to the Allowed amount of such Priority Tax Claim, plus interest, from the Petition Date through the date such Claim is paid in full, on the unpaid portion thereof at the rate of interest determined under applicable nonbankruptcy law as of the calendar month in which the Confirmation Date occurs, in equal annual installments with the first payment to be due on the later of (i) the Initial Distribution Date or (ii) five (5) Business Days after the date when a Priority Tax Claim becomes an Allowed Priority Tax Claim, and subsequent payments to be due on each anniversary of the Initial Distribution Date, or (b) such other less favorable treatment to which such Holder and the Debtor agree in writing. Notwithstanding the foregoing, (a) any Claim or demand for payment of a penalty (other than a penalty of the type specified in Bankruptcy Code section 507(a)(8)(G)) shall be Disallowed pursuant to the Plan and the Holder thereof shall not assess or attempt to collect such penalty from the Debtor or from any of its Assets, and (b) the Debtor shall have the right to pay any Allowed Priority Tax Claim, or any unpaid balance of such Claim, in full, at any time after the Effective Date, without premium or penalty.

### 2.04. U.S. Trustee Fees.

The Debtor shall timely pay to the United States Trustee all quarterly fees incurred by the Debtor pursuant to 28 U.S.C. § 1930(a)(6) until the Bankruptcy Case is closed or dismissed. The Debtor shall serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) after the Effective Date that the Bankruptcy Case remains open.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

### 3.01. Introduction.

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified.

Except for the unclassified Claims discussed in Article II above, Section 3.02 of the Plan sets forth a designation of Classes of all Claims and Interests in accordance with Bankruptcy Code section 1122(a). A Claim or Interest is classified in a particular Class only to the extent any portion of the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent any portion of the Claim or Interest qualifies within the description of that different Class. If a Claim or Interest is acquired or transferred, the Claim or

Interest shall be placed in the Class in which it would have been placed if it were owned by the original Holder of such Claim or Interest. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, satisfied or released before the Effective Date.

**3.02.   Claims Against and Interests in the Debtor.**

(a)      Class 1:  Non-Tax Priority Claims

(b)      Class 2:  Secured Tax Claims

(c)      Class 3:  Wells Fargo Secured Claim

(d)      Class 4:  R.D. Olson Secured Claim

(e)      Class 5:  Marriott Secured Claim

(f)      Class 6:  Davidson Trust Secured Claim

(g)      Class 7:  Miscellaneous Secured Claims

(h)      Class 8:  General Unsecured Claims

(i)      Class 9:  Aqua/Modern Claims

(j)      Class 10:  Marriott Unsecured Claim

(k)      Class 11:  Davidson Trust Unsecured Claim

(l)      Class 12:  Class C Interests in the Debtor

(m)      Class 13:  Class B Interests in the Debtor

(n)      Class 14:  Class A Interests in the Debtor

## ARTICLE IV
## IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS AND INTERESTS

**4.01.   Unimpaired Claims and Interests**

Claims against the Debtor in Classes 1, 2, 5, 7 and 8 are not impaired under the Plan, and the Holders of those Claims are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and are thus not entitled to vote on the Plan.

15

### 4.02. Impaired Claims and Interests

Claims against the Debtor in Classes 3, 4, 6, and 9-11 and Interests in the Debtor in Classes 12, 13 and 14 are impaired under the Plan, and the Holders of those Claims and Interests are entitled to vote to accept or reject the Plan.

### 4.03. Controversy Concerning Impairment

In the event of a controversy as to whether any Claim or Interest or any Class of Claims or Interests is impaired under the Plan, the Bankruptcy Court will determine the controversy, after notice and a hearing.

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS

### 5.01. Non-Tax Priority Claims – Class 1

On or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to a Non-Tax Priority Claim, each Holder of such Allowed Non-Tax Priority Claim shall receive from the Debtor, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Non-Tax Priority Claim, (y) Cash in an amount equal to the Allowed amount of its Non-Tax Priority Claim, including such interest as may be required by applicable law, or (z) such other, less favorable treatment to which such Holder and the Debtor agree in writing. To the extent an Allowed Non-Tax Priority Claim entitled to priority treatment under 11 U.S.C. §§ 507(a)(4) or (5) exceeds the statutory cap applicable to such Claim, such excess amount shall be treated as a Class 8 General Unsecured Claim against the Debtor.

### 5.02. Secured Tax Claims – Class 2

With respect to any Allowed Secured Tax Claim for tax years prior to 2012, to the extent not already paid or otherwise satisfied, on or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to a Secured Tax Claim, each Holder of an Allowed Secured Tax Claim shall receive from the Debtor in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Secured Tax Claim, (x) Cash equal to the Allowed Amount of its Allowed Secured Tax Claim, plus interest thereon at the rate provided under applicable non-bankruptcy law pursuant to section 511 of the Bankruptcy Code from the Petition Date through the date such Claim is paid in full, (y) the Collateral securing the Allowed Secured Tax Claim, or (z) such other, less favorable treatment as may be agreed upon in writing by such Holder and the Debtor.

The Holder of a Secured Tax Claim for ad valorem taxes for any tax year from 2012 and thereafter shall retain all rights and remedies for payment thereof in accordance with applicable non-bankruptcy law.

Each Holder of an Allowed Secured Tax Claim shall retain its Lien on any Collateral that secures its Claim or the proceeds of such Collateral (to the extent such Collateral is sold by the Debtor, free and clear of such Lien) to the same extent and with the same validity and priority as

16

such Lien held as of the Petition Date until (a) the Holder of such Allowed Secured Tax Claim (i) has been paid Cash equal to the value of its Allowed Secured Tax Claim and/or (ii) has received a return of the Collateral securing its Allowed Secured Tax Claim, or (iii) has been afforded such other treatment as to which such Holder and the Debtor have agreed upon in writing, or (b) such purported Lien has been determined by a Final Order to be invalid or avoidable. To the extent that a Secured Tax Claim exceeds the value of the interest of the Estate in the property that secured such Claim, such Claim shall be deemed Disallowed pursuant to Bankruptcy Code section 502(b)(3).

If the Debtor fails to timely make any payment to a Holder of an Allowed Secured Tax Claim as required under Section 5.02 of the Plan, the affected Holder of an Allowed Secured Tax Claim may send written notice of default to the Debtor. If the default is not cured within twenty-one (21) days after notice of default is mailed, such Holder may proceed with any remedies for collection of amounts due under applicable non-bankruptcy law without further order of the Bankruptcy Court.

### 5.03. Wells Fargo Secured Claim – Class 3

(a) **Allowance.** The Allowed amount of the Wells Fargo Secured Claim shall be equal to the aggregate of (1) $115,900,000, and (2) fees (including, without limitation reasonable attorneys' fees) and expenses of Wells Fargo from the Petition Date through the Effective Date in an amount not to exceed $1,200,000 (the "Postpetition Professional Fees"). Without limiting the foregoing, all interest included in the Allowed Wells Fargo Secured Claim shall be capitalized and added to the principal amount of the Wells Fargo Plan Note.

(b) **Treatment.** In full satisfaction, settlement, release and discharge of and in exchange for the Allowed Wells Fargo Secured Claim and all Liens securing such Claim, Wells Fargo shall receive the following:

(i) on the Effective Date, a Distribution of Cash from the Debtor in the amount of $30,000,000 (plus any additional amount that the Davidson Trust or its designee, in its sole discretion, may provide, all of which shall be provided by the Davidson Trust or its designee as part of the Exit Capital Contribution) (the "Paydown"), which Wells Fargo may elect to apply first to the components of the Allowed Wells Fargo Secured Claim that are attributable to unpaid interest, fees (including, without limitation reasonable attorneys' fees other than the Postpetition Professional Fees) and expenses included therein, determined pursuant to Section 5.03(a) above, and then to the principal component of the Allowed Wells Fargo Secured Claim;

(ii) within fifteen (15) days after the Effective Date, Wells Fargo shall deliver an invoice for the actual amount of the Postpetition Professional Fees to the Debtor, and the Debtor shall pay such invoice in full in Cash, not to exceed $1,200,000, within thirty (30) days after receipt; and

(iii) on the Effective Date, the Wells Fargo Plan Note (the principal amount of which shall be equal to the Allowed Wells Fargo Secured Claim minus the Paydown) and the Wells Fargo Plan Mortgage, which shall include the following terms, among others:

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 1346   Filed   07/02/12   Page 21 of 49

(A)    <u>Maturity Date</u>.  The maturity date of the Wells Fargo Plan Note shall be the fifth anniversary of the Effective Date ("<u>Maturity Date</u>").

(B)    <u>Interest</u>.  From the Effective Date through the Maturity Date, the interest rate on the Wells Fargo Plan Note shall be equal to a fixed rate of 6.5% per annum based on a 360-day year.

(C)    <u>Payments</u>.  From the Effective Date until the Maturity Date, only accrued interest shall be payable on the Wells Fargo Plan Note, and the Debtor shall pay such interest monthly in arrears.  All unpaid principal and interest on the Wells Fargo Plan Note shall become due and payable on the Maturity Date.  The Debtor shall be permitted to prepay any portion of the Wells Fargo Plan Note without penalty or premium.

(D)    <u>Interest Reserve</u>.  On the later of the Effective Date or the Allowance Date, the Debtor shall transfer an amount of Cash to Wells Fargo equal to the greater of (1) $5,000,000 (plus any additional amount that the Davidson Trust, in its sole discretion, may provide for this purpose as an increase in the Exit Funding), and (2) the sum of all interest payments that will be payable during the first year after the Effective Date, which Wells Fargo shall hold in an interest-bearing escrow account. The Interest Reserve shall be additional Collateral to secure payment of the Wells Fargo Plan Note and shall be used solely to pay accrued unpaid interest on the Wells Fargo Plan Note in the event of a payment default by the Debtor (after giving effect to a fifteen (15)-day cure period).  The balance of the Interest Reserve shall be released to the Debtor on the first Business Day of the month following the occurrence of the following conditions:  (1) the second anniversary of the Effective Date has occurred, (2) the Debtor has timely paid all monthly debt service payments required under the Wells Fargo Plan Note (after giving effect to a fifteen (15)-day grace period) in the immediately preceding twelve (12)-month period; and (3) the Debtor has maintained a debt service coverage ratio (as defined in the Wells Fargo Plan Note and/or the Wells Fargo Plan Mortgage) of at least 1.2 for the monthly payments due under the Wells Fargo Plan Note in the immediately preceding twelve (12)-month period.  The amount of the Interest Reserve remaining on Maturity Date, if any, shall be applied to the outstanding balance due on the Wells Fargo Plan Note.

(E)    <u>Application of Escrowed Funds</u>.  On the Effective Date, Wells Fargo shall (1) retain, or cause C-III Asset Management LLC ("<u>C-III</u>") to retain the $287,250 presently held by C-III for an unearned prepetition extension fee as closing fees; (2) pay to the applicable taxing authority from the amount of Cash held by C-III for such purposes any amount due and payable as of the Effective Date for ad valorem property taxes on the Hotel; and (3) transfer any remaining funds held by or on behalf of Wells Fargo or C-III in connection with the Debtor to the Interest Reserve, thereby reducing the amount to be provided for the Interest Reserve from the Exit Financing.

(F)    <u>Excess Cash</u>.  The Wells Fargo Plan Note and the Wells Fargo Plan Mortgage shall permit the Debtor to use any Cash in excess of the amount

U.S. Bankruptcy Court - Hawaii  #11-02371   Dkt # 1346   Filed  07/02/12   Page 22 of 49

required to make timely payments due on the Wells Fargo Plan Note for any business purpose, including paying Allowed Administrative Claims and Allowed Claims other than the Allowed Wells Fargo Secured Claim pursuant to the terms set forth in the Plan, and paying interest payments on the Exit Financing (subject to the limitations set forth in Section 6.03(c)(i) below), but excluding any Distributions to any Holder of the New Senior Equity with respect to such New Senior Equity.

(iv) <u>Release</u>. The Debtor shall release and waive any and all claims, if any, against Wells Fargo, its servicer, agents, affiliates, employees and attorneys arising out of or relating to the Wells Fargo Prepetition Loan Documents on or before the Effective Date.

### 5.04. R.D. Olson Secured Claim – Class 4

(a) **Allowance and Payment.** As a compromise and settlement of all disputes between R.D. Olson and the Debtor, as set forth in the Settlement Agreement between the Debtor and R.D. Olson dated January 5, 2012 and amended by that certain First Amendment to Settlement Agreement dated March 13, 2012 (as amended, the "<u>Olson Settlement Agreement</u>"), which was approved by the Bankruptcy Court pursuant to an order entered on April 27, 2012 (docket #966), the R.D. Olson Secured Claim shall be Allowed in the amount of $1,839,217.00. Pursuant to the Olson Settlement Agreement, in full satisfaction, settlement, release and discharge of and in exchange for the Allowed R.D. Olson Secured Claim, the Debtor shall pay the Holder of such Claim the amount of $1,431,298.00 (the "<u>Olson Settled Claim Amount</u>") in Cash on the Effective Date, without interest; provided that if the Effective Date and payment of the foregoing amount of Cash do not occur before June 1, 2012, then the Olson Settled Claim Amount shall bear interest at a rate of five percent (5.0%) per annum from June 1, 2011 until the Olson Settled Claim Amount is paid in full.

(b) **Incorporation of Settlement Agreement.** All of the terms set forth in the Olson Settlement Agreement, including without limitation, the Lien securing the Olson Settled Claim Amount and all other rights and obligations of the Debtor and R.D. Olson provided therein, are incorporated in the Plan as if fully recited herein and shall remain in full force and effect after the Effective Date without further order of the Bankruptcy Court.

### 5.05. Marriott Secured Claim – Class 5

(a) **Allowance.** The Allowed amount of the Marriott Secured Claim (the "<u>Allowed Marriott Secured Claim</u>") shall be agreed to in writing by the Proponents and Marriott.

(b) **Treatment.** In full satisfaction, settlement, release and discharge of and in exchange for the Allowed Marriott Secured Claim and all Liens securing such Claim, the Debtor shall deliver the Marriott Payment to Marriott on the Effective Date; provided, that if the Effective Date has not occurred by July 27, 2012, the Davidson Trust shall deliver the Marriott Payment to Marriott no later than July 30, 2012. As provided in Section 8.02(c), the payment of the Allowed Marriott Secured Claim shall be a condition for the occurrence of the Effective Date. Until Marriott has received the Marriott Payment, Marriott shall retain its Lien on the Collateral that secures the Allowed Marriott Secured Claim to the same extent and with the same validity and priority as such Lien held as of the Petition Date. Within thirty (30) days after the

Effective Date, the Debtor shall make available to Marriott all EDITION-branded materials comprising Marriott's Collateral at one location in Honolulu, Hawaii. Marriott shall, at its sole expense, take possession of such materials within thirty (30) days after the Debtor makes them available. If Marriott does not take possession of such materials within such period, the Debtor may retain or dispose of the materials as the Debtor deems appropriate and at its expense.

### 5.06. Davidson Trust Secured Claim – Class 6

(a) **Allowance.** The Davidson Trust Secured Claim shall be Allowed in the principal amount of $15,000,000, plus such accrued interest, late charges, attorneys' fees, and costs as provided for in the Davidson Trust Prepetition Loan Documents and as may be agreed to by the Debtor and the Davidson Trust or determined by the Bankruptcy Court.

(b) **Treatment.** In full satisfaction, settlement, release and discharge of and in exchange for the Allowed Davidson Trust Secured Claim and all Liens securing such Claim, on the Effective Date, the Davidson Trust or its designee shall receive a portion of the New Senior Class 1 Units in the reorganized Debtor, and all Liens securing the Allowed Davidson Trust Secured Claim shall be fully released and extinguished.

### 5.07. Miscellaneous Secured Claims – Class 7

(a) **Subclasses.** Class 7 shall contain a separate subclass for each Miscellaneous Secured Claim in such Class. Each such subclass is deemed to be a separate Class for all purposes under the Bankruptcy Code and the Plan.

(b) **Allowance.** The Allowed amount of each Miscellaneous Secured Claim shall be agreed to by the Debtor and the Holder thereof, or determined by the Bankruptcy Court.

(c) **Treatment and Collateral.** On or as soon as practicable after the later of (i) the Initial Distribution Date or (ii) the Allowance Date, each Holder of an Allowed Miscellaneous Secured Claim shall receive from the Debtor, in full satisfaction, settlement, release and discharge of and in exchange for such Claim, (x) Cash equal to the value of its Allowed Miscellaneous Secured Claim, (y) the Collateral securing the Allowed Miscellaneous Secured Claim, or (z) such other, less favorable treatment as to which such Holder and the Debtor agree in writing.

Each Holder of an Allowed Miscellaneous Secured Claim shall retain its Lien in the Collateral that secures its Claim or the proceeds of such Collateral (to the extent such Collateral is sold by the Debtor free and clear of such Lien) to the same extent and with the same validity and priority as such Lien held as of the Petition Date until (i) the Holder of such Allowed Miscellaneous Secured Claim has received (A) Cash equal to the value of its Allowed Miscellaneous Secured Claim, (B) a return of the Collateral securing its Allowed Miscellaneous Secured Claim, or (C) such other treatment as to which such Holder and the Debtor shall have agreed upon in writing, or (ii) such purported Lien has been determined by a Final Order to be invalid or avoidable.

20

If any Allowed Miscellaneous Secured Claim exceeds the value of the Collateral securing such Claim, then pursuant to Bankruptcy Code section 506(a), any such excess amount shall be deemed to be and shall be treated as a Class 8 General Unsecured Claim.

### 5.08.    General Unsecured Claims – Class 8

(a)    **Allowance.**  The Allowed amount of each General Unsecured Claim shall be agreed to by the Debtor and the Holder thereof, or determined by the Bankruptcy Court, and in either event shall include interest that matured as of the Petition Date at the rate, if any, specified in an enforceable agreement between the Debtor and the Holder of such Claim or such lesser amount as may be agreed by the Debtor and the Holder of such Claim.

(b)    **Treatment.**  On or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to a General Unsecured Claim, each Holder of such Allowed General Unsecured Claim shall receive from the Debtor, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed General Unsecured Claim, (y) a payment of Cash in an amount equal to the Allowed amount of its General Unsecured Claim, plus interest thereon from the Petition Date through the Effective Date at the federal judgment rate in effect on the Petition Date (the "Initial Payment") or (if Allowed pursuant to the procedures in the following paragraph)  at such higher rate, if any, specified in an enforceable agreement between the Debtor and the Holder of such Claim, or (z) such other, less favorable treatment to which such Holder and the Debtor agree in writing.

With each Initial Payment of an Allowed General Unsecured Claim made by the Debtor pursuant to the preceding paragraph, the Debtor shall include a notice (a "Payment Notice") to the Holder thereof that if such Holder contends that it is entitled to receive payment of interest before the Petition Date pursuant to Section 5.07(a) and/or from the Petition Date through the Effective Date pursuant to Section 5.07(b) at a rate provided in an enforceable agreement with the Debtor, such Holder must send a notice (an "Additional Interest Notice") to the Debtor (at the address specified in Section 13.01 below), no later than thirty (30) days after the date of the Payment Notice, which notice shall include (1) a copy of the relevant agreement(s) and the applicable interest rate asserted by such Holder, (2) a statement of the time period during which the Holder contends such interest rate accrued, and (3) a detailed calculation of how much additional interest is claimed in excess of the interest amount paid in the Initial Payment.  Any Holder of an Allowed General Unsecured Claim that fails to send a timely Additional Interest Notice to the Debtor shall be deemed to have waived any claim for additional interest and shall not receive any additional payment on account of its Allowed General Unsecured Claim.  If the Debtor disputes the interest rate or amount of additional interest asserted in an Additional Interest Notice, the Debtor may file an objection with the Bankruptcy Court within thirty (30) days after the Debtor's receipt of the Additional Notice Interest.  Any dispute regarding the rate or amount of interest, if any, requested by the Holder of an Allowed General Unsecured Claim pursuant to a timely Additional Interest Notice shall be resolved by a Final Order of the Bankruptcy Court.

The Debtor shall not sell the Hotel before all Allowed General Unsecured Claims have been paid in full as provided herein, unless any remaining amount due for such Allowed General Unsecured Claims as of the closing of such sale is paid to the Holders thereof at such closing.

U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 1346  Filed  07/02/12  Page 25 of 49

Subject to the limitations set forth in Section 5.03, the Debtor may prepay part or all of any remaining balance of any Allowed General Unsecured Claim at any time.

### 5.09. Aqua/Modern Claims – Class 9

(a) **Allowance.** The Allowed amount of each Aqua/Modern Claim shall be agreed to by the Debtor and the Holder thereof, or determined by the Bankruptcy Court.

(b) **Treatment**.

(i) <u>Operating Fees/Reimbursable Expenses.</u> To the extent the Allowed Aqua/Modern Claim constitutes an Operating Fee or a Reimbursable Cost, as such terms are defined in the Modern Management Agreement, the Debtor shall pay such Allowed Aqua/Modern Claim in cash, in full as soon as practicable after the later of the Initial Distribution Date or the Allowance Date.

(ii) <u>Indemnification.</u> To the extent the Allowed Aqua/Modern Claim constitutes an Allowed Claim for indemnification to which Aqua/Modern is entitled under Sections 6.2 and 6.3 of the Modern Management Agreement (the "<u>Aqua/Modern Indemnity Claim</u>"), the Debtor shall pay or otherwise satisfy the Aqua/Modern Indemnity Claim in full, as follows:

(A) to the extent the Aqua/Modern Indemnity Claim is for reasonable attorneys' fees or expenses that were incurred on or before the Effective Date and are not paid or reimbursed by insurance, the Debtor shall pay such reasonable attorneys' fees or expenses in full as they become due and payable, in an amount not to exceed $150,000 per quarter, and any excess shall be paid on the first anniversary of the last such quarterly payment; and

(B) to the extent the Aqua/Modern Indemnity Claim is for damages that are not paid or reimbursed by insurance and are unrelated to claims or causes of action asserted by Marriott against Aqua/Modern, if any, then the Debtor shall pay such Claim in full after the Allowance Date as follows: either (y) within thirty (30) days after the Allowance Date if the amount is equal to or less than $1,000,000; or (z) if the amount is greater than $1,000,000, then in annual installments in the amount of $500,000 each, the first of which shall be payable no later than thirty (30) days after the Allowance Date and each remaining installment shall be payable on each anniversary of the Allowance Date thereafter until such amount is paid in full, provided that if any portion of such Aqua/Modern Indemnity Claim remains unpaid on the fifteenth (15th) anniversary of the Effective Date, such unpaid portion shall be paid in full on such anniversary.

(iii) For the avoidance of doubt, from and after the Effective Date, the Debtor shall have no liability to Aqua/Modern, under the Modern Management Agreement or otherwise, for any attorneys' fees or expenses incurred by Aqua/Modern after the Effective Date that arise from or relate to claims or causes of action asserted by Marriott against Aqua/Modern, or claims or causes of action asserted by Aqua/Modern against Marriott.

22

(iv)    The Debtor shall not sell the Hotel before all payments have been made on the Allowed Aqua/Modern Management Claims as provided herein, unless any remaining amount due for such Allowed Aqua/Modern Management Claims as of the closing of such sale is paid to the Holder thereof at such closing.  Subject to the limitations set forth in Section 5.03, the Debtor may prepay part or all of any remaining balance of the Allowed Aqua/Modern Management Claims at any time.

### 5.10.   Marriott Unsecured Claim – Class 10

(a)    **Allowance.**  The Allowed amount of the Marriott Unsecured Claim (the "Allowed Marriott Unsecured Claim") shall be agreed to in writing by the Proponents and Marriott.

(b)    **Treatment.**  In full satisfaction, settlement, release and discharge of and in exchange for the Allowed Marriott Unsecured Claim, the Debtor shall deliver the Marriott Payment to Marriott on the Effective Date; provided, that if the Effective Date has not occurred by July 27, 2012, the Davidson Trust shall deliver the Marriott Payment to Marriott no later than July 30, 2012.  As provided in Section 8.02(c), the payment of the Allowed Marriott Unsecured Claim shall be a condition for the occurrence of the Effective Date.

(c)    **Mutual Releases.**  On the Marriott Payment Date:

(i)    the Proponents, eRealty Fund, LLC, and McKinney Advisory Group shall each execute and deliver to Marriott a general release of any and all claims, if any, by each such party against Marriott and its respective managers, agents, affiliates, employees and attorneys (the "Marriott Parties"), including but not limited to claims arising out of or relating to the Debtor, the Hotel, the Management Agreement, the TSA Agreement, the SNDA Agreement, or the Davidson Trust's equity interests in the Debtor on or before the Effective Date, except that such releasing parties shall not release and shall not be deemed to have released any of the Marriott Parties that do not execute and deliver a reciprocal release of claims against the Proponents, eRealty Fund, LLC, and McKinney Advisory Group and their respective managers, agents, affiliates, employees and attorneys (the "Proponent Parties"); and

(ii)    Marriott shall execute and deliver to the Proponents, eRealty Fund, LLC, and McKinney Advisory Group a general release of any and all claims, if any, by each of the Marriott Parties against the Proponent Parties, including but not limited to claims arising out of or relating to the Debtor, the Hotel, the Marriott Management Agreement, the TSA, the SNDA Agreements, or the Davidson Trust's equity interests in the Debtor on or before the Effective Date, except that the Marriott Parties shall not release and shall not be deemed to have released any of the Proponent Parties that do not execute and deliver a reciprocal release of claims against the Marriott Parties.

(d)    **Dismissal of Litigation.**  Within ten (10) Business Days after the Marriott Payment Date, the Debtor and Marriott shall file a stipulation to dismiss with prejudice all claims, counterclaims, and causes of action asserted against each other in the litigation currently pending in the United States District Court for the Southern District of New York, styled *M Waikiki LLC v. Marriott Hotel Services, Inc. et al.*, 11 Civ. 06488 (BSJ) (MHD).

### 5.11. Davidson Trust Unsecured Claim – Class 11

(a) **Allowance.** The Allowed amount of the Davidson Trust Unsecured Claim shall be $845,000.

(b) **Treatment.** In full satisfaction, settlement, release and discharge of and in exchange for the Allowed Davidson Trust Unsecured Claim, on the Effective Date, the Davidson Trust or its designee shall receive a portion of the New Senior Class 1 Units in the reorganized Debtor.

### 5.12. Class C Interest in the Debtor – Class 12

From and after the Effective Date, the Holder of the Class C Interest in the Debtor, or its designee, shall retain such Class C Interest, which shall be governed by the New Operating Agreement. Distributions, if any, on the Class C Interest shall be subordinate to a return of capital and a preferred return payable to the Holders of the New Senior Equity on the terms provided in the New Operating Agreement. Unless and until all Distributions required by the terms of the Plan on account of Allowed Claims have been paid in full, no distribution of any kind shall be made on account of the Class C Interest, and the New Operating Agreement shall so provide.

### 5.13. Class B Interest in the Debtor – Class 13

From and after the Effective Date, the Holder of the Class B Interest in the Debtor, or its designee, shall retain such Class B Interest, which shall be governed by the New Operating Agreement. Distributions, if any, on the Class B Interest shall be subordinate to a return of capital and a preferred return payable to the Holders of the New Senior Equity on the terms provided in the New Operating Agreement. Unless and until all Distributions required by the terms of the Plan on account of Allowed Claims have been paid in full, no distribution of any kind shall be made on account of the Class B Interest, and the New Operating Agreement shall so provide.

### 5.14. Class A Interest in the Debtor – Class 14

From and after the Effective Date, the Holder of the Class A Interest in the Debtor, or its designee, shall retain such Class A Interest, which shall be governed by the New Operating Agreement. Distributions, if any, on the Class A Interest shall be subordinate to a return of capital and a preferred return payable to the Holders of the New Senior Equity on the terms provided in the New Operating Agreement. Unless and until all Distributions required by the terms of the Plan on account of Allowed Claims have been paid in full, no distribution of any kind shall be made on account of the Class A Interest, and the New Operating Agreement shall so provide.

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 1346   Filed  07/02/12   Page 28 of 49

# ARTICLE VI
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN

### 6.01.  Distributions; Sources of Cash for Plan Distributions

The Debtor will make all Distributions required under the Plan, subject to the provisions of the Plan.  The sources of Cash necessary for the Debtor to pay Allowed Claims that are to be paid in Cash by the Debtor under the Plan will be:  (a) the Cash of the Debtor on hand as of the Effective Date; (b) Cash arising from the operation, ownership, maintenance, and/or sale of the Hotel and other Assets owned, managed, and/or serviced by or at the direction of the Debtor on or after the Effective Date; (c) Cash in the approximate amount of $53,055,650 (composed of the cash component of the Exit Capital Contribution in the approximate amount of $33,200,000 plus a portion of the Secured Exit Loan in the approximate amount of $19,855,650) plus the Marriott Payment, to be provided by the Davidson Trust on the Effective Date and, if applicable, the Marriott Payment Date, which shall be used to pay, *inter alia*, the Olson Settled Claim Amount, Allowed Administrative Claims (including the Allowed DIP Loan Claim, except for $2.5 million thereof that will be deemed satisfied by the Exit Capital Contribution), Allowed Priority Tax Claims, Allowed Miscellaneous Secured Claims, Allowed General Unsecured Claims, the sums payable to Wells Fargo pursuant to Sections 5.03(b)(i) and (ii) of the Plan, the Allowed Marriott Secured Claim and the Allowed Marriott Unsecured Claim, and (d) any Cash generated or received by the Debtor on or after the Effective Date from any other source, including, without limitation, any recoveries from the prosecution of all Causes of Action.

### 6.02.  Debtor's Management and Operations Post-Effective Date

From and after the Effective Date, the Debtor shall retain title, ownership, possession, and control over the management of the Hotel and all other Assets in its Estate, pursuant to the New Operating Agreement, a copy of which shall be included in the Plan Supplement. From and after the Effective Date, Aqua/Modern shall continue to manage the Hotel pursuant to a modified and assumed management agreement.  From and after the Effective Date, the Manager (as defined in the New Operating Agreement) of the Debtor shall be McKinney Advisory Group, Inc., acting through Damian McKinney, or such other entity as is determined pursuant to the New Operating Agreement.

### 6.03.  Exit Funding

(a)  **Amount; Uses.**  On the Effective Date (and, if applicable, the Marriott Payment Date), the Davidson Trust and its designee(s) shall fund the necessary portion of the Exit Funding, in the approximate amount of $55,555,650 plus the Marriott Payment, and the Debtor shall execute the Secured Exit Loan Documents and the New Operating Agreement. The Debtor shall use the Exit Funding to pay certain Allowed Claims pursuant to the terms of the Plan.  Pursuant to the Secured Exit Loan and the Secured Exit Loan Documents, additional funding in the approximate amount of $6.6 million shall be available to the Debtor after the Effective Date, as needed, to fund reserves or payments for working capital.

(b)  **Exit Capital Contribution.**  On the Effective Date and, if applicable, the Marriott Payment Date, the Davidson Trust or its designee(s) shall make the Exit Capital

Contribution to the Debtor, and in exchange therefor, the Davidson Trust or its designee(s) shall receive, on the Effective Date, a portion of the New Senior Class 1 Units in the reorganized Debtor.

(c)     **Secured Exit Loan.**  On the Effective Date, the Davidson Trust shall fund the necessary portion of the Secured Exit Loan in the approximate amount of $19,855,650, and the Davidson Trust shall receive the Secured Exit Loan Documents from the Debtor, which shall include the following terms, among others

(i)     Interest.  From the Effective Date until the Secured Exit Loan is paid in full, interest shall accrue on the principal amount thereof at a rate per annum that is the higher of (A) two percent (2%) or (B) the minimum rate required by the IRS to avoid imputation of interest income.  The Debtor shall pay annual interest payments on January 15 of each year, commencing with January 15, 2016, provided only that (A) the Debtor is then current on any payments due and owing on the Wells Fargo Plan Note, and (B) the Debtor has maintained a debt service coverage ratio (as defined in the Wells Fargo Plan Note and/or the Wells Fargo Plan Mortgage) of at least 1.2 for the monthly payments due under the Wells Fargo Plan Note during the immediately preceding twelve (12)-month period.

(ii)     Principal.  The principal amount of the Secured Exit Loan shall become due and payable only upon the earliest of (A) the fifteen (15) year anniversary of the Effective Date, (B) the date on which the Hotel is sold, assigned or transferred; (C) the occurrence of an event of default under the Secured Exit Loan Documents; and (D) the first date on or after the five (5) year anniversary of the Effective Date on which all Allowed Claims have been paid in full.  The Secured Exit Loan shall be subordinate to the payment in full of all sums then due under the Wells Fargo Plan Note.

(iii)     Collateral.  The Secured Exit Loan shall be secured by a Lien upon all of the collateral that secures the Wells Fargo Plan Note, but such Lien shall in all events be junior to the Lien on such collateral that secures the Wells Fargo Plan Note.

(iv)     Remedies.  The Secured Exit Loan Documents shall prohibit the Davidson Trust from exercising any remedies (other than the declaration of an event of default) with respect to the Secured Exit Loan upon the occurrence of an event of default under the Secured Exit Loan Documents so long as any portion of the Wells Fargo Plan Note remains unpaid.

**6.04.   Issuance of and Distributions on New Senior Equity**

On the Effective Date, in return for the contributions described in Sections 5.06(b), 5.11(b) and 6.03(b) of the Plan, the Davidson Trust or its designee shall receive 100% of the New Senior Class 1 Units.  On the Effective Date, the Manager shall receive 100% of the New Senior Class 2 Units.  Unless and until all Distributions required by the terms of the Plan on account of Allowed Claims have been paid in full, no distribution of any kind shall be made on account of any New Senior Equity, and the New Operating Agreement shall so provide.

U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 1346  Filed  07/02/12  Page 30 of 49

### 6.05. Duties of the Creditors' Committee

The duties of the Creditors' Committee and its Professionals will terminate on the later of: (a) completion of performance of those actions required to be executed on or about the Effective Date; and (b) resolution of any Fee Applications filed or objected to by the Creditors' Committee or its Professionals. Upon the termination of the duties of the Creditors' Committee and its Professionals, the Creditors' Committee will be dissolved and its members will be deemed released by the Debtor from (y) all their duties, responsibilities and obligations in connection with the Bankruptcy Case, and (z) all claims and Causes of Action relating to or arising directly or indirectly from services performed. Upon the dissolution of the Creditors' Committee, no notice to the Creditors' Committee that might otherwise be required pursuant to an order of the Bankruptcy Court shall be required.

### ARTICLE VII
### TREATMENT OF EXECUTORY CONTRACTS

### 7.01. General Treatment of Executory Contracts: Rejected

The Plan constitutes and incorporates a motion under Bankruptcy Code sections 365 and 1123(b)(2) to (a) reject, as of the Effective Date, all Executory Contracts to which the Debtor is a party, except for any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and (b) assume all Executory Contracts identified in the Schedule of Assumed Contracts that will be included in the Plan Supplement. The Prepetition Operating Agreement shall be amended and modified as provided in the New Operating Agreement, and as so amended and modified, shall be assumed and included in the Schedule of Assumed Contracts; provided, that no Cure Amount shall be Allowed with respect to the assumption of the Prepetition Operating Agreement.

For the avoidance of doubt, the Marriott Management Agreement, the related Design and Technical Services and Pre-Opening Agreement (the "TSA") and the Subordination, Non-Disturbance, and Attornment Agreement (the "SNDA") by and between the Debtor and Marriott, to the extent not previously terminated, shall terminate upon the Marriott Payment Date, at which time the Debtor and Marriott shall be released from any and all obligations under those agreements. Further, notwithstanding Section 7.03 below regarding rejection claims, Marriott shall waive and shall not file any claim arising from or related to the termination of the Marriott Management Agreement, the TSA or the SNDA.

The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b)(2) approving the rejection or assumption, as applicable, of Executory Contracts pursuant to the Plan as of the Effective Date. Notice of the Confirmation Hearing shall constitute notice to any non-debtor party to an Executory Contract that is to be assumed or rejected under the Plan of the proposed assumption or rejection of such Executory Contract and any proposed Cure Amount.

U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 1346  Filed  07/02/12  Page 31 of 49

### 7.02. Cure Payments and Release of Liability

Except as otherwise provided in a Final Order, pursuant to Bankruptcy Code sections 365(a), (b), (c) and (f), all Cure Amounts that may require payment under Bankruptcy Code section 365(b)(1) under any Executory Contract that is assumed pursuant to a Final Order of the Bankruptcy Court (which may be the Confirmation Order) shall be paid by the Debtor within fifteen (15) Business Days after such order becomes a Final Order with respect to undisputed Cure Amounts or within fifteen (15) Business Days after a Disputed Cure Amount is Allowed by agreement of the parties or a Final Order. If a party to an assumed Executory Contract has not filed an appropriate pleading on or before the date of the Confirmation Hearing disputing any proposed Cure Amount, the cure of any other defaults, the promptness of the Cure Amount payments, or the provisions of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters. Any party to an assumed Executory Contract that receives full payment of a Cure Amount shall waive the right to receive any payment on a Class 8 General Unsecured Claim that relates to or arises out of such assumed Executory Contract. Notwithstanding the foregoing, the Debtor may, in its sole discretion, file a motion to reject any Executory Contract as to which a Cure Claim is established by an order of the Bankruptcy Court, and any such motion shall be filed no later than five (5) Business Days after the order of the Bankruptcy Court allowing such Cure Claim becomes a Final Order.

### 7.03. Bar to Rejection Claims

If the rejection of an Executory Contract pursuant to Section 7.01 or 7.02 of the Plan gives rise to a Claim by any non-Debtor party or parties to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Estate, or the agents, successors, or assigns of the foregoing, unless a proof of such Claim is filed with the Bankruptcy Court and served upon the Debtor on or before the Rejection Bar Date. Any Holder of a Claim arising out of the rejection of an Executory Contract that fails to file a proof of such Claim on or before the Rejection Bar Date shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtor, the Estate or any of their Assets. Nothing contained herein shall extend the time for filing a proof of Claim for rejection of any Executory Contract rejected before the Confirmation Date.

### 7.04. Rejection Claims

Any Rejection Claim arising from the rejection of an Executory Contract shall be treated as a General Unsecured Claim pursuant to the Plan, except as limited by the provisions of Bankruptcy Code sections 502(b)(6) and 502(b)(7) and mitigation requirements under applicable law. Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Rejection Claim or shall be deemed a waiver by the Debtor or any other party in interest of any objections to such Rejection Claim if asserted.

## ARTICLE VIII
## CONDITIONS TO CONFIRMATION DATE AND EFFECTIVE DATE;
## EFFECT OF PLAN CONFIRMATION

### 8.01. Conditions Precedent to Confirmation Date

The occurrence of the Confirmation Date of the Plan is subject to satisfaction or waiver by the Proponents of each of the following conditions:

(a) The Bankruptcy Court shall have entered a Final Order, in form and substance acceptable to the Proponents, approving the Disclosure Statement;

(b) The proposed Confirmation Order shall be in form and substance acceptable to the Proponents; and

(c) All of the schedules, documents, supplements and exhibits to the Plan, including the Escrow Agreement, shall have been filed in form and substance acceptable to the Proponents.

### 8.02. Conditions Precedent to the Effective Date

The occurrence of the Effective Date of the Plan is subject to the occurrence or waiver by each of the Proponents of each of the following conditions precedent:

(a) The Confirmation Order shall have become a Final Order in form and substance acceptable to the Proponents;

(b) All documents constituting the Plan Supplement shall be in form and substance acceptable to the Proponents and shall have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents shall have been satisfied or waived as provided therein; and

(c) The Allowed Marriott Secured Claim and the Allowed Marriott Unsecured Claim shall have been paid in full as provided in Sections 5.05 and 5.10, respectively.

The Proponents may waive any of the foregoing conditions to the Effective Date (except for the condition stated in Section 8.02(c), which shall in no event be waivable), in whole or in part, without notice to any other parties in interest or the Bankruptcy Court, without any hearing or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Without limiting the foregoing, the Effective Date may occur notwithstanding the pendency of an appeal of the Confirmation Order so long as there is no stay in effect, if the Proponents so elect in writing. The Effective Date may occur before the expiration of time to take an appeal or to seek reconsideration of the Confirmation Order without the giving of any notice to any objecting party, if the Proponents so elect in writing. In the event of any such appeal, the Proponents or any other party in interest may seek the dismissal of such appeal on any grounds. The failure of the Proponents to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time. The Debtor will file with the Bankruptcy Court, and serve

29

a copy on all parties in interest, a notice of the Effective Date within five (5) Business Days after its occurrence.

### 8.03. Consequences of Non-Occurrence of Effective Date

If the Effective Date does not timely occur, the Proponents reserve all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated and/or that the Plan be null and void in all respects. If the Bankruptcy Court enters an order vacating the Confirmation Order, the time within which the Debtor may assume and assign, or reject, all Executory Contracts not previously assumed, assumed and assigned, or rejected shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated or as further extended by the Bankruptcy Court.

## <u>ARTICLE IX</u>
## EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE

### 9.01. Binding Effect

From and after the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, all former, present and future Holders of Claims and Interests, and their respective successors and assigns, and all other parties in interest in the Bankruptcy Case. Confirmation of the Plan binds each Holder of a Claim or an Interest to the terms and conditions of the Plan, whether or not such Holder has accepted the Plan.

### 9.02. Vesting of Assets

Except as otherwise provided in this Plan and the Confirmation Order, all property and Assets of the Debtor shall vest in the Debtor, as reorganized under and in accordance with the terms of the Plan, free and clear of all Claims, Interests, Liens, encumbrances, charges and other interests. To the extent any unrecorded Liens against or ownership interests (including, without limitation, tenancy in common interests[1]) in any such Assets exist or are asserted by third parties, such Liens and interests shall be voided and transferred to the Debtor as of the Effective Date. Commencing on the Effective Date, the Debtor may deal with the Assets and its property and conduct its business without any supervision by, or permission from, the Bankruptcy Court or the Office of the United States Trustee, and free of any restriction imposed on the Debtor by the Bankruptcy Code or by the Bankruptcy Court during the Bankruptcy Case, other than any restrictions contained in the Plan, the Confirmation Order, and related documents.

### 9.03. Assertion of Causes of Action, Defenses and Counterclaims

Except as set forth in the Plan (including Sections 5.10(c) and (d), which provides for the release by the Debtor of any and all Causes of Action against the Marriott Parties, as defined

---

[1] In January 2007, Debtor executed a warranty deed (the "TIC Deed") for a tenancy in common interest in the Hotel in favor of MCK Hotel LLC, a Hawaii limited liability company ("MCK Hotel"), a Class A Interest holder and company owned and controlled by eRealty Fund, LLC a California limited liability company, the manager of the Debtor. The TIC Deed was never recorded. For avoidance of doubt, MCK Hotel has executed a quitclaim deed in favor of the Debtor dated March 6, 2012, quitclaiming any interest in the Hotel.

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 1346   Filed  07/02/12   Page 34 of 49

therein, and the dismissal of related litigation) or the Confirmation Order, effective as of the Effective Date without further action by any party, all Causes of Action, and all defenses, counterclaims, setoffs and rights related thereto, shall be and shall be deemed to be retained by the Debtor, as reorganized under the terms of the Plan. From and after the Effective Date, the Debtor shall have the exclusive right to prosecute, settle, or compromise any Cause of Action retained by it under the Plan. The Debtor shall retain and may prosecute and enforce all other defenses, counterclaims, and rights that it has asserted or could assert against or with respect to all Claims asserted against the Debtor or property of its Estate. No claim, right, Cause of Action, or other Asset shall be deemed waived or otherwise forfeited by virtue of the Debtor's failure to identify such property in the Schedules or the Disclosure Statement unless otherwise ordered by the Bankruptcy Court. A description of the Causes of Action or potential Causes of Action is contained in Section VII.B of the Disclosure Statement.

Except as provided in the Plan (including Sections 5.10(c) and (d)), nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtor may have under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or Claim for setoff that seeks affirmative relief against the Debtor or its Assets, officers, directors, or representatives and (ii) the turnover of any property of the Debtor's Estate.

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan. The Debtor shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtor had immediately prior to the Petition Date fully as if the Bankruptcy Case had not been commenced, and all of the Debtor's legal and equitable rights respecting any Claim left unimpaired by the Plan may be asserted after the Confirmation Date by the Debtor to the same extent as if the Bankruptcy Case had not been commenced.

### 9.04. Discharge of Debtor

Except as provided in the Bankruptcy Code, the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against and Interests in the Debtor of any nature whatsoever, whether known or unknown, or against the Assets of the Debtor that arose before the Effective Date. Except as provided in the Bankruptcy Code, the Plan or the Confirmation Order, upon the Effective Date, entry of the Confirmation Order acts as a discharge and release under Bankruptcy Code section 1141(d)(1)(A) of all Claims against and Interests in the Debtor and its Assets, arising at any time before the Effective Date, regardless of whether a proof of Claim or Interest was filed, whether the Claim or Interest is Allowed, or whether the Holder of the Claim or Interest votes to accept the Plan or is entitled to receive a Distribution under the Plan. Except as provided in the Plan or the Confirmation Order, upon the Effective Date, any Holder of a discharged Claim or Interest will be precluded from asserting against the Debtor or any Assets of the Debtor any other or further Claim or Interest based on any document,

31

instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Effective Date. Except as provided in the Plan or the Confirmation Order, and subject to the occurrence of the Effective Date, the Confirmation Order will be a judicial determination of discharge of all liabilities of the Debtor to the extent allowed under Bankruptcy Code section 1141, and the Debtor will not be liable for any Claims or Interests and will only have the obligations as are specifically provided for in the Plan.

### 9.05. Exculpation

*The Proponents and any of their respective present or former principals, agents, members, officers, directors, employees, representatives, successors, and assigns, shall not have or incur any liability or obligation, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise, to any Holder of a Claim or Interest or any other Person for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtor, the Estate, the administration of the Bankruptcy Case, the operation of the Debtor's business during the Bankruptcy Case, the formulation, negotiation, preparation, filing, dissemination, approval, or confirmation of the Plan, the Disclosure Statement, the solicitation of votes for or confirmation of the Plan, the consummation or administration of the Plan, or the property to be distributed under the Plan, except for (a) their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction and (b) direct contractual claims (if any) unrelated to this Plan against non-Debtor parties. The foregoing parties will be entitled to rely reasonably upon the advice of counsel in all respects regarding their duties and responsibilities under the Plan.*

### 9.06. Settlement and Release

*In consideration of the Exit Funding to the Debtor and the related funding of the Plan and the voluntary subordination of the Davidson Trust Secured Claim and the Davidson Trust Unsecured Claim to the Allowed General Unsecured Claims, the Allowed Aqua/Modern Claims, and the Allowed Marriott Unsecured Claim, any and all Causes of Action held by or assertable on behalf of the Debtor, and any causes of action that are derivative of the Debtor's rights, in any way relating to the Debtor, the Davidson Trust Secured Claim, the Davidson Trust Unsecured Claim, the Bankruptcy Case, the Plan, negotiations regarding or concerning the Plan, or the ownership, management and operations of the Debtor against the Davidson Trust, its Professionals, or any of their respective present or former principals, agents, members, officers, directors, employees, advisors, representatives, trustors, trustees, beneficiaries, successors, and assigns (the "Releasees") shall be deemed settled and released as of the Effective Date, and the Releasees shall not have or incur any liability or obligation, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, and in law, equity, or otherwise, to the Debtor or its Estate (or, derivatively of the Debtor, to any Holder of a Claim or Interest or any other Person) for any act or omission originating or occurring before or after the Petition Date in connection with, relating to, or arising out of the Debtor.*

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 1346   Filed  07/02/12   Page 36 of 49

### 9.07. Injunction

*Except as otherwise provided in the Plan, the Confirmation Order shall provide that from and after the Effective Date, all Holders of Claims against and Interests in the Debtor are permanently enjoined from taking any of the following actions against the Debtor or any of its Assets on account of any such Claim or Interest: (a) commencing or continuing in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance or Lien; (d) asserting a setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; and (e) commencing or continuing, in any manner or in any place, any action that does not conform to or comply with, or is inconsistent with, the provisions of the Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan or the Confirmation Order. If allowed by the Bankruptcy Court, any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.*

### 9.08. Term of Bankruptcy Injunction or Stays

Unless otherwise provided herein or an order of the Bankruptcy Court (including without limitation the Confirmation Order), all injunctions or stays provided in the Bankruptcy Case under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Upon the Effective Date, the injunction provided in Section 9.07 of the Plan shall be effective.

### 9.09. Effectuating Documents; Further Transactions; Timing

The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously, unless otherwise provided in the Plan.

## <u>ARTICLE X</u>
## OBJECTIONS TO CLAIMS AND INTERESTS; DISTRIBUTIONS

### 10.01. Objections to Claims and Interests

After the Effective Date, the Debtor (and no other Person) may file objections to Claims and Interests (other than Claims that have been previously Allowed or that are Allowed under the Plan). The Debtor (or their designees, successors and assigns) is not obligated to object to any Claim or Interest, but will nevertheless have standing to object to any such Claim or Interest from and after the Effective Date, if it so elects.

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 1346   Filed  07/02/12   Page 37 of 49

### 10.02. Objection Deadline

Except as set forth in Sections 2.01(a) and 2.01(b) of the Plan with respect to Administrative Claims and Fee Claims, any objections to Claims and Interests must be filed no later than the Objection Deadline. An objection to a Claim or Interest will be deemed properly served on the Holder thereof if service is effected by any of the following methods: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Holder is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or Interest or other representative identified on the proof of Claim or Interest or any attachment thereto; (c) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of the Holder in the Bankruptcy Case; or (d) if no proof of Claim or Interest has been filed, by first class mail, postage prepaid, on the Holder of such Claim or Interest at the address set forth in the Schedules.

### 10.03. Settlement of Objections to Claims or Interests

From and after the Effective Date, the Debtor is authorized to approve compromises of all Claims or Interests, Disputed Claims or Interests, and Liens pursuant to Bankruptcy Rule 9019(b) and to execute necessary documents, including Lien releases (subject to the written consent of the party having such Lien) and stipulations of settlement, compromise or release, without further order of the Bankruptcy Court or notice to any party.

### 10.04. No Interest on Claims

Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim for the period from the Petition Date to the date a Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

### 10.05. Setoffs by the Debtor; No Waiver

(a)     The Debtor may but shall not be required to, set off against or recoup from any Claim or Interest or any payment or Distribution to be made pursuant to the Plan in respect of such Claim or Interest, any Claim or Cause of Action of any nature whatsoever that the Debtor may have to the fullest extent permitted under applicable law. Any dispute related to the setoff or recoupment rights of the Debtor shall be determined by the Bankruptcy Court. Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claims or Causes of Action that it may have against such Holder or any affiliate of such Holder.

### 10.06. Procedures for Treating and Resolving Disputed and Contingent Claims

(a)     **No Distributions Pending Allowance.** Notwithstanding any other provision of the Plan, the Debtor shall make Distributions only to Holders of Allowed Claims and Interests, or to their designees as provided herein. No Holder of a Disputed Claim or Interest will receive any Distribution on account thereof until and to the extent that its Disputed Claim or

34

U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 1346  Filed  07/02/12  Page 38 of 49

Interest becomes an Allowed Claim or Interest. To the extent a Claim or Interest is not a Disputed Claim or Interest but is held by a Holder that is or may be liable to the Debtor on account of a Cause of Action, no payments or Distributions shall be made with respect to all or any portion of such Claim or Interest unless and until such Cause of Action has been settled, withdrawn, or determined by a Final Order or such other court having jurisdiction over the matter.

In determining the amount of a Pro Rata Distribution due to the Holders of Allowed Claims and Interests, the Debtor may, in its discretion, make the Pro Rata calculation as if all Disputed Claims or Interests were Allowed in the full amount claimed or in the amount estimated under Section 10.06(b) hereof. The Debtor, in its discretion, may withhold Distributions otherwise due hereunder to the Holder of a Disputed Claim or Interest, or to its designee as provided herein, until the Objection Deadline, to enable the Debtor or any other party in interest to file a timely objection thereto.

(b)  **Claim Estimation.** The Debtor may request estimation or limitation of any Claim or Interest pursuant to Bankruptcy Code section 502(c) regardless of whether that Claim or Interest was previously objected to or whether the Bankruptcy Court has ruled on any such objection; *provided, however*, that the Bankruptcy Court will determine (i) whether such Claims or Interests are subject to estimation pursuant to Bankruptcy Code section 502(c) and (ii) the timing and procedures for such estimation proceedings, if any. The Bankruptcy Court will retain jurisdiction to estimate any Claim or Interest at any time during litigation concerning any objection to any Claim or Interest, including, without limitation, during the pendency of any appeal relating to any such objection. Claims or Interests may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Plan or the Bankruptcy Court.

(c)  **Distributions After Allowance of Disputed Claim or Interest.** Distributions to each Holder of a Disputed Claim or Interest (or to its designee as provided herein), to the extent it becomes an Allowed Claim or Interest, will be made in accordance with the provisions of the Plan that govern Distributions to such Holders of Claims or Interests in the applicable Class. Unless otherwise provided in the Plan, as promptly as practicable after the date on which a Disputed Claim or Interest becomes an Allowed Claim or Interest, and in any event not later than ten (10) Business Days after the Disputed Claim or Interest becomes an Allowed Claim or Interest, the Debtor shall distribute to the Holder thereof from the applicable Distribution Reserve Account, if any, any Distribution that would have been made to such Holder had its Claim or Interest been an Allowed Claim or Interest on the date that Distributions were previously made to Holders of Allowed Claims or Interests in the applicable Class, without interest (except as otherwise provided by the Plan) and net of any setoff and/or any required withholding of applicable taxes. After all Disputed Claims and Interests have been resolved by a Final Order or other final resolution, any remaining Cash in a relevant Distribution Reserve Account shall be distributed in accordance with the other provisions of the Plan.

(d)  **Allowance of Claims Subject to Bankruptcy Code Section 502(d).** Allowance of Claims will in all respects be subject to the provisions of Bankruptcy Code section 502(d), except as provided by a Final Order or a settlement among the relevant parties.

U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 1346  Filed  07/02/12  Page 39 of 49

### 10.07. Distributions Under the Plan

(a) **Means of Cash Payment.** Except as otherwise provided in the Plan, Cash payments made pursuant to the Plan shall be in U.S. dollars and may be made, at the option of and in the sole discretion of the Debtor, by checks drawn on or wire transfers from a domestic bank; provided, that in the case of foreign Holders of Allowed Claims or Interests, Cash payments may be made, at the option of and in the sole discretion of the Debtor, in such currency and by such means as are necessary or customary in a particular jurisdiction.

(b) **Delivery of Distributions.** All Distributions to any Holder of an Allowed Claim or Interest (or to its designee as provided herein) shall be made at the address of each such Holder as set forth on the proof of Claim or Interest filed by such Holder or its designee (or at the last address of such a Holder or its designee known to the Debtor if no proof of Claim or Interest is filed or if the Debtor has been notified in writing of a change of address). If any Holder's Distribution is returned as undeliverable, no further Distributions to such party (or its designee) shall be made unless and until the Debtor is notified in writing of such party's then current address, at which time all missed Distributions shall be made to such Holder (or its designee) without interest. Any Holder of an Allowed Claim whose Distribution is undeliverable must make demand for such Distribution to the Debtor in writing on or before 120 days after the date such undeliverable Distribution was initially made, after which the Distribution shall be retained by the Debtor for Distribution to other Holders of Claims and Interests pursuant to the terms of the Plan, and any claim by such intended recipient with respect to such undeliverable Distribution shall be discharged and forever barred. The Debtor may employ or contract with other Persons to assist in or make the Distributions required under the Plan. **The Debtor and its agents and professionals are under no duty to take any action to either attempt to locate any Holder of a Claim or Interest, or obtain an executed Internal Revenue Service Form W-9 from any Holder of a Claim or Interest.**

(c) **Fractional Dollars; De Minimis Distributions.** Notwithstanding any other provision of the Plan, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of the fraction to the nearest whole dollar (up or down), with half dollars being rounded down. No payment of less than ten dollars ($10.00) shall be made with respect to any Allowed Claim, and the Debtor shall retain any such payment and shall deposit same into a pool for redistribution to other Holders of Allowed Claims in the same Class.

(d) **Unclaimed Property.** Any Distributions that become Unclaimed Property shall be retained by the Debtor free and clear of any claims or restrictions thereon, and any entitlement of any Holder of any Claim or Interest to such Distributions shall be extinguished and forever barred. The Debtor shall distribute Unclaimed Property to other Holders of Claims and Interests pursuant to the terms of the Plan.

### 10.08. Duty to Disgorge Overpayments

To the extent the Holder of any Allowed Claim or Interest receives more than what such Holder is permitted to receive under the Plan, such Holder shall immediately return such excess

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 1346   Filed  07/02/12   Page 40 of 49

payment(s) to the Debtor, failing which, the Debtor may sue such Holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

# ARTICLE XI
## ACCEPTANCE OR REJECTION OF THE PLAN

### 11.01.  Impaired Classes Entitled to Vote

Each impaired Class entitled to vote to accept or reject the Plan will vote separately.  A Holder of a Claim or Interest as to which an objection has been filed and that has not been temporarily allowed for purposes of voting on the Plan may not vote.  A Holder of a contingent or unliquidated Claim or Interest may vote on the Plan in an amount based on the portion, if any, of the Claim or Interest shown as non-contingent, liquidated and undisputed in the Schedules, or equal to $1.00 if not so shown.

### 11.02.  Acceptance by an Impaired Class

A Class of Claims that is entitled to vote to accept or reject the Plan shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.  A Class of Interests that is entitled to vote to accept or reject the Plan shall have accepted the Plan if it is accepted by the Holders of at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have voted on the Plan.  Any Ballot that is not properly completed and timely received by the Balloting Deadline will not be counted.

### 11.03.  Section 1129(b) Cramdown

If any impaired Class of Claims or Interests fails to accept the Plan in accordance with Bankruptcy Code section 1129(a), the Debtor will seek confirmation of the Plan by the Bankruptcy Court pursuant to the "cramdown" provisions in Bankruptcy Code section 1129(b). The Debtor asserts that the Plan provides for fair and equitable treatment of all Classes of Claims and Interests.  The Debtor reserves the right to amend the Plan as may be necessary to obtain confirmation of the Plan under Bankruptcy Code section 1129(b).

# ARTICLE XII
## RETENTION OF JURISDICTION

### 12.01.  Jurisdiction

Until the Bankruptcy Case is closed, the Bankruptcy Court will retain the fullest and most extensive jurisdiction as is legally permissible under applicable law, including under Bankruptcy Code sections 105(a) and 1142, including that which is necessary to ensure that the purpose and intent of the Plan are carried out and to hear and determine all objections thereto that could have been brought before the entry of the Confirmation Order.  The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against and Interests in the Debtor and to enforce all Causes of Action and any related counterclaims, cross-claims, and/or third-party claims over which the Bankruptcy Court otherwise has jurisdiction.  Nothing contained in the Plan will prevent the Debtor from taking any action as may be necessary to enforce any Cause of Action

U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 1346  Filed  07/02/12  Page 41 of 49

that may exist on behalf of the Debtor and that may not have been enforced or prosecuted by the Debtor.

**12.02. Examination of Claims**

Following the Confirmation Date, the Bankruptcy Court will retain jurisdiction to decide disputes concerning the classification and allowance of any Claim or Interest and the reexamination of Claims and Interests that have been allowed for the purposes of voting, and the determination of any objections as may be filed to Claims and Interests. The failure by the Debtor to object to, or to examine, any Claim or Interest for the purposes of voting will not be deemed a waiver of their right to object to, or to re-examine, the Claim or Interest in whole or in part.

**12.03. Determination of Disputes**

The Bankruptcy Court will retain jurisdiction after the Confirmation Date to determine (a) all questions and disputes regarding title to the Assets, (b) disputes concerning the allowance of Claims and Interests, (c) all Causes of Action, controversies, disputes, or conflicts, whether or not subject to any pending action, as of the Confirmation Date, to recover property pursuant to the provisions of the Bankruptcy Code, and (d) all disputes and controversies regarding the operation, implementation, and interpretation of the Plan, the Confirmation Order, and any agreements that are identified or implement the Plan or the Confirmation Order.

**12.04. Additional Purposes**

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, occurrence of the Effective Date and/or substantial consummation of the Plan, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of or related to the Bankruptcy Case and the Plan to the fullest extent permitted by applicable law, including but not limited to jurisdiction to:

        (a)      hear and determine any modification of the Plan or the Plan Supplement pursuant to Bankruptcy Code section 1127, to cure any defect or omission or reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary or appropriate to carry out the purposes and effects thereof;

        (b)      hear and determine disputes, issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the Plan Supplement and the transactions contemplated thereunder, the Confirmation Order, the Disclosure Statement, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

        (c)      hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of or related to the Bankruptcy Case or the Plan;

(d)     hear and determine any disputes regarding the rate or amount of interest, if any, payable on an Allowed General Unsecured Claim pursuant to Section 5.08 of the Plan;

(e)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered or approved in the Bankruptcy Case;

(f)     hear and determine all disputes involving the existence, nature, or scope of the discharge, injunctions, releases, exculpations, and indemnifications granted pursuant to the Plan or the Confirmation Order;

(g)     hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, the Confirmation Order, any transactions, performance or payments provided for or contemplated in the Plan or the Confirmation Order, or any agreement, instrument or other document governing or relating to any of the foregoing;

(h)     construe and apply any findings of fact and/or conclusions of law made in or in connection with the Confirmation Order;

(i)     adjudicate matters arising in the Bankruptcy Case, including matters relating to the formulation and consummation of the Plan;

(j)     enter any orders, including injunctions, as are necessary to enforce title, rights, and powers of the Debtor to impose any limitations, restrictions, terms and conditions on such title, rights, and powers as the Bankruptcy Court may deem necessary;

(k)     hear and determine all questions and disputes regarding title to or recovery of the Assets and property of the Debtor;

(l)     enter a Final Decree closing the Bankruptcy Case;

(m)     correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Supplement, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, the Plan Supplement, and the Confirmation Order including the adjustment of the date(s) of performance under the Plan, the Plan Supplement, and any other documents related thereto if the Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Supplement, and such other documents may be substantially realized thereby;

(n)     enter, implement or enforce such orders as may be appropriate if the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(o)     hear and determine all applications for compensation and reimbursement of expenses of Professionals or any other Person under the Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Debtor shall be made in the ordinary course of business and shall not be subject to approval of the Bankruptcy Court;

U.S. Bankruptcy Court - Hawaii  #11-02371  Dkt # 1346  Filed  07/02/12  Page 43 of 49

(p)  hear and determine issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of the Plan;

(q)  hear and determine issues concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(r)  hear and determine all matters regarding the assumption or rejection of Executory Contracts, including any disputes concerning Rejection Claims or Cure Amounts;

(s)  hear and determine any objection to any Claim (including any Administrative Claim) or any Interest, including the allowance, classification, priority, secured status, compromise, estimation, subordination, or payment thereof;

(t)  allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim (including any Administrative Claim) or any Interest and to re-examine Claims or Interests that have been allowed for purposes of voting;

(u)  hear and determine any Cause of Action and any collection or settlement matters related thereto;

(v)  hear and determine any disputes or litigation regarding the validity, priority, or extent of any Lien and any Claim associated therewith; and

(w)  hear and to determine any other matter related hereto and not inconsistent with the Plan, the Confirmation Order, the Bankruptcy Code, or Title 28 of the United States Code.

### 12.05.  Failure of the Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Bankruptcy Case, including the matters set forth in Article XII of this Plan, the provisions of this Article XII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

### ARTICLE XIII
### MISCELLANEOUS PROVISIONS

### 13.01.  General Notices

Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (a) in writing, (b) served to the parties and addresses set forth below by certified mail, return receipt requested, hand delivery, overnight delivery, first class mail, or fax transmission, and (c) deemed to have been given or made when actually delivered or received:

40

**-to the Debtor:**

Damian McKinney
McKinney Advisory Group, Inc.
12250 El Camino Real, Suite 220
San Diego, CA 92130
Fax: 858-519-3250

**–with a copy to counsel for the Debtor:**

Patrick J. Neligan, Jr.
James P. Muenker
Neligan Foley LLP
325 N. St. Paul, Suite 3600
Dallas, TX 75201
Fax: 214-840-5301

**-to the Davidson Trust:**

Mark R. Herron
The Davidson Family Trust
800 Southwood Boulevard
Suite 204
Incline Village, NV 89451
Fax: 775-832-8316

**-with a copy to counsel for the Davidson Trust:**

Lisa Hill Fenning
Arnold & Porter LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-5844
Fax: (213) 243-4199

**13.02. Plan Supplement**

No later than one (1) Business Day prior to the Confirmation Hearing, or no later than any other deadline specified in the Plan with respect to a specific agreement or document, the Proponents shall file with the Bankruptcy Court the Plan Supplement and such exhibits, schedules, agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Upon the filing of the Plan Supplement, (a) the Proponents will serve copies of the Plan Supplement on the Office of the United States Trustee and (b) the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Proponents' counsel. The Plan Supplement is

incorporated into, and is a part of, the Plan as if set forth in full herein, and all references to the Plan shall refer to the Plan together with all documents contained in the Plan Supplement.

### 13.03. Exemption From Transfer Taxes

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of securities or other property under the Plan; the creation, transfer, filing, or recording of any mortgage, deed of trust, financing statement, or other security interest; or the making, delivery, filing, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax, real estate tax, conveyance, filing, or transfer fees, mortgage, recording, or other similar tax or other government assessment. The Confirmation Order shall direct all appropriate governmental officials or agents to forgo the collection of any such tax or assessment and to accept such documents delivered under the Plan without the imposition or payment of any charge, fee, governmental assessment, or tax.

### 13.04. Asserting and Curing Default Under the Plan

Except as otherwise provided in the Plan, if the Debtor defaults under the provisions of the Plan (as opposed to default under the documentation executed in implementing the terms of the Plan), any Creditor or party in interest desiring to assert a default will provide the Debtor and its counsel with written notice of the alleged default. The Debtor will have thirty (30) days from receipt of written notice to cure the alleged default. If the default is not cured, any Creditor or party in interest may then file with the Bankruptcy Court, and serve on the Debtor and its counsel, a motion to compel compliance with the applicable provision of the Plan. The Bankruptcy Court, on finding a material default, will issue orders compelling compliance with the pertinent provisions of the Plan.

### 13.05. Revocation or Withdrawal of the Plan

The Proponents reserve the right to revoke and/or withdraw the Plan at any time before the Confirmation Date. If the Proponents revoke or withdraw this Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor or any other Person.

### 13.06. Modification of the Plan

The Proponents reserve the right to modify the Plan in writing at any time before the Confirmation Date, provided that (a) the Proponents shall not modify the provisions for the allowance and treatment of the Allowed Marriott Secured Claim or the Allowed Marriott Unsecured Claim in Sections 5.05 and 5.10, respectively, unless Marriott consents in writing, (b) the Proponents shall not modify the provisions for the allowance and treatment of the Allowed Wells Fargo Secured Claim in Section 5.03, unless Wells Fargo consents in writing, (c) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and (d) the Proponents shall have complied with Bankruptcy Code section 1125. The Proponents further reserve the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of the Plan, provided that (a) the Proponents shall not modify the

U.S. Bankruptcy Court - Hawaii   #11-02371   Dkt # 1346   Filed  07/02/12   Page 46 of 49

provisions for the allowance and treatment of the Allowed Marriott Secured Claim or the Allowed Marriott Unsecured Claim in Sections 5.05 and 5.10, respectively, unless Marriott consents in writing, (b) the Proponents shall not modify the provisions for the allowance and treatment of the Allowed Wells Fargo Secured Claim in Section 5.03, unless Wells Fargo consents in writing, (c) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, (d) the Proponents shall have complied with Bankruptcy Code section 1125, and (e) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Bankruptcy Code section 1129. A Holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

### 13.07. Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 13.08. Due Authorization

Each and every Holder of an Allowed Claim or Interest that receives a Distribution under the Plan warrants that it is authorized to accept, in consideration of such Claim or Interest, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan.

### 13.09. Implementation

The Debtor may execute such documents, take such other actions, and perform all acts necessary or appropriate to implement the terms and conditions of the Plan without the need for further Bankruptcy Court approval.

### 13.10. Execution of Documents

Upon application by the Debtor, the Bankruptcy Court may issue an order directing any necessary party to execute or deliver, or to join in the execution or delivery of, any instrument or document, and to perform any act, necessary for the consummation or implementation of the Plan.

### 13.11. Bankruptcy Restrictions

From and after the Effective Date, the Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code (e.g., sections 363 or 364) except as the Bankruptcy Code may specifically provide otherwise. No monthly operating reports will be filed after the Effective Date; however, the Debtor shall provide the U.S. Trustee such financial reports as may be required by law.

### 13.12. Ratification

The Confirmation Order will ratify all transactions effected by the Debtor during the pendency of the Bankruptcy Case.

### 13.13. Integration Clause

This Plan is a complete and integrated statement of the binding agreement among the Debtor, the Holders of Claims and Interests, and other parties in interest upon the matters herein. Parol evidence shall not be admissible in an action regarding the Plan or its provisions.

### 13.14. Interpretation

Unless otherwise specified, all Section, Article and exhibit references in the Plan are to the respective Section in, Article of or exhibit to the Plan, as the same may be amended, waived, or modified from time to time. The headings of the Articles, paragraphs, and Sections of the Plan and table of contents in the Plan are inserted for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan or its interpretation. Nothing herein shall be deemed as a judicial admission by the Debtor. Likewise, any defined terms in the Plan not defined shall have the same meaning as that term has under the Bankruptcy Code.

### 13.15. Severability of Plan Provisions

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable before the Confirmation Date, the Bankruptcy Court, upon the request of the Proponents, will have the power to alter or interpret the Plan to make such term or provision valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation, provided that the Proponents consent. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.16. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), (a) the laws of the State of Hawaii shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan unless otherwise specified therein, and (b) the laws of the state of incorporation, formation, or organization of the Debtor shall govern corporate or other governance matters with respect to the Debtor, in either case without giving effect to the principles of conflicts of law thereto.

**M WAIKIKI, LLC**

By: _/s/ Damian McKinney_____
      Damian McKinney
      Its Manager

**THE DAVIDSON FAMILY TRUST DATED
DECEMBER 22, 1999, AS AMENDED**

By: _/s/ Mark R. Herron_____
      Mark R. Herron
      Its Authorized Representative

45

71529v.4