# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re | Case No. 11-02371<br>(Chapter 11) |
| M WAIKIKI LLC, | |
| Debtor. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO FIFTH AMENDED JOINT PLAN OF REORGANIZATION** |
| | Related Docket No. 1346 |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO CONFIRMATION OF FIFTH AMENDED JOINT PLAN OF REORGANIZATION PROPOSED BY THE DEBTOR AND THE DAVIDSON FAMILY TRUST DATED DECEMBER 22, 1999, AS AMENDED

M Waikiki LLC ("M Waikiki" or the "Debtor"), as debtor and debtor-in-possession, and the Davidson Family Trust dated December 22, 1999, as Amended (the "Davidson Trust" and, together with the Debtor, the "Proponents") filed the Joint Plan of Reorganization Proposed by the Debtor and the Davidson Trust (as amended, modified or supplemented thereafter, the "Plan") [Docket No. 515], on January 20, 2012; and objections (the "Objections") to the Second Amended Plan (as defined below) having been interposed by Marriott Hotel Services, Inc. and Marriott International, Inc. (collectively, "Marriott") [Docket No. 1107, the "Marriott Objection"] and Wells Fargo Bank NA, as Trustee for Nomura CRE

CDO Grantor Trust, Series 2007-2 ("Wells Fargo" and, together with Marriott, the "Objectors") [Docket No. 1088, the "Wells Fargo Objection"]; and the Objections having been resolved and withdrawn, and no objections remain pending; and upon consideration of the (i) Joint Response to Objections to, and Brief in Support of, Confirmation of the Second Amended Joint Plan of Reorganization Filed by the Debtor and the Davidson Family Trust (the "Pre-Confirmation Hearing Brief") [Docket No. 1160], (ii) Post-Hearing Brief in Support of Confirmation of the Fifth Amended Joint Plan of Reorganization Filed by the Debtor and the Davidson Family Trust (the "Post-Confirmation Hearing Brief") [Docket No. 1355] (the Pre-Confirmation Hearing Brief and the Post-Confirmation Hearing Brief are collectively referred to hereafter as the "Confirmation Briefs"); (iii) Notice of Withdrawal of Certain Pleadings Filed by the Senior Lender With Respect to the Joint Plan and Statement Relating Thereto [Docket No. 1203]; and (iv) Notice of Withdrawal of Certain Pleadings Filed by Marriott With Respect to the Joint Plan and the Marriott Plan [Docket No. 1349]; and a hearing to consider confirmation of the Plan having been held before the Court on June 1, 4-8 and July 10, 2012 (the "Confirmation Hearing"); and the Court having reviewed and considered the Plan and all other pleadings and documents relating thereto, the Confirmation Briefs, all testimony and exhibits adduced and admitted into evidence at the Confirmation Hearing, including, without limitation, those declarations submitted in support of

the Plan (collectively, the "Supporting Declarations");[1] and upon all of the proceedings had before the Court and upon the entire record of the Confirmation Hearing and the Bankruptcy Case; it is hereby DETERMINED, FOUND, ADJUDGED, and DECREED:[2]

1.     Findings and Conclusions.  This constitutes the Court's conclusions of law, and the findings set forth herein constitute the Court's findings of fact pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

---

[1] The Supporting Declarations include the following:  (i) the Declaration of Dennis Simon [Docket No. 1142] (the "Simon Declaration"); (ii) the Declaration of Lisa DeCambra [Docket No. 1141] (the "DeCambra Declaration"); (iii) the Declaration of Damian McKinney [Docket No. 1143] (the "McKinney Declaration"); (iv) the Declaration of Benjamin Rafter [Docket No. 1145] (the "Rafter Declaration"); (v) the Declarations of James E. Hallstrom [Docket Nos. 1132 and 1133]; (vi) the Declaration of Steven M. Egesdal [Docket No. 1131]; (vii) the Declaration of Alexander D. Widell [Docket No. 1128]; the Declaration of Alan Tantleff [Docket No. 1126] (the "Tantleff Declaration"); (viii) the Declaration of Freddie M. Reiss [Docket No. 1125] (the "Reiss Declaration"); and the Declaration of Fred Kleisner [Docket No. 1127].

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Plan.

2. <u>Exclusive Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. This Court has jurisdiction over the Debtor's Bankruptcy Case and the confirmation of the Plan pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Bankruptcy Case maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, adduced and/or presented (and not subsequently withdrawn) at the hearings held before the Court during the pendency of the Bankruptcy Case.

4. <u>History and Background Regarding the Debtor</u>. The Debtor is a Hawaii limited liability company that was formed to acquire an existing hotel property in Honolulu, Hawaii (the "<u>Hotel</u>"). The Hotel was acquired in July 2006 for a purchase price of approximately $112 million (the "<u>Purchase Price</u>").

5. On July 9, 2008, the Debtor entered into two agreements relating to the renovation and management of the Hotel: (a) a Design and Technical Services and Pre-Opening Agreement among I.S. International, LLC, Ian Schrager and Marriott; and (b) a Management Agreement between the Debtor and Marriott.

6. The Debtor expended another approximately $138 million (in addition to the Purchase Price) to renovate the Hotel. The Hotel, known as The MODERN Honolulu hotel (f/k/a The Waikiki EDITION), is an 18-story, 353-room luxury hotel located at 1775 Ala Moana Boulevard, Honolulu, Hawaii 96815. After completion of the renovation, the Hotel reopened on or about September 28, 2010. The Hotel includes an on-site restaurant, the Morimoto Waikiki (the "Restaurant").

7. The Debtor's Pre-Petition Secured Debt. In order to finance the acquisition of the Hotel, on July 12, 2006, the Debtor issued a promissory note to Nomura Credit & Capital, Inc. ("Nomura Credit") in consideration of $114,900,000 with an original maturity date of August 9, 2008 (the "Senior Loan"), secured by a mortgage on the Hotel. Thereafter, Nomura Credit assigned the Senior Loan to the Nomura CRE CDO Grantor Trust, Series 2007-2 ("Nomura Trust"). Wells Fargo acts as the Trustee for the Nomura Trust, and C-III Asset Management LLC is the servicer of the Senior Loan. The maturity date of the Senior Loan was subsequently extended to August 9, 2011.

8. On March 13, 2009, the Debtor also issued a promissory note to Centerline Real Estate Special Situations Mortgage Fund LLC ("Centerline") in consideration of $15,000,000, also secured by a mortgage on the Hotel. This loan was never funded by Centerline, but a replacement loan was subsequently

documented and funded by the Davidson Trust in November 2010 (the "Junior Loan"). The maturity date of the Junior Loan was also August 9, 2011.

9. _Events Leading to the Chapter 11 Case_. The Hotel incurred average monthly operating losses (before debt service and certain other owner expenses) of approximately $800,000 in each month that the Hotel was open from September 2010 through the Petition Date. The magnitude of these losses and their ongoing nature led to a liquidity crisis for the Debtor. Alleging that Marriott had mismanaged the renovation and operation of the Hotel and had failed to comply with the terms of the Management Agreement, on May 26, 2011, the Debtor: (1) provided Marriott with a notice of default; and (2) filed suit in the Supreme Court of the State of New York, County of New York (the "New York Court"). Marriott disputed the Debtor's allegations. In the ensuing months, the Debtor and Marriott were unable to resolve their disputes about the management of the Hotel.

10. On August 10, 2011, Wells Fargo declared an event of default on the Senior Loan.

11. On August 25, 2011, the Davidson Trust declared the Junior Loan in default.

12. On August 28, 2011, the Debtor gave notice to Marriott that it was terminating Marriott as manager of the Hotel. Contemporaneously therewith, the

Debtor installed Modern Management Services, LLC ("Modern Management"), an affiliate of Aqua Hotels & Resorts, as the Hotel manager.

13.     Marriott disputed the alleged termination and subsequently filed a Motion for a Temporary Restraining Order and Preliminary Injunction in the New York Court.  Over the Debtor's objection, the New York Court granted Marriott's motion, and ordered the Debtor to return management of the Hotel to Marriott on August 31, 2011, by 2:30 p.m. local time.

14.     Commencement of the Debtor's Bankruptcy Case.  On August 31, 2011 (the "Petition Date"), the Debtor filed the Bankruptcy Case.  Since the Petition Date, the Debtor has operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, and Modern Management has continued to act as the Hotel manager.  No trustee has been appointed in the Bankruptcy Case.

15.     Official Committee of Unsecured Creditors.  On September 9, 2011, the Office of the United States Trustee for the District of Hawaii (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") in the Bankruptcy Case.  The U.S. Trustee amended such appointment on September 12 and September 20, 2011.

16.     DIP Financing.  The Hotel's operations during the Bankruptcy Case and the Debtor's other costs and expenses, including the administrative expenses

of the Bankruptcy Case, have been funded by debtor-in-possession financing (the "DIP Loan") provided by the Davidson Trust. Specifically, on September 7, 2011, the Debtor filed an emergency motion for, *inter alia*, interim and final orders authorizing the Debtor to borrow up to $2.5 million from the Davidson Trust to finance the Hotel's operations and pay other administrative expenses of the Debtor's Bankruptcy Case. The Court granted that motion on an interim and then a final basis by orders entered on September 15, 2011 [Docket No. 125] and September 29, 2011 [Docket No. 199], respectively. An amended final order was entered on February 21, 2012 [Docket No. 621].

17.     On December 9, 2011, the Debtor filed an emergency motion for, *inter alia*, interim and final orders authorizing the Debtor to borrow an additional $550,000 from the Davidson Trust. The Court granted that motion on an interim and then a final basis by orders entered and rulings made on January 17, 2012 [Docket No. 500].

18.     On January 1, 2012, the Debtor filed a motion for, *inter alia*, authorization to enter into an amended and restated credit agreement with the Davidson Trust, pursuant to which the Debtor would be authorized to borrow up to a maximum of $9 million from the Davidson Trust (inclusive of amounts previously authorized). The Court granted that motion on a final basis by order entered on February 10, 2012 [Docket No. 587].

19.     On April 27, 2012, the Debtor filed a motion for, *inter alia*, authorization to enter into a second amended and restated credit agreement with the Davidson Trust, pursuant to which the Debtor would be authorized to borrow up to a maximum of $15.3 million from the Davidson Trust (inclusive of amounts previously authorized).  The Bankruptcy Court granted that motion on a final basis by order entered on May 18, 2012 [Docket No. 1067].

20.     <u>Exclusivity and the Competing Plans</u>. On January 3, 2012, following notice and a hearing, the Court entered an order extending the Debtor's exclusive period for filing a plan to January 20, 2012.  On January 20, 2012, the Debtor and the Davidson Trust filed the Plan.  On February 2, 2012, Marriott filed a motion seeking termination of the exclusive solicitation period.  On February 23, 2012, following notice and a hearing, the Court entered an order terminating the solicitation period and permitting Marriott or any other party in interest to file a plan.

21.     On February 27, 2012, Marriott filed a plan of reorganization (as amended, modified or supplemented, the "<u>Marriott Plan</u>") and a related disclosure statement (as amended, modified or supplemented, the "<u>Marriott Disclosure Statement</u>").

22.     After due notice and a hearing, on April 16, 2012, the Court entered its Order Approving Disclosure Statements and Fixing Time for Filing

Acceptances or Rejections of Plans, Combined with Notice Thereof (the "Disclosure Statement Order") [Docket No. 918] that approved, among other things, the Debtor Proponents' Disclosure Statement (as that term is defined in the Disclosure Statement Order, and hereafter referred to as the "Disclosure Statement") and the Marriott Disclosure Statement. On July 2, 2012, Marriott withdrew the Marriott Plan [Docket No. 1349] pursuant to that certain stipulation between Marriott and the Debtor, dated June 27, 2012, which consensually resolved the Marriott Claims. The only plan pending before the Court is the Proponents' Plan.

23.    Solicitation and Notice. The Disclosure Statement Order, among other things, approved the Disclosure Statement, finding that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code, and established procedures for the Proponents' solicitation of votes of acceptances and rejections with respect to the Plan. On April 19, 2012, (the "Solicitation Date"), the (a) Second Amended Plan, (b) Marriott Plan (c) Disclosure Statement, (d) Marriott Disclosure Statement, (e) Disclosure Statement Order, (d) Confirmation Hearing Notice, and (e) appropriate ballots for voting on the competing plans (the "Ballots") (collectively, the "Solicitation Package") were served in compliance with the Bankruptcy Rules and the Disclosure Statement Order. The service of the Solicitation Package was adequate and sufficient under

the circumstances of the Bankruptcy Case, and adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings and matters described in the Disclosure Statement Order were timely provided in compliance with the Bankruptcy Rules, and provided due process to all parties in interest.

24.     All parties required to be provided notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely and adequate notice in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

25.     <u>Voting</u>. Votes on the Plan were solicited after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the Declaration of Kathryn Tran on Behalf of XRoads Solutions Group, LLC, Regarding Voting and Tabulation of Ballots Accepting and Rejecting the Second Amended Joint Plan Filed by the Debtor and the Davidson Family Trust dated December 22, 1999 (the "<u>Voting Declaration</u>") [Docket No. 1052], votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code and the Bankruptcy Rules.

26.     Plan Supplement.  On May 18, 2012, the Proponents filed that certain supplement to the Plan [Docket No. 1079] (the "Initial Plan Supplement"), which includes the following documents:  (a) Schedule of Executory Contracts to be Assumed Pursuant to Section 7.01 of the Plan; (b) Secured Exit Loan Documents; (c) Wells Fargo Plan Mortgage; (d) Wells Fargo Plan Note; and (e) Wells Fargo Cash Management and Security Agreement.

27.     On June 6, 2012, the Proponents filed an additional supplement (the "Second Plan Supplement") to the Plan [Docket No. 1236] that included the Escrow Agreement with respect to the Supplemental Marriott Reserve (as defined in the Third Amended Plan), the need for which has now been obviated by the current terms of the Plan.

28.     On July 9, 2012, the Proponents filed that certain Supplement to Fifth Amended Joint Plan of Reorganization [Docket No. 1356, the "Plan Supplement"], which includes the following documents:  (a) Schedule of Assumed Contracts, (b) New Operating Agreement for the Debtor, (c) certain Secured Exit Loan Documents (including the Loan and Security Agreement, Promissory Note, Mortgage, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing, Assignment of Leases and Rents, Assignment of Agreements, Contracts and Permits and Pledge and Security Agreement (Interests in MM Restaurant Hawaii LLC)), and (d) certain Wells Fargo plan documents

(including an Amended and Restated Promissory Note, Amended and Restated Mortgage, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing, Amended and Restated Assignment of Leases and Rents, Second Amended and Restated Assignment of Agreements, Permits and Contracts, Second Amended and Restated Cash Management and Security Agreement and Pledge and Security Agreement (Interests in MM Restaurant Hawaii LLC) and Subordination Agreement (Exit Loan)). The documents in the Plan Supplement supersede and replace the documents listed in the Initial Plan Supplement and the Second Plan Supplement, which were withdrawn.

29.     All of the documents contained in the Plan Supplement (as amended, modified or supplemented thereafter) comply with the terms of the Plan, and the filing and notice of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and no other or further notice is or shall be required.

**Modifications of the Plan**

30.     <u>Modification of Plan</u>. On April 6, 2012, before the Solicitation Date, the Proponents filed the Second Amended Joint Plan of Reorganization (the "<u>Second Amended Plan</u>") [Docket No. 894], which contained certain modifications to the original Plan filed on January 20, 2012.

31.     On June 4, 2012, after the Solicitation Date and during the Confirmation Hearing, the Proponents filed the Third Amended Joint Plan of Reorganization (the "Third Amended Plan") [Docket No. 1216], which contained certain modifications to the Second Amended Plan that primarily addressed revisions to the treatment of the Wells Fargo Secured Claim (including, without limitation, a paydown of $30 million to Wells Fargo on the Effective Date, and an agreed upon balance of $85.9 million for the Wells Fargo Plan Note) to resolve the Wells Fargo Objection, which was thereupon withdrawn.

32.     On June 8, 2012, the Proponents filed the Fourth Amended Joint Plan of Reorganization (the "Fourth Amended Plan") [Docket No. 1254], which contained certain additional modifications to the Third Amended Plan that primarily addressed provisions for additional Exit Funding for the Plan.

33.     On July 2, 2012, the Proponents filed the Fifth Amended Joint Plan (the "Fifth Amended Plan") [Docket No. 1346], which contained certain modifications to the Fourth Amended Plan that primarily addressed the treatment of the Marriott Secured Claim and Marriott Unsecured Claim to resolve the Marriott Objection, which was thereupon withdrawn.

34.     Notice of Modifications.  The filing of the amended plans and the description of the modifications (collectively, the "Modifications") on the record at the Confirmation Hearing constitute due and sufficient notice thereof under the

circumstances of the Bankruptcy Case. With the exception of the treatment of the Claims of Wells Fargo and Marriott, the Modifications do not materially or adversely affect the treatment of any other Claims against or Interests in the Debtor, or impair any Claims that were unimpaired, under the Second Amended Plan. With respect to Wells Fargo and Marriott, the Modifications have been made to resolve their Objections to the Plan. As such, the Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the solicitation or re-solicitation of votes on the Plan under section 1126 of the Bankruptcy Code.

35.   Deemed Acceptance of Plan as Modified.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims against and Interests in the Debtor who voted to accept, or were unimpaired under, the Second Amended Plan are hereby deemed to have accepted the Plan as amended consistent with the Modifications. No Holder of a Claim against or Interest in the Debtor who voted to accept the Second Amended Plan shall be permitted to change its acceptance to a rejection of the Plan as a consequence of the Modifications.

36.   Compliance with Bankruptcy Code Section 1127.  The Modifications incorporated in the Plan comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**Compliance With Section 1129 of the Bankruptcy Code**

37.    Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).
The Plan complies with the applicable provisions of the Bankruptcy Code, thereby
satisfying section 1129(a)(1) of the Bankruptcy Code.

38.    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  In addition to
Administrative Claims, Fee Claims, and Priority Tax Claims, which need not be
classified, Article III of the Plan designates the following eleven (11) classes of
Claims and three (3) classes of Interests in the Debtor:  Class 1 (Non-Tax Priority
Claims), Class 2 (Secured Tax Claims), Class 3 (Wells Fargo Secured Claim),
Class 4 (R.D. Olson Secured Claim), Class 5 (Marriott Secured Claim), Class 6
(Davidson Trust Secured Claim), Class 7 (Miscellaneous Secured Claim), Class 8
(General Unsecured Claims), Class 9 (Aqua/Modern Claims), Class 10 (Marriott
Unsecured Claim), Class 11 (Davidson Trust Unsecured Claim), Class 12 (Class C
Interest in the Debtor), Class 13 (Class B Interest in the Debtor) and Class 14
(Class A Interest in the Debtor).  Each of the Claims or Interests, as the case may
be, in each particular Class is substantially similar to the other Claims or Interests
in such Class.  Valid business, legal and factual reasons exist for separately
classifying the various Claims and Interests pursuant to the Plan, and such Classes
do not unfairly discriminate between Holders of Claims and Interests.  The Plan
therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

39.     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Article III
and Section 4.01 of the Plan specify that Classes 1, 2, 5, 7 and 8 are unimpaired by
the Plan, thereby complying with section 1123(a)(2) of the Bankruptcy Code.  The
Plan therefore satisfies section 1123(a)(2) of the Bankruptcy Code.

40.     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).
Article III and Section 4.02 of the Plan specify that Classes 3, 4, 6, and 9-14 are
impaired pursuant to the Plan, thereby complying with section 1123(a)(3) of the
Bankruptcy Code.  The Plan therefore satisfies section 1123(a)(3) of the
Bankruptcy Code.

41.     No Discrimination (11 U.S.C. § 1123(a)(4)).  The Plan provides for
the same treatment for each Claim or Interest in each respective Class unless the
Holder of a particular Claim or Interest has agreed to a less favorable treatment on
account of such Claim or Interest, thereby satisfying section 1123(a)(4) of the
Bankruptcy Code.  The Plan therefore satisfies section 1123(a)(4) of the
Bankruptcy Code.

42.     Implementation of the Plan (11 U.S.C. § 1123(a)(5)).  The Plan,
together with the documents and agreements comprising or contemplated by the
Plan Supplement, provide adequate and proper means for the implementation of
the Plan as required by section 1123(a)(5) of the Bankruptcy Code.  The Plan is
funded by, among other things, the following:  (i) the Cash of the Debtor on hand

as of the Effective Date; (ii) Cash arising from the operation, ownership, maintenance, and/or sale of the Hotel and other Assets of the Debtor on or after the Effective Date; (iii) the Exit Funding; and (iv) any Cash generated or received by the Debtor on or after the Effective Date from any other source.  The Plan therefore satisfies section 1123(a)(5) of the Bankruptcy Code.

43.    <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.  The New Operating Agreement prohibits the issuance of any non-voting equity securities in the Debtor.  The Plan therefore satisfies section 1123(a)(6) of the Bankruptcy Code.

44.    <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>. Pursuant to the Plan and the New Operating Agreement, the Manager of the Debtor shall be McKinney Advisory Group, Inc., acting through Damian McKinney, or such other entity as is determined pursuant to the New Operating Agreement.  The selection of the manager was by the Proponents.  As such, the Plan satisfies section 1123(a)(7).

45.    <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>.  The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.  The failure to specifically address a provision of the Bankruptcy Code in this Order shall not diminish or impair the effectiveness of this Order.

46.     Impairment/Unimpairment of Classes of Claims and Interests (11

U.S.C. § 1123(b)(1)).  As contemplated by section 1123(b)(1) of the Bankruptcy

Code, (i) Classes 1, 2, 5, 7 and 8 are not impaired by the Plan; and (ii) Classes 3, 4,

6, and 9-14 are impaired by the Plan.

47.     Assumption and Rejection of Executory Contracts (11 U.S.C. §

1123(b)(2)).  In accordance with section 1123(b)(2) of the Bankruptcy Code,

Section 7.01 of the Plan provides that pursuant to sections 365(a) and 1123(b)(2)

of the Bankruptcy Code, all executory contracts and unexpired leases that exist

between the Debtor and any person or entity shall be (i) deemed rejected by the

Debtor as of the Effective Date, except for any executory contract or unexpired

lease that was (a) terminated before the Effective Date, (b) assumed or rejected

pursuant to an order of the Court entered prior to the Effective Date, or (c) listed in

the Schedule of Assumed Contracts (*see* Plan Supplement, Exh. A); and (ii)

deemed assumed by the Debtor as of the Effective Date if listed in the Schedule of

Assumed Contracts; *provided*, *however*, that the Proponents reserve the right, on or

prior to the Confirmation Date, to amend the Schedule of Assumed Contracts.  The

Proponents shall provide notice of any amendments to the Schedule of Assumed

Contracts to the parties to the Executory Contracts affected thereby.  The listing of

a document on the Schedule of Assumed Contracts shall not constitute an

admission by the Proponents that such document is an Executory Contract or that

the Debtor has any liability thereunder. Accordingly, the Plan satisfies the requirements of section 1123(b)(2) of the Bankruptcy Code.

48.    <u>Payments Related to Assumption of Contracts and Leases (11 U.S.C. § 1123(d))</u>. Section 7.02 of the Plan provides for the satisfaction of default claims associated with each Executory Contract to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. All cure amounts proposed by the Debtor in the Schedule of Assumed Contracts (to which no party objected) are approved and shall be deemed final. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

49.    <u>Proponents' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. Except as otherwise provided or permitted by orders of the Court, the Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order in transmitting the Solicitation Package and in tabulating the votes with respect to the Plan, thereby complying with section 1125 with respect to the Disclosure Statement and the Plan.

50.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129 (a)(3))</u>. The Proponents are the proponents for the Plan. The Proponents have proposed the Plan (including all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby complying with section 1129(a)(3) of

the Bankruptcy Code. The Proponents' good faith is evident from the record of the Bankruptcy Case, including the record of the hearing to approve the Disclosure Statement, the record of the Confirmation Hearing, and other proceedings held in connection with the Bankruptcy Case. The Plan is based upon extensive, arms'-length negotiations between and among the Proponents and other parties in interest, and represents the culmination of months of litigation, intensive negotiations and discussions among all parties in interest. Moreover, the Plan accomplishes the goals of maximizing the Debtor's estate and equitable distribution of the Debtor's assets by providing the means through which the Debtor may effectuate distributions to the Holders of Allowed Claims and Interests. The Plan promotes the purposes of the Bankruptcy Code in providing for the rehabilitation and reorganization of the Debtor, preservation of jobs at the Hotel, and payment of Allowed Claims, either in full or as agreed to by the Holder of an Allowed Claim. Accordingly, the Plan and the related documents have been filed in good faith and the Proponents have satisfied their obligations under section 1129(a)(3).

51. <u>Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4))</u>. Pursuant to the compensation procedures previously approved by this Court and established in the Bankruptcy Cases pursuant to section 331 of the Bankruptcy Code, and the Plan, all payments made or to be made by the Debtor for services or

for costs and expenses in connection with the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

52.     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).  The Proponents have complied with section 1129(a)(5) of the Bankruptcy Code.  The identity of the Manager of the Debtor from and after the Effective Date – McKinney Advisory Group, Inc., acting through Damian McKinney – has been fully disclosed.  Aqua/Modern shall continue to manage the Hotel pursuant to a modified and assumed management agreement.  The foregoing appointments were made with the unanimous approval of both of the Proponents, is consistent with Hawaii corporate law, the Bankruptcy Code, the interests of creditors and equity security holders and with public policy.  As such, the Plan satisfies section 1129(a)(5).

53.     No Rate Changes (11 U.S.C. § 1129(a)(6)).  The Debtor does not have any ongoing business subject to any regulatory approval and accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

54.     Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).  With respect to each impaired class of Claims against or Interests in the Debtor, each Holder of a Claim or Interest in such Class has accepted the Plan or will receive or retain

pursuant to the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.  Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

55.    Acceptance by Certain Classes (11 U.S.C. 1129(a)(8)).  Classes 1 (Non-Tax Priority Claims), 2 (Secured Tax Claims), 5 (Marriott Secured Claim), 7 (Miscellaneous Secured Claims) and 8 (General Unsecured Claims) are unimpaired under the Plan and are, therefore, conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  As set forth in the Voting Declaration, Classes 4 (R.D. Olson Secured Claim), 6 (Davidson Trust Secured Claim), 9 (Aqua/Modern Claims), and 11-14 (Davidson Trust Unsecured Claim and Interests in the Debtor), which are impaired Classes of Claims and Interests eligible to vote, have affirmatively voted to accept the Plan.  As set forth in the Voting Declaration, Class 3 (Wells Fargo Secured Claim) and Class 10 (Marriott Unsecured Claims) voted to reject the Plan.  Although section 1129(a)(8) of the Bankruptcy Code is not satisfied with respect to Classes 3 and 10, the Plan may nevertheless be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Classes 3 and 10, and both Wells Fargo and Marriott have withdrawn the Objections and have stipulated that the treatment of

their respective Claims in Classes 3 and 10 under the Plan satisfies the statutory standard.

56.    <u>Treatment of Administrative Claims, Priority Tax Claims and Secured Tax Claims (11 U.S.C. § 1129(a)(9))</u>.  The treatment of Administrative Claims, Priority Tax Claims and Secured Tax Claims pursuant to Sections 2.01, 2.02, 2.03 and 5.02, respectively, of the Plan satisfies the requirements of sections 1129(a)(9)(A), (C) and (D) of the Bankruptcy Code, as applicable.  The treatment of Non-Priority Tax Claims pursuant to Section 5.01 of the Plan satisfies the requirements of sections 1129(a)(9)(B) of the Bankruptcy Code.

57.    <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>.  Classes 4 (R.D. Olson Secured Claim) and 9 (Aqua/Modern Claims), which are impaired Classes of Claims eligible to vote, voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider. Specifically, as set forth in the Voting Declaration, Classes 4 and 9 voted 100% in both number and total dollar amount to accept the Plan, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

58.    <u>Feasibility (11 U.S.C. § 1129 (a)(11))</u>.  As amended, the Plan provides that all Allowed Claims will be paid from the Exit Funding on or within thirty (30) days after the Effective Date (or as soon thereafter as a Disputed Claim may be Allowed), other than the Wells Fargo Plan Note, which will be paid over a five (5)

year period.  As to the Debtor's ability to make the promised future payments on the Wells Fargo Plan Note, the evidence introduced at or prior to the Confirmation Hearing and in the Supporting Declarations:  (i) is persuasive and credible, (ii) establishes that the Debtor will have sufficient resources to meet all of its obligations under the Plan, including post-Confirmation Date obligations to pay for the costs of administering and fully consummating the Plan and closing the Bankruptcy Case, (iii) establishes that the present value of the Hotel is $107,700,000 and the projected future value (using a discounted cash flow analysis) of the Hotel on August 1, 2017, August 1, 2019 and August 1, 2022 is $143,200,000, $153,700,000 and $170,900,000, respectively, (iv) establishes that upon the Effective Date, the Debtor will be solvent, and (v) establishes that the confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor.

59.     The Court's findings are supported by the evidence introduced at or prior to the Confirmation Hearing and in the Supporting Declarations regarding the projected future performance of the Hotel and the Restaurant.  As set forth in the Simon Declaration and certain of the other Supporting Declarations, the Debtor projects net operating income (after FF&E reserves) of approximately $6.507

million, $7.944 million, $8.908 million, $9.282 million and $9.628 million in the fiscal years ending 2013, 2014, 2015, 2016 and 2017, respectively.[3]

60.     The foregoing amounts include projections for the Restaurant.  The Restaurant is owned and operated by MM Restaurant Hawaii, LLC, a Delaware limited liability company ("MM Restaurant").  MM Restaurant was initially a joint venture (the "Joint Venture") between 1775 Ala Moana Restaurant, LLC, a Hawaii limited liability company ("1775 LLC") and a wholly owned subsidiary of the Debtor, and Mori Hawaii, LLC ("Mori"), a Delaware limited liability company owned and controlled by "Iron Chef" Masaharu Morimoto ("Chef Morimoto").  Under the Joint Venture, Mori acted as manager of MM Restaurant and was responsible for the Restaurant's day-to-day activities and for providing the culinary services and expertise of Chef Morimoto.

61.     On February 29, 2012, MM Restaurant, 1775 LLC, and Mori modified the terms of the ownership, management and operation of the Restaurant.  First, Mori withdrew as a member of MM Restaurant and assigned one hundred percent (100%) of its interests in the company to 1775 LLC.  Second, Mori relinquished day-to-day control and management responsibilities of the Restaurant to 1775 LLC.  The Debtor will dissolve 1775 LLC as of the Effective Date and will

---

[3] The Debtor's management's projections are supported by the adjusted forecast prepared by Mr. Simon that projects higher overall net operating income for the Debtor during this time period.

own directly one hundred percent of MM Restaurant. Third, MM Restaurant entered into a new license agreement (the "License Agreement") with Mori to provide culinary services and the right to use the trademarks and other intellectual property associated with Chef Morimoto. Under the License Agreement, the Restaurant will continue to be operated as Morimoto Waikiki, and Chef Morimoto will continue to make appearances and provide culinary direction.

62. The new License Agreement structure created immediate benefits to MM Restaurant. First, under the License Agreement, Mori's fee was reduced from six percent (6%) of gross revenue to a flat fee of thirty-four thousand dollars ($34,000) per month. As a result, substantial cost savings by MM Restaurant have occurred. Additionally, with the day-to-day control shifted to the reorganized Debtor through its wholly owned subsidiary, MM Restaurant, the Hotel will have greater coordination and cooperation with the Restaurant to maximize revenue possibilities for both the Hotel and the Restaurant.

63. Based on the evidence adduced at the Confirmation Hearing, MM Restaurant is solvent and has generally had sufficient cash flow during the Bankruptcy Case to cover its operating costs. Moreover, based on the evidence adduced at the Confirmation Hearing, MM Restaurant's projected revenues demonstrate that MM Restaurant should have sufficient cash flow to pay its operating costs in the future. To further ensure the liquidity of MM Restaurant,

MM Restaurant will have access to the funds from the Secured Exit Loan and as a wholly owned subsidiary of the reorganized Debtor, MM Restaurant will derive direct, tangible and substantial benefits from the restructuring effectuated through the Wells Fargo Plan Note.

64.    As a condition to restructuring the Wells Fargo Secured Claim, MM Restaurant will (a) assign the License Agreement ("Assignment") to Wells Fargo, (b) execute that certain Consent of Issuer (the "Consent") with respect to the Pledge and Security Agreement (the "Pledge") executed by the Debtor in favor of Wells Fargo, and (c) execute that certain Control Agreement (the "Control Agreement") with respect to the Pledge.  In light of the value of the Hotel, the $30 million Paydown on the Wells Fargo Secured Claim on or before the Effective Date, and the benefit to both the reorganized Debtor and MM Restaurant from the restructuring of the Wells Fargo Secured Claim, the Court finds that the Assignment, the Consent and the Control Agreement are reasonable and further that MM Restaurant will remain solvent after execution of both the Assignment, Consent and Control Agreement.  Further, the benefits to MM Restaurant from restructuring the Wells Fargo Secured Claim and additional funding through the Secured Exit Loan constitute reasonably equivalent value for MM Restaurant's executing the Assignment, Consent and Control Agreement for the benefit of Wells Fargo.

65.     Moreover, Wells Fargo has also stipulated that the Plan is "fair and equitable" as to its treatment of its Secured Claim.

66.     Accordingly, based on all of the foregoing, the Plan is feasible and section 1129(a)(11) is satisfied.

67.     Payment of Fees (11 U.S.C. § 1129(a)(12)).  As required pursuant to Section 2.04 of the Plan, all fees payable under section 1930 of title 28 of the United States Code have been or will be paid on the Effective Date, or as soon thereafter as is practicable, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

68.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  The Debtor has no obligations with respect to retiree benefits.  Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan.

69.     No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Plan.

70.     The Debtor Is Not An Individual (11 U.S.C. § 1129(a)(15)).  The Debtor is not an individual, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Plan.

71.     No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).  The Debtor is a moneyed, business, or commercial limited liability company, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Plan.

72.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). The Debtor has satisfied the requirements of sections 1129(b)(1) and (b)(2) of the Bankruptcy Code with respect Classes 3 (Wells Fargo Secured Claim) and 10 (Marriott Unsecured Claim) (the "Rejecting Classes").  Based on the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes.  As required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, the Plan does not "unfairly discriminate" because the Rejecting Classes are of a different legal nature and priority, and no Class of Claims or Interests of similar legal rights is receiving different treatment under the Plan.  As stipulated by Wells Fargo, the Plan is "fair and equitable" as to Rejecting Class 3 because Wells Fargo shall retain the liens securing the Wells Fargo Secured Claim, and Wells Fargo shall receive on account of its Secured Claim deferred cash payments totaling at least the Allowed amount of such Secured Claim, of a value, as of the Effective Date of the Plan, of at least the value of Wells Fargo's interest in the Estate's interest in the property subject to Wells Fargo's lien.  As stipulated by Marriott, the

Plan is "fair and equitable" as to Rejecting Class 10 because the Marriott Unsecured Claim will be paid in full on or before the Effective Date. The Plan satisfies the absolute priority rule because, with respect to the Rejecting Classes, no junior Class is receiving a distribution under the Plan unless the claimants in the higher priority Rejecting Classes receive the full value of their claims. In addition, no Class senior to any of the Rejecting Classes will receive, under the Plan, an amount equal to more than the aggregate amount of its constituents' Allowed Claims. Finally, the Davidson Trust has contributed "new value" to the Debtor in the form of the Exit Capital Contribution, among other things, that is (i) new, (ii) substantial, (iii) money or money's worth, (iv) necessary for the Debtor's successful reorganization, and (v) reasonably equivalent to or greater than the value of the New Senior Class 1 Units. Based on the foregoing, the requirements of section 1129(b) of the Bankruptcy Code are met with respect to the Rejecting Classes. As such, the Plan may be confirmed notwithstanding the rejection by the Rejecting Classes.

73. <u>Only One Plan (11 U.S.C. § 1129(c))</u>. As a result of the withdrawal of the Marriott Plan, the Plan is the only plan pursuant to which confirmation is being sought in this case, and, accordingly, section 1129(c) of the Bankruptcy Code is satisfied in the Bankruptcy Case.

74. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, as such satisfying the requirements of section 1129(d) of the Bankruptcy Code.

75. <u>Small Business Case (11 U.S.C. § 1129(e)</u>. The Bankruptcy Case is not a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

76. <u>Good-Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Court in the Bankruptcy Case, the Proponents have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

77. <u>Satisfaction of Confirmation Requirements</u>. The Proponents have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code for confirmation of the Plan by a preponderance of the evidence. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

78.     Implementation.  All documents necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith and at arms'-length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

79.     Good Faith.  The Proponents, and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, partners, affiliates, and representatives, (i) have acted in good faith in negotiating, formulating and confirming the Plan and agreements, compromises, settlements, transactions and transfers contemplated thereby or incorporated therein or the Plan Supplement, and (ii) will be acting in good faith in proceeding to (a) consummate the Plan and the agreements, compromises, settlements, transactions, and transfers contemplated thereby or incorporated therein or the Plan Supplement and (b) take the actions authorized and directed or contemplated by the Plan or the Plan Supplement.

80.     Executory Contracts and Unexpired Leases.  The Debtor has satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assignment and rejection of executory contracts and unexpired leases pursuant to the Plan.

81.    <u>Injunction, Exculpation, and Releases</u>.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, releases, and exculpations set forth in Article IX of the Plan.  Such provisions, in accordance with section 105(a) of the Bankruptcy Code, (i) are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtor's estate, (iii) are fair and reasonable and (iv) are in the best interests of the Debtor, its estate, and parties in interest.  Further, the exculpations and releases in the Plan do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence or the other exceptions set forth therein.  Based upon the record of the Bankruptcy Case and the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the injunction, exculpation, and releases set forth in Article IX of the Plan are consistent with the Bankruptcy Code and applicable law.

82.    <u>Compromise and Settlement</u>.  Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, in consideration for the distributions and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan, including all disputes regarding the

Junior Loan and the Marriott Claims. Such compromise and settlement (i) is a cornerstone of the Plan, (ii) is supported by the Holders of Claims and Interests affected thereby, who voted overwhelmingly to accept the Plan or are unimpaired under the Plan, (iii) is the product of extensive arm's-length bargaining by sophisticated parties, and (iv) avoids protracted litigation of complex claims and disputes, the outcome of which is highly uncertain and the costs of which would be prohibitively expensive. Thus, the compromise and settlement incorporated into the Plan is fair, equitable, reasonable, and in the best interests of the Debtor, and its estate, and the Holders of Claims and Interests. All Plan distributions made to Holders of Allowed Claims and Interests in any Class are intended to be and shall be final, and no Plan distribution to the Holder of a Claim or Interest in one Class shall be subject to being shared with or reallocated to the Holders of any Claim or Interest in another Class by virtue of any prepetition collateral trust agreement, shared collateral agreement, subordination agreement, other similar inter-creditor arrangement or deficiency claim.

71568v.6



/s/ Robert J. Faris
**United States Bankruptcy Judge**
Dated: **07/10/2012**